James G. Snell, Bar No. 173070
JSnell@perkinscoie.com
**PERKINS COIE LLP**
3150 Porter Drive
Palo Alto, California 94304-1212
Telephone: +1.650.838.4300
Facsimile: +1.650.838.4350

*Attorneys for Defendant*
*MICROSOFT CORPORATION*

*[additional counsel listed in signature block]*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO/OAKLAND DIVISION

LANA NIEVES, STACY PENNING, SUNGGIL HONG, LAURA BONETTI, and JONATHAN FINESTONE, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

MICROSOFT CORPORATION,

Defendant.

Case No. 3:25-cv-10557-CRB

[Removed from San Francisco County Superior Court, Case No. CGC2569612]

**DEFENDANT MICROSOFT CORPORATION'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**

[*Request for Judicial Notice filed concurrently herewith*]

Judge: Hon. Charles R. Breyer
DATE: May 15, 2026
TIME: 10:00 a.m.
CTRM: 6, 17th Floor

Complaint Filed: September 25, 2025
Action Removed: December 9, 2025

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 15, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard, Defendant Microsoft Corp. ("Microsoft") will bring for hearing, in Courtroom 6 (17th Floor) of the above-captioned court located at 450 Golden Gate Avenue, San Francisco, California 94102, a Motion seeking an Order to Dismiss Plaintiffs' Complaint. This Motion is based upon this Notice of Motion, the supporting Memorandum of Points and Authorities, the Request for Judicial Notice and attached exhibits, the pleadings and other papers on file herein, and upon such oral argument as the Court may entertain at the hearing on this Motion.

## STATEMENT OF RELIEF SOUGHT – L.R. 7-2(B)(3)

Microsoft moves for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), on the ground that Plaintiffs fail to satisfy the basic pleading standards required to state a claim for relief.

## SUMMARY OF ARGUMENT

Plaintiffs' Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for the following reasons:

1. Plaintiffs wiretapping claims under the California Invasion of Privacy Act ("CIPA") and the Electronic Communications Privacy Act ("ECPA") fail because they (a) do not allege interception of "contents" of communications, (b) do not allege interception "in transit," (c) allege that website operators consented, defeating their ECPA claim, (d) fail to allege improper use or disclosure under ECPA, and (e) fail to allege that Microsoft aided or abetted another entity's violation of these statutes. *See, e.g.*, *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1103 (9th Cir. 2014); Order on Motion to Dismiss at 25–26, *Rusow v. Skinspirit Essential LLC*, No. 3:24-cv-09317 (N.D. Cal. Oct. 15, 2025), Dkt. 44; *Doe v. Eating Recovery Ctr., LLC*, 806 F. Supp. 3d 1109, 1118 (N.D. Cal. 2025). Plaintiffs fail to state a claim under California's pen register statute, which a growing number of courts have held does not apply as Plaintiffs allege, an issue recently taken up by the California Court of Appeal. *See* Order to Show Cause, *Variety*

*Media, LLC v. Super. Ct.*, No. B350578 (Cal. Ct. App. L.A. Cnty. Jan. 8, 2026).

2. The rule of lenity precludes application of criminal statutes like ECPA and CIPA here, given that it requires interpreting ambiguous criminal statutes narrowly. *See, e.g.*, *United States v. Nosal*, 676 F.3d 854, 862–63 (9th Cir. 2012) (citation modified); *see also Eating Recovery Center*, 806 F. Supp. at 1112.

3. Plaintiffs' intrusion upon seclusion claim fails because Plaintiffs do not have a reasonable expectation of privacy in generic web browsing data, including because the websites they visited disclosed the activities they target and California law permits this practice. *See, e.g.*, *Thomas v. Papa Johns Int'l, Inc.*, No. 22-cv-02012, 2024 WL 2060140, at *2 (S.D. Cal. May 8, 2024) (collecting cases), *aff'd*, No. 24-3557, 2025 WL 1704437 (9th Cir. June 18, 2025). Microsoft's conduct is routine commercial activity that is not highly offensive. *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090–91 (N.D. Cal. 2022) (Breyer, J.).

4. Plaintiffs fail to allege that Microsoft acted willfully or intentionally, defeating their wiretapping, pen register, and privacy claims. *See Briskin v. Shopify*, No. 21-cv-06269, 2026 WL 161441, at *4–5 (N.D. Cal. Jan. 21, 2026).

5. Plaintiffs' unjust enrichment claim does not exist under California law, Plaintiffs fail to plead a direct relationship with Microsoft, and Microsoft's business practices are not unjust. Plaintiffs cannot claim they lack a sufficient remedy at law. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020)

DATED: March 16, 2026

**PERKINS COIE LLP**

By: /s/ James G. Snell

James G. Snell (SBN 173070)
**PERKINS COIE LLP**
3150 Porter Drive
Palo Alto, California 94304-1212
Phone: (650) 838-4300
Email: JSnell@perkinscoie.com

Nicola Menaldo (pro hac vice forthcoming)
Jordan C. Harris (pro hac vice forthcoming)
**PERKINS COIE LLP**
1301 Second Avenue, Suite 4200
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000
Email: NMenaldo@perkinscoie.com
Email: JordanHarris@perkinscoie.com

Justin Potesta (SBN 314133)
**PERKINS COIE LLP**
405 Colorado Street, Suite 1700
Austin, TX 78701
Tel: (737) 256.6137
Email: JPotesta@perkinscoie.com

*Attorneys for Defendant*
*Microsoft Corporation*

# TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 1

II. STATEMENT OF ISSUES TO BE DECIDED – L.R. 7-4(A)(3) .......... 3

III. BACKGROUND .......... 3

A. The Online Advertising Ecosystem and Microsoft .......... 3

B. The Legal Framework Regulating Online Advertising .......... 4

C. The Xandr and Microsoft Services Alleged in the Complaint .......... 5

D. Plaintiffs' Allegations Related to Their Alleged Website Visits .......... 6

E. Procedural History .......... 7

IV. LEGAL STANDARD .......... 7

V. ARGUMENT .......... 8

A. Plaintiffs Fail to Allege Unlawful Wiretapping under ECPA or CIPA. .......... 8

1. Plaintiffs Fail to Allege that Microsoft Intercepted the Contents of any Communication. .......... 8

2. Plaintiffs Fail to Allege that Any Interception Occurred "In Transit." .......... 11

3. Plaintiffs' ECPA Claim Fails Because the Website Operators Consented to Use of Xandr and UET. .......... 13

4. The Court Should Dismiss Plaintiffs' Claims for Improper Use and Disclosure. .......... 14

5. Plaintiffs Fail to Allege Aiding and Abetting Liability under CIPA. .......... 14

B. The Rule of Lenity Requires Interpreting ECPA and CIPA Narrowly. .......... 15

C. Plaintiffs Fail to Allege that Microsoft's Conduct Was Intentional or Willful .......... 16

D. Plaintiffs Fail to Plead Intrusion Upon Seclusion. .......... 18

1. Plaintiffs Do Not Plead a Reasonable Expectation of Privacy. .......... 18

2. Plaintiffs Do Not Allege Highly Offensive Conduct. .......... 20

E. Plaintiffs Fail to State a Claim for Unjust Enrichment. .......... 22

VI. CONCLUSION .......... 23

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adler v. Community.com, Inc.*,
No. 21-cv-02416, 2021 WL 4805435 (C.D. Cal. Aug. 2, 2021)....11

*Allen v. Quicken Loans, Inc.*,
No. 17-cv-12352, 2018 WL 5874088 (D.N.J. Nov. 9, 2018)....13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....7, 17

*Augustine v. Great Wolf Resorts, Inc.*,
No. 23-cv-00281, 2024 WL 3450967 (S.D. Cal. July 18, 2024)....8

*B.K. v. Desert Care Network*,
No. 23-cv-05021, 2024 WL 5338587 (C.D. Cal. Aug. 22, 2024)....17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....7, 11

*Belluomini v. Citigroup, Inc.*,
No. CV 13-01743, 2013 WL 3855589 (N.D. Cal. July 24, 2013)....18

*Briskin v. Shopify, Inc.*,
No. 21-cv-06269, 2026 WL 161441 (N.D. Cal. Jan. 21, 2026)....2, 3, 17

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (2020)....8

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021)....14

*Chiulli v. Am. Honda Motor Co.*,
690 F. Supp. 3d 1038 (N.D. Cal. 2023)....23

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024)....15

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023)....10, 21

*Dinosaur Dev., Inc. v. White*,
216 Cal. App. 3d 1310 (1989)....22

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024)....17

*Doe v. Eating Recovery Ctr., LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) ....................1, 2, 12, 16

*ESG Cap. Partners, LP v. Stratos*,
828 F.3d 1023 (9th Cir. 2016)....................22

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) ....................4

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011), *as modified* (June 7, 2011) ....................21

*Fregosa v. Mashable*,
No. 25-cv-01094, 2025 WL 2886399 (N.D. Cal. Oct. 9, 2025) ....................8, 9, 10

*Gonzales v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018) ....................9

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) ....................4, 16

*Griffith v. TikTok, Inc.*,
No. 23-cv-00964, 2024 WL 5279224 (C.D. Cal. Dec. 24, 2024), *appeal filed*,
No. 25-553 (9th Cir. Jan. 28, 2025) ....................10, 12

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ....................2, 10, 22

*Hammerling v. Google LLC*,
No. 21-cv-09004, 2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) ....................11

*Harrill v. Emanuel Med. Ctr.*,
No. 23-cv-01672, 2025 WL 1635428 (E.D. Cal. June 9, 2025) ....................19

*Harrott v. County of Kings*,
25 Cal. 4th 1138 (2001) ....................16

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) ....................20

*Heiting v. HP Inc.*,
No. 24STCV29634, 2025 WL 2993673 (Cal. Super. Ct. Aug. 01, 2025) ....................9

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) ....................18

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) ....................19, 20

*Hubbard v. Google LLC*,
No. 19-cv-07016, 2024 WL 3302066 (N.D. Cal. July 1, 2024)........................................18, 21

*In re DoubleClick Inc. Priv. Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001)..........................................................................16

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)........................................................................................19

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .........................................................................14

*In re Google Inc. Gmail Litig.*,
2014 WL 1102660 (N.D. Cal. Mar. 18, 2014)...............................................................14

*In re Google, Inc. Priv. Pol'y Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) ...........................................................................21

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......................................................................21

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .........................................................................8

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014)................................................................................ passim

*King v. Hard Rock Cafe Int'l (USA), Inc.*,
No. 24-cv-01119, 2025 WL 1635419 (E.D. Cal. June 9, 2025) .............................................10

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005)......................................................................................18

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002)....................................................................................11, 12

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) .......................................................................14

*Leocal v. Ashcroft*,
543 U.S. 1 (2004).........................................................................................................16

*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023) .......................................................................13

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ....................................................................20, 22

*Marden v. LMND Med. Grp., Inc.*,
No. 23-cv-03288, 2024 WL 4448684 (N.D. Cal. July 3, 2024)..............................................14

*Mathews v. Becerra*,
8 Cal. 5th 756 (2019) ....................18

*Mirmalek v. L.A. Times Commc'ns LLC*,
No. 24-cv-01797, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024)....................9

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024)....................13

*NovelPoster v. Javitch Canfield Grp.*,
140 F. Supp. 3d 938 (N.D. Cal. 2014) ....................12

*Opperman v. Path, Inc.*,
84 F. Supp. 3d 962 (N.D. Cal. 2015) ....................18

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) ....................14

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ....................7

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ....................14

*Rodriguez v. Google LLC*,
No. 20-cv-04688, 2021 WL 2026726 (N.D. Cal. May 21, 2021)....................13

*Rodriguez v. Ink America Intern. Group LLC*,
No. 25STCV15350, 2025 WL 4034985 (Cal. Super. Ct. Dec. 10, 2025)....................8

*Rosenow v. Facebook, Inc.*,
No. 19-cv-1297-WGH-MDD, 2020 WL 1984062 (S.D. Cal. Apr. 27, 2020) ....................12

*Rusow v. Skinspirit Essential LLC*,
No. 3:24-cv-09317 (N.D. Cal. Oct. 15, 2025 .................... passim

*Russell v. Walmart, Inc.*,
680 F. Supp. 3d 1130 (N.D. Cal. July 5, 2023)....................22

*Sanchez v. Cars.com Inc.*,
No. 24STCV13201, 2025 WL 487194 (Cal. Super. Ct. Jan. 27, 2025)....................9

*Scharon v. Paramount Global*,
No. 25STCV10585, 2025 WL 2996812 (Cal. Super. Ct. Oct. 03, 2025) ....................9

*Seven Arts Filmed Ent., Ltd. v. Content Media Corp. PLC*,
733 F.3d 1251 (9th Cir. 2013)....................7, 10

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) ....................10

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020)....23

*Sussman v. Am. Broad. Companies, Inc.*,
186 F.3d 1200 (9th Cir. 1999)....14

*Tavernetti v. Superior Ct.*,
22 Cal. 3d 187 (1978) ....8

*Thomas v. Papa Johns Int'l, Inc.*,
No. 22-cv-02012, 2024 WL 2060140 (S.D. Cal. May 8, 2024), *aff'd*, No. 24-3557, 2025 WL 1704437 (9th Cir. June 18, 2025) ....2, 19, 20

*Torres v. Prudential Fin.*,
No. 22-cv-07465, 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025)....11, 12

*Tsering v. Meta Platforms, Inc.*,
No. 25-cv-01611, 2026 WL 89320 (N.D. Cal. Jan. 12, 2026)....2, 17, 21

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015)....17

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008)....20

*United States v. Lanier*,
520 U.S. 259 (1997)....15

*United States v. Nosal*,
676 F.3d 854 (9th Cir. 2012) (citation modified) ....2, 15

*Vance v. Google LLC*,
No. 20-CV-04696, 2024 WL 5011611 (N.D. Cal. Dec. 5, 2024)....23

*Variety Media, LLC v. Super. Ct.*,
No. B350578 (Cal. Ct. App. L.A. Cnty. Jan. 8, 2026)....1, 2, 9

*Vita v. New England Baptist Hosp.*,
243 N.E.3d 1185 (Mass. 2024) ....16

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ....8, 10

**STATUTES**

18 U.S.C. § 2510(8) ....8

18 U.S.C. § 2511(1)(a)....16

18 U.S.C. § 2511(1)(c)....4, 14

18 U.S.C. § 2511(1)(d) ....................................................................................................14

18 U.S.C. § 2511(2)(d) ....................................................................................................13

18 U.S.C. § 2511(4)(a) ....................................................................................................8, 15

18 U.S.C. § 2516 ....................................................................................................4

18 U.S.C. § 2520 ....................................................................................................4

18 U.S.C. § 3121 *et seq.* ....................................................................................................4

Cal. Civ. Code § 1798.99.80(c) ....................................................................................................19

Cal. Civ. Code § 1798.110 ....................................................................................................6

Cal. Civ. Code § 1798.120 ....................................................................................................5, 6, 19

Cal. Civ. Code § 1798.135 ....................................................................................................5, 6, 19

Cal. Civ. Code § 1798.136 ....................................................................................................5

Cal. Civ. Code § 1798.140(v)(1)(F) ....................................................................................................4

Cal. Civ. Code § 1798.140(ae)(2)(B) ....................................................................................................20

Cal. Penal Code § 20 ....................................................................................................17

Cal. Penal Code § 629.52 ....................................................................................................4

Cal. Penal Code § 631 ....................................................................................................14

Cal. Penal Code § 631(a) ....................................................................................................4, 8, 15, 16

Cal. Penal Code § 637.9(f)(4) ....................................................................................................20

Cal. Penal Code § 638.50(b) ....................................................................................................4

Cal. Penal Code § 638.52(c) ....................................................................................................15

**RULES**

Fed. R. Civ. P. 12(b)(6) ....................................................................................................3, 5, 23

**OTHER AUTHORITIES**

1 B.E. Witkin, *Summary of California Law*, Contracts § 1050 (11th ed. 2025) ....................................................................................................22

A.B. 566, 2025-2026 Reg. Sess. (Cal. S2026) ....................................................................................................5

A.B. 929, 2015-2016 Reg. Sess. (Cal. 2015) ....................................................................................................4

Cal. Prop. 24 (Gen. Election Nov. 3, 2020) .......... 3, 4

Restatement (Second) of Torts § 652B (2025) .......... 16

## I. INTRODUCTION

Each of the five named plaintiffs alleges that he or she visited one of five public websites: a website for a major hotel chain, one for bicycle equipment, and others for common publications such as Scientific American, Buzzfeed, and Bon Appetit. They browsed for information or goods as they would in a public hotel lobby, bike shop, or bookstore. None of the plaintiffs gave private information to the websites or sought information on sensitive topics. And all of the websites they visited provided the Plaintiffs with published policies explaining that the sites collected information about their visits and shared that information with third parties for advertising. Plaintiffs allege that the websites did just what the notices said—they collected basic information about Plaintiffs' visits such as their IP addresses, device information, browser information, and the pages they visited. In total, Plaintiffs describe their own every-day web-browsing and the internet's system of collecting information consistent with the law and published privacy policies to tailor advertising and fund websites—the advertising infrastructure that helps websites provide information and services at no charge to people like the Plaintiffs. Though the Plaintiffs received free information borne by this system, they now claim that the infrastructure that brought it to them is highly offensive and even criminal. It is not. Plaintiffs have not and cannot plead their claims for relief, and their Complaint should be dismissed.

Plaintiffs seek payment by twisting decades-old statutes that never conceived of the internet or the advertising infrastructure that funds its free publication of information. Plaintiffs do not acknowledge that twisting these statutes is inconsistent with more recent legislation that allows websites to collect information online and share it with advertisers. The California Consumer Privacy Act ("CCPA") as well as more recent law allows websites to gather information from visitors and send it to advertisers, as long as the websites post policies about the collection and give visitors a way to opt out. Plaintiffs make no allegation that Microsoft or any of the websites they visited violated the CCPA, nor that Plaintiffs ever tried to exercise their rights under the CCPA. Instead, they try to distort criminal statutes for statutory damages and exploit inapplicable privacy torts. Their efforts fail for the following reasons.

***First***, Plaintiffs' wiretapping claims under the California Invasion of Privacy Act ("CIPA") and the Electronic Communications Privacy Act ("ECPA") (Counts 2 and 5) fail because Plaintiffs do not plausibly allege that Microsoft intercepted the "contents" of communications, much less that it did so while the alleged communications were "in transit." Plaintiffs' ECPA claim fails for the additional reason that Plaintiffs allege that the website operators consented to the alleged conduct, and ECPA is a one-party consent statute. Finally, in the absence of an unlawful interception, Plaintiffs cannot state a claim under CIPA or ECPA for any alleged use or disclosure, nor for aiding or abetting a violation by another entity. Plaintiffs fail to state a claim under CIPA's pen register provision (Count 3), which a growing number of courts have held does not apply as Plaintiffs allege, an issue recently taken up by the California Court of Appeal. *See* Order to Show Cause, *Variety Media, LLC v. Super. Ct.*, No. B350578 (Cal. Ct. App. L.A. Cnty. Jan. 8, 2026).

***Second**,* because ECPA and CIPA are criminal statutes carrying severe penalties, the Court should apply the rule of lenity, which requires interpreting ambiguous criminal statutes narrowly, and would preclude their application here.

***Third***, Plaintiffs do not have a reasonable expectation of privacy in the kind of basic information allegedly collected through Plaintiffs' non-controversial web-browsing, as both the CCPA and CIPA confirm. The websites' clear privacy policy disclosures defeat any reasonable expectation that Plaintiffs' data would not be used as disclosed, and foreclose any finding of highly offensive conduct, dooming their California intrusion upon seclusion claim (Count 1), which they cannot assert on a nationwide basis in any event. As one Court in this District recently put it, courts require "plaintiffs bringing invasion of privacy claims arising from the collection of personal data" to allege something "more" than that the defendant "engage[d] in such routine behavior[.]" *Tsering v. Meta Platforms, Inc.*, No. 25-cv-01611, 2026 WL 89320, at *7 (N.D. Cal. Jan. 12, 2026).

***Fourth*****,** Plaintiffs cannot allege that Microsoft intentionally or willfully intercepted their information, defeating their privacy (Count 1), pen register (Count 3), and wiretapping claims

(Counts 2 and 5). *See Briskin v. Shopify, Inc.*, No. 21-cv-06269, 2026 WL 161441, at *4–5 (N.D. Cal. Jan. 21, 2026).

***Fifth***, Plaintiffs' claim for unjust enrichment (Count 4) cannot proceed, as such a standalone claim does not exist under California law (and cannot be asserted on a nationwide basis anyway); Microsoft has no relationship with Plaintiffs that could give rise to a quasi-contract claim; Microsoft's business practices are not "unjust"; and Plaintiffs do not and cannot claim that they lack a sufficient remedy at law.

Plaintiffs have already had a chance to cure their Complaint of these defects following Microsoft's motion to dismiss their original complaint filed in the Western District of Washington. The Court should dismiss the latest version of their Complaint with prejudice.

## II. STATEMENT OF ISSUES TO BE DECIDED – L.R. 7-4(A)(3)

Whether this Court should dismiss Plaintiffs' Complaint against Microsoft with prejudice under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for relief.

## III. BACKGROUND

### A. The Online Advertising Ecosystem and Microsoft

Online advertising is the backbone of the free internet, which allows websites, both big and small, to "rely on advertising to make money as opposed to charging consumers a fee." *See, e.g.*, California Privacy Rights Act of 2020 ("CPRA"), Cal. Prop. 24, § 3(C) (Gen. Election Nov. 3, 2020) (amending the CCPA). The online advertising industry involves three main groups: publishers who sell advertising space on their websites and apps; advertisers who buy that space; and technology companies that provide the infrastructure for these transactions. *See* Compl. ¶¶ 29–30. This process often occurs through "real time bidding" ("RTB") auctions that occur on "thousands" of major websites. *See id.* ¶¶ 2, 30–31. Microsoft helps publishers sell their digital ad space, assists advertisers in selecting which users to show ads to and bidding for the ability to do so, and provides some of the infrastructure for these transactions to take place. *See id.* ¶¶ 30–31.

Microsoft is one of many companies that provides such tools, and it is a leader in privacy initiatives for online advertising. It is a member of online advertising self-regulatory organizations like the Interactive Advertising Bureau (IAB) and the Network Advertising

Initiative (NAI), which promulgate industry standards for thousands of online advertising participants, including standards that promote user privacy. *See* Microsoft, Online advertising self-regulatory organizations, available at https://learn.microsoft.com/en-us/xandr/policies-regulations/online-advertising-self-regulatory-organizations (last visited March 5, 2026); *see also* National Advertising Institute, Privacy Principles for Members, https://thenai.org/self-regulatory-framework/privacy-principles-for-members/ (last visited March 9, 2026).

**B. The Legal Framework Regulating Online Advertising**

The wiretapping statutes on which Plaintiffs base their Complaint largely became law before the Internet existed. These laws, passed in 1967 (CIPA) and 1968 (ECPA's predecessor, the federal Wiretap Act), originally set out ways in which telephone calls and other oral communications could be recorded and provided civil remedies and criminal punishments for violating those rules. *See* 18 U.S.C. §§ 2511(1)(c), 2516, 2520; Cal. Penal Code §§ 631(a), 629.52; *see also In re Zynga Priv. Litig.*, 750 F.3d 1098, 1103 (9th Cir. 2014); *Flanagan v. Flanagan*, 27 Cal. 4th 766, 768–69 (2002). California's pen register statute, added to CIPA in 2015, expanded state law enforcement's ability to obtain pen registers in criminal investigations, similar to the pen registers allowed in federal cases. *See* A.B. 929, 2015–2016 Reg. Sess. (Cal. 2015); Cal. Penal Code § 638.50(b); 18 U.S.C. § 3121 *et seq.* Nothing about these laws suggests they were intended to target online advertising tools, and theories suggesting as much emerged in 2023, years after they became law. *See, e.g.*, *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023).

Indeed, California regulates online advertising through other carefully crafted laws. The CCPA, passed in 2018 and updated in 2020 through the CPRA, was specifically intended to regulate "advertising businesses" that "track [consumers] across the internet, and . . . create detailed profiles of their individual interests." Prop. 24 § 2(I) (2020). To that end, the statute comprehensively governs businesses' collection, use, and sharing of "personal information," which includes IP addresses, "Internet or other electronic network activity information," and "information regarding a consumer's interaction with an internet website." *See* Cal. Civ. Code § 1798.140(v)(1)(F). It permits websites to collect IP addresses and other personal information

without consent, subject to adequate notice and ways for website visitors to opt-out of certain types of activities. *See, e.g.*, *id.* §§ 1798.120, 1798.135. The California legislature continues to look to the CCPA to regulate online data collection and sharing, amending the CCPA just this year to require developers of web browsers—not just websites—to provide consumers a way to communicate their "choice to opt out of the sale and sharing of the consumer's personal information." *Id.* § 1798.136 (as created by A.B. 566, 2025–2026 Reg. Sess., ch. 465 (Cal. S2026)).

**C. The Xandr and Microsoft Services Alleged in the Complaint**

A pixel is a piece of online technology "that website operators can integrate into their websites[.]" Compl. ¶ 53. Plaintiffs allege they visited websites with the Adnxs pixel on them.[1] *Id.* ¶¶ 255–301. They allege that when a website visitor reaches a website that uses one of these pixels, the pixel sends data in the form of a "cookie" to the website visitor's browser, which allows Microsoft to pseudonymously link disparate website browsing sessions associated with that same browser. *Id.* ¶¶ 60, 77–78*; see also, e.g.*, *id.* ¶ 176. Plaintiffs claim that, through the operation of these pixels and cookies, Microsoft collects information about their website activities, such as which browser they used, what kind of device they had, their IP address (i.e., a "set of numbers assigned to a device on a network"), and the URLs of websites they visited. *See id.* ¶¶ 64, 258, 272, 282, 295.[2] Plaintiffs allege that Microsoft then assigns to individuals advertising "audiences" or "segments," which according to Plaintiffs are "collection[s] of users

[1] Plaintiffs' Complaint also includes general allegations regarding the "Bing Pixel," which is allegedly incorporated into the Expedia website. *See* Compl. ¶¶ 59–61, 68–69, 212–216. However, no named Plaintiff allegedly visited Expedia. And there is no Microsoft service called the "Bing Pixel." Based on the allegations in the Complaint, Microsoft assumes Plaintiffs are referring to Microsoft's Universal Event Tracking ("UET") service. Additionally, Microsoft does not in any way concede that it is the proper defendant in this lawsuit. Based on the allegations in the Complaint, and pending further investigation, other entities including Xandr, Inc. and/or Microsoft Online, Inc., may be the proper entities. Finally, many of Plaintiffs' allegations about how pixels and cookies work, among others, are grossly factually inaccurate. For purposes of the Motion to Dismiss, however, Microsoft accepts Plaintiffs' allegations as true, as it must under Rule 12(b)(6).

[2] Although they also allege that Microsoft *can* collect information about use of Microsoft branded applications (Compl. ¶ 58) and use of mobile applications (*id.* ¶¶ 98–117), Plaintiffs do not allege that they used any Microsoft branded applications or any mobile applications using UET or Xandr services. Similarly, although Plaintiffs allege that Microsoft could collect e-mail addresses (*id.* ¶ 119) and location information (*id.* ¶ 120), and later mention in passing that the pixels collected "geolocation," the allegations about Plaintiffs' own experiences do not mention these data elements. *Cf. id.* ¶¶ 255–301.

who have interacted on a website in a similar way." *Id.* ¶ 152. Websites can use these segments to sell advertising space, and businesses large and small can bid on available advertising space (i.e., "real-time bidding") to deliver advertising campaigns tailored to visitors' interests. *See id.* ¶¶ 138–161, 216. Plaintiffs otherwise vaguely accuse Microsoft of maintaining "profiles" on individuals but do not explain what "profiles" are or what they contain in the case of Plaintiffs. *See id*. ¶¶ 250, 260, 274, 284, 296.

Plaintiffs do not and cannot allege that Microsoft or the websites they visited broke any promises or failed to honor any rights under the CCPA, such as the right to access or delete information. *See* Cal. Civ. Code § 1798.110. Nor do they allege that Plaintiffs took steps largely available to consumers to stop cookies from being installed on their browsers, even though all browsers offer tools to stop or clear cookies, *see, e.g.*, Compl. ¶ 44, and the CCPA requires websites to, in certain circumstances, provide consumers the right to opt out of certain disclosures of their personal information. *See, e.g.*, Cal. Civ. Code §§ 1798.120, 1798.135. And they do not allege that anyone used Plaintiffs' website browsing information for malicious purposes.

### D. Plaintiffs' Allegations Related to Their Alleged Website Visits

According to the Complaint, the only data that Microsoft purportedly collected from Plaintiffs were their ***IP addresses, information about their devices and browsers, and the URLs of pages they visited***. Compl. ¶¶ 255–301. Plaintiffs allege that Microsoft shared these same basic data elements with other businesses, which Plaintiffs call "Partner Pixels," after assigning the data to a random "Microsoft ID." *See id*. ¶¶ 122–137 (describing IDs "assign[ed]" to records of web and app activity). Again, Plaintiffs do not otherwise define or describe the "profiles" that Microsoft allegedly created based on this limited information.

For example, Ms. Nieves alleges that Microsoft collected her IP address, device and browser information, and URLs of pages visited on the Scientific American website as recently as January 2025. *Id.* ¶¶ 245, 247–48. Mr. Penning alleges similar collection on the Buzzfeed website, which allegedly incorporated the Adnxs pixel, in December 2024. *Id.* ¶¶ 255, 257–58. Mr. Hong, Ms. Bonetti, and Mr. Finestone make similar allegations regarding the AliExpress, Bon Appetit, and Hyatt websites, respectively. *See id.* ¶¶ 265, 271–272, 279, 281–82, 290, 292–

93. Each Plaintiff alleges that Microsoft also provided cookie syncing services to various Partner Pixels on at least some websites, *see, e.g.*, *id.* ¶¶ 270, 283.

No Plaintiff alleges the collection of conventional identifying information such as name, physical address, or date of birth, nor do they allege the collection of any of their sensitive health or financial information. *See generally, id.* Although Plaintiffs' Complaint includes allegations about the Plushcare website, which allegedly allows patients to make medical appointments and purchase medication, no named Plaintiff allegedly visited that site. *See id.* ¶¶ 224–233, 245–301.

### E. Procedural History

The majority of the Plaintiffs in this case filed a virtually identical complaint in the Western District of Washington on April 1, 2025. *See* Complaint, *Penning v. Microsoft Corp.*, No. 2:25-cv-00570-JLR (W.D. Wash. April 1, 2025), Dkt. 1 ("*Penning*"). The court there stayed the *Penning* case until resolution of the then-pending appeal in *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025). *See Penning*, Dkt. 18. Following resolution of the *Popa* appeal, which addressed similar claims with respect to different Microsoft technology, the *Penning* plaintiffs voluntarily dismissed their complaint in Washington without prejudice on September 25, 2025. *Id.*, Dkt. 21. That same day, plaintiffs refiled virtually the same complaint in California state court, adding Plaintiff Nieves and dropping two of the prior plaintiffs. *See* Dkt. 1-1. Microsoft removed this case to this Court on December 9, 2025. *See* Dkt. 1.

## IV. LEGAL STANDARD

Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requires "plead[ing] factual content" that permits a "reasonable inference" of liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Seven Arts Filmed Ent., Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013).

## V. ARGUMENT

### A. Plaintiffs Fail to Allege Unlawful Wiretapping under ECPA or CIPA.

To plead an ECPA claim, Plaintiffs must allege that Microsoft "(1) intentionally (2) intercepted (3) the contents of (4) plaintiffs' electronic communications (5) using a device." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 794–95 (N.D. Cal. 2022). Similarly, to plead a wiretapping claim under CIPA § 631(a), Plaintiffs must show that Microsoft "[1] willfully [2] attempt[ed] to learn the contents or meaning of a communication [3] in transit [4] over a wire." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192 (1978).[3] Both ECPA and CIPA are criminal statutes. 18 U.S.C. § 2511(4)(a) (violations of ECPA "shall be fined under this title or imprisoned not more than five years, or both"); Cal. Penal Code § 631(a) (violations of CIPA are punishable by a fine not exceeding $2,500, by imprisonment not exceeding one year, or both). Plaintiffs fail to plausibly allege several of the elements of these claims.

#### 1. Plaintiffs Fail to Allege that Microsoft Intercepted the Contents of any Communication.

Plaintiffs' wiretap claims fail because they do not allege facts plausibly showing that Microsoft collected the "*contents*" of any "communication." Under ECPA, the "contents" of a communication are "any information concerning the substance, purport, or meaning of the communication." 18 U.S.C. § 2510(8); *see also Zynga*, 750 F.3d at 1104. This refers to the "intended message conveyed by the communication," not any "record information regarding the characteristics of the message . . . generated in the course of the communication." *Zynga*, 750 F.3d at 1098. Courts recognize that CIPA has the same "contents" requirement and definition. *See Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (2020).[4]

---

[3] The first clause of Section 631(a), related to "intentional wiretapping," applies only to any "telegraph or telephone wire," which is not relevant here.

[4] Plaintiffs have failed to allege any actionable communications under ECPA or CIPA, but Microsoft is aware of the Court's earlier decision in *Fregosa* on the breadth of CIPA's definition of "communication." *See Fregosa v. Mashable*, No. 25-cv-01094, 2025 WL 2886399, at *7 (N.D. Cal. Oct. 9, 2025). The Ninth Circuit in *Zynga*, however, has indicated that ECPA is focused on communication between "computer users," 750 F.3d at 1103, and thus both ECPA and CIPA regulate person-to-person communications, not browsing public webpages as alleged here. Courts have dismissed wiretapping and pen register claims on these grounds. *See, e.g.*, *Augustine v. Great Wolf Resorts, Inc.*, No. 23-cv-00281, 2024 WL 3450967, at *6 (S.D. Cal. July 18, 2024); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021); *Rodriguez v. Ink America Intern. Group LLC*, No. 25STCV15350, 2025 WL 4034985, at *3–5 (Cal. Super. Ct.

Plaintiffs assert that the "collection of the universal resource locator ('URL') for each page of each website visited by an individual" amounts to collecting communication "contents." *See* Compl.¶¶ 64–70. This is the only "contents" of Plaintiffs' alleged communications that Plaintiffs point to in their Complaint. Under Ninth Circuit precedent, this is not enough. A URL merely "identifies the location of a webpage a user is viewing on the internet, and therefore functions like an 'address.'" *Zynga*, 750 F.3d at 1107. In *Zynga*, the Ninth Circuit held that, under ECPA, URLs are not "content," even if they disclose the precise webpage that a user views. *See id.* at 1108 (rejecting argument that URLs are contents "because they disclose specific information regarding a webpage that a user previously viewed," such as, for example, a URL reflecting "viewing the Facebook page of a gay support group"); *see also Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1086 (N.D. Cal. 2018) (dismissing CIPA claim because "opening a webpage" is "not a communication with content"). The Ninth Circuit did so despite the *Zynga* plaintiffs' argument that URLs could allow the defendant to associate the "page the user was previously viewing" to "the user's [Facebook] profile page and any personal information made available to the public on that page." *Zynga*, 750 F.3d at 1107. The URLs allegedly collected by Microsoft are not contents, and Plaintiffs fail to plead this essential element.

In a narrow set of circumstances, a URL might be "contents," but Plaintiffs allege no facts suggesting that limited exception applies here. In *Zynga*, the Ninth Circuit held that a URL could be "contents" if it reveals that "a user is using the Google search engine" *and* "the specific search terms the user had communicated to Google." *Id.* at 1108. This Court further recognized this distinction between non-"contents" URLs and URLs that "reproduce a person's personal search

---

Dec. 10, 2025). Microsoft likewise contends that Plaintiffs' CIPA pen register claim (Count 3) should be dismissed but does not argue that at length in light of the Court's decisions in *Fregosa* and *Mirmalek*. *See Mirmalek v. L.A. Times Commc'ns LLC*, No. 24-cv-01797, 2024 WL 5102709, at *3–4 (N.D. Cal. Dec. 12, 2024). Microsoft notes that many courts have dismissed CIPA pen register claims for conduct like that alleged here. *See, e.g.*, *Scharon v. Paramount Global*, No. 25STCV10585, 2025 WL 2996812, at *3 (Cal. Super. Ct. Oct. 03, 2025); *Heiting v. HP Inc.*, No. 24STCV29634, 2025 WL 2993673, at *4 (Cal. Super. Ct. Aug. 01, 2025); *Sanchez v. Cars.com Inc.*, No. 24STCV13201, 2025 WL 487194, at *3 (Cal. Super. Ct. Jan. 27, 2025); *Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 WL 1698147, at *2 (Cal. Super. Ct. Mar. 13, 2024). And the California Court of Appeal recently agreed to consider whether a Superior Court properly overruled a demurrer of a pen register claim. *See* Order to Show Cause, *Variety Media, LLC v. Super. Ct.*, No. B350578 (Cal. Ct. App. L.A. Cnty. Jan. 8, 2026). !

engine queries," which might be contents in some situations. *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1093 (N.D. Cal. 2022) (Breyer, J.). Here, ***none of the Plaintiffs have alleged that Microsoft collected their search terms or other input text through URLs***. Instead, they merely allege that Microsoft collected URLs "for each page of each website visited by an individual." Compl. ¶ 64. But this is exactly the argument that the Ninth Circuit rejected. *See Zynga*, 750 F.3d at 1108 (rejecting argument that "the webpage addresses contained in the referrer headers in this case revealed the contents of a communication, because they disclose specific information regarding a webpage that a user previously viewed"). Because URLs are not "a person's intended message to another," *id.* at 1106, and because that is the only communication Microsoft allegedly collected, Plaintiffs do not plausibly allege any contents of any communication, dooming their wiretap claims.

Courts routinely dismiss cases where plaintiffs, like the Plaintiffs here, merely allege that they visited and navigated websites without identifying any specific searches they performed that were collected by the defendant. *See also Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 70 (W.D. Pa. 2023) ("movements and clicks" constitute "a record of . . . movements within a digital space," not any "communicative" content); *King v. Hard Rock Cafe Int'l (USA), Inc.*, No. 24-cv-01119, 2025 WL 1635419, at *4 (E.D. Cal. June 9, 2025) (dismissing CIPA claims where pixel allegedly collected "button clicks" and "URLs" related to hotel "booking information"); *Griffith v. TikTok, Inc.*, No. 23-cv-00964, 2024 WL 5279224, at *10 (C.D. Cal. Dec. 24, 2024) (similar), *appeal filed*, No. 25-553 (9th Cir. Jan. 28, 2025); *Yoon*, 549 F. Supp. 3d at 1082 (similar).

The analysis of HTTP requests in *Fregosa* supports the conclusion that Plaintiffs have not adequately pleaded the interception of any communication "contents." In *Fregosa*, this Court held that the HTTP request from a user's browser to a website server is sufficient to plead a communication for certain CIPA pen register claims. *See* 2025 WL 2886399, at *5 (citing *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924 (N.D. Cal. 2024)). Here, if the Court was inclined to find that the same HTTP request suffices as a *communication* under an ECPA or CIPA wiretapping claim, that would still doom Plaintiffs' wiretapping claim because that HTTP request is not *content*. Plaintiffs allege that "HTTP requests, when intercepted by Microsoft, collect device information

that can also identify whether the same user is visiting multiple sites or apps." *See* Compl. ¶ 121. But the Ninth Circuit has already considered and rejected the argument that an HTTP request is communication content merely because it includes data about a website visitor and the website they visited. *See Zynga*, 750 F.3d at 1102 (affirming dismissal of wiretapping claim based on "HTTP request" that "included a referrer header that provided both the user's Facebook ID and the address of the Facebook webpage the user was viewing"). The Court should do the same here.

**2. Plaintiffs Fail to Allege that Any Interception Occurred "In Transit."**

Plaintiffs' wiretapping claims fail under both federal and California law for the independent reason that Plaintiffs do not plausibly allege that Microsoft intercepted any of their communications "in transit," as both statutes require. *See Adler v. Community.com, Inc.*, No. 21-cv-02416, 2021 WL 4805435, at *3–4 (C.D. Cal. Aug. 2, 2021); *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). CIPA presents an even higher "in transit" bar than ECPA, because not only must the content be intercepted while the communication is in transit, but the defendant must also read or attempt to learn the contents of the communication *while it is in transit*. Cal. Penal Code § 631(a). That is, as this Court has observed, CIPA requires that the defendant "attempt to understand or interpret the *substantive meaning* of a communication." *See Torres v. Prudential Fin.*, No. 22-cv-07465, 2025 WL 1135088, at *6 (N.D. Cal. Apr. 17, 2025) (Breyer, J.). Plaintiffs must thus allege that Microsoft acquired the contents of a communication during its transmission, not after it was received or stored by the website. *Id.*

Here, Plaintiffs offer only a conclusory assertion that the Xandr and UET pixels "intercepted" their communications "in transit." *See* Compl. ¶ 332. Plaintiffs plead no facts to support this. Their "formulaic recitation of the elements" does not suffice. *See Twombly*, 550 U.S. at 555; *see also Hammerling v. Google LLC*, No. 21-cv-09004, 2022 WL 17365255, at *10 (N.D. Cal. Dec. 1, 2022) (concluding that "allegations that Google collects 'real-time data' do not plausibly allege that Google collects data while 'in transit'").

More importantly, Plaintiffs allege facts that rebut their sole, conclusory "in transit" allegation. Plaintiffs allege that the Xandr and UET pixels allow Microsoft to "collect the URL values of pages visited." *See* Compl. ¶ 69. But, as the Ninth Circuit has explained, to visit a URL,

a website user's browser sends a request to the website's server, which then responds by delivering the requested content to the user's browser. *See Zynga*, 750 F.3d at 1101–02. Plaintiffs do not allege that either the Adnxs or the UET Pixel taps this connection by stepping in between the user's browser and the website server to intercept the communication enroute. To the contrary, Plaintiffs actually allege that Adnxs and UET pixels are "piece[s] of code" that are "integrate[d]" into and "loaded on" the websites themselves—at one end of the communication, not in between. *See* Compl. ¶¶ 53, 59, 64. Thus, according to Plaintiffs, any URLs collected using these pixels necessarily occurred after the website had received the user's request, after the communication arrived. *See id.*; *see also Griffith*, 2024 WL 5279224, at *10 (the "sequence" of transmission is determinative for interception claims). Plaintiffs fail to allege interception "in transit" under either the ECPA standard or the heightened CIPA standard.

The "in transit" requirement limits wiretapping claims to a narrow window for interception, given the speed of online activity. *See NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 951–52 (N.D. Cal. 2014). Indeed, the wiretapping statutes were not intended to apply to "mechanically deployed" data processing "with no intelligible understanding" of any underlying communication. *See Torres*, 2025 WL 1135088, at *6; *see also Doe v. Eating Recovery Ctr., LLC*, 806 F. Supp. 3d 1109, 1118 (N.D. Cal. 2025) (explaining that, under CIPA, "you must do something more than just intercept the communication while it is in transit to be held liable"). As this Court has previously explained, even where "communications are near instantaneous and cannot be meaningfully read or understood until later," it "would stretch CIPA's statutory language too far to interpret 'while . . . in transit' to encompass any hypothetical future attempt to read or understand the meaning of a communication.'" *Torres*, 2025 WL 1135088, at *6. Plaintiffs do not allege that Microsoft intercepted any communications between them and the websites they visited while those communications were in transit, much less that it attempted to "understand or interpret" any such communication in real time. Instead, as discussed above, any alleged collection occurred after the websites already received Plaintiffs' requests.

Simply put, Plaintiffs' own allegations defeat their federal and California wiretap claims. *See Konop*, 302 F.3d at 878–79; *Griffith*, 2024 WL 5279224, at *10; *see also Rosenow v.*

*Facebook, Inc.*, No. 19-cv-1297-WGH-MDD, 2020 WL 1984062, at *7 (S.D. Cal. Apr. 27, 2020) (dismissing ECPA claim when the plaintiff failed to allege facts to show acquisition "during transmission"); *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1110 (C.D. Cal. 2023) (dismissing CIPA claim because "[p]laintiffs must provide more than conclusory allegations that messages were 'intercepted in real time'").

**3. Plaintiffs' ECPA Claim Fails Because the Website Operators Consented to Use of Xandr and UET.**

ECPA is a one-party consent statute; it permits the interception of communications where one party to the communication consents. *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1095 (W.D. Wash. 2024); 18 U.S.C. § 2511(2)(d). Plaintiffs allege that each of the websites were parties to their so-called communications. *See, e.g.*, Compl. ¶ 373 (alleging that Plaintiffs' "interactions ***with each website*** are electronic communications" (emphasis added)). And they admit that the website operators, not Microsoft, installed the Xandr and UET pixels on their sites. *See id.* ¶ 53 (explaining "***website operators*** can integrate [pixels] into their websites" (emphasis added)). Because the websites chose to deploy these services, they consented to Microsoft's alleged collection of data through them. *Rodriguez v. Google LLC*, No. 20-cv-04688, 2021 WL 2026726, at *6 (N.D. Cal. May 21, 2021) (dismissing ECPA claim where "Google's alleged interceptions occurred with the consent of app developers"). Plaintiffs' own allegations show that the websites they visited consented to using the pixels and to the alleged wiretap. Hence, their ECPA claim fails.

ECPA's narrow crime-tort exception does not undermine the websites' consent. *See* 18 U.S.C. § 2511(2)(d). As this Court has previously held, allegations that a defendant merely "monetize[s] . . . data for targeted advertising" are insufficient to show that the defendant intercepted any communication "for the express purpose of committing" a tort. *See* Order on Motion to Dismiss at 25–26, *Rusow v. Skinspirit Essential LLC*, No. 3:24-cv-09317-CRB (N.D. Cal. Oct. 15, 2025), Dkt. 44 (Breyer, J.); *see also Allen v. Quicken Loans, Inc.*, No. 17-cv-12352, 2018 WL 5874088, at *6 (D.N.J. Nov. 9, 2018). Rather, for the crime-tort exception to apply, Plaintiffs must allege that Microsoft's interception was "done for the purpose of facilitating some

further impropriety, such as blackmail" that is "separate and independent from the act of the [alleged] recording." *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1135 (9th Cir. 2022) (quoting *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999)). Plaintiffs plead no such thing. Instead, Plaintiffs argue that Microsoft's alleged creation of "profiles" is an unlawful "use" of their data. Compl. ¶ 378. But this merely raises the "circular" logic that the Ninth Circuit has rejected. *See Planned Parenthood*, 51 F.4th at 1135–36. The crime-tort exception simply "cannot apply" in a case like this. *See In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014); *see also Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1057–58 (N.D. Cal. 2025).[5]

**4. The Court Should Dismiss Plaintiffs' Claims for Improper Use and Disclosure.**

Both ECPA and CIPA prohibit use and disclosure of unlawfully intercepted communications. *See* 18 U.S.C. § 2511(1)(c)–(d); Cal. Penal Code § 631. As explained, Plaintiffs do not allege facts showing that Microsoft unlawfully intercepted their communications. *Supra* p. 8–14. Therefore, they have not alleged facts that Microsoft used or disclosed such intercepted communications, requiring dismissal of their use and disclosure claims. *See* Compl. ¶¶ 333, 376; *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020) (holding that an improper use claim under CIPA's third clause requires an unlawful interception under one of the first two clauses).

**5. Plaintiffs Fail to Allege Aiding and Abetting Liability under CIPA.**

Plaintiffs claim that Microsoft "aid[ed] in the wiretapping of [Plaintiffs'] communications by Partner Pixels" by allegedly sharing anonymous information with them. *See, e.g.*, Compl. ¶¶ 182, 276. Just as Plaintiffs have not alleged facts establishing that *Microsoft* unlawfully

---

[5] This case is nothing like the cases cited in Plaintiffs' Complaint. *Cf. Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021) (exception applied where defendant "associate[ed] . . . data with preexisting user profiles" even though users enabled a private browsing mode); *Marden v. LMND Med. Grp., Inc.*, No. 23-cv-03288, 2024 WL 4448684, at *3 (N.D. Cal. July 3, 2024) (exception applied where defendant "purposefully configured its website to intercept individually identifiable information about highly sensitive health issues"); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 889, 901–02 (C.D. Cal. 2024) (exception applied where "private health information was rendered personally identifiable" because it was disclosed and associated with "active Facebook accounts").

intercepted their communications, or that it did so while any communication was in transit, they likewise have not alleged facts establishing that any *third party* has done so. *See Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1003 (N.D. Cal. 2024) (dismissing CIPA aiding and abetting claim where the plaintiff "fail[ed] to establish an underlying third-party violation"). There is nothing to aid and abet where there is no underlying unlawful conduct. Indeed, the Complaint contains only sparse allegations regarding how third-party pixels even supposedly operate.

Regardless, Plaintiffs' allegations about Microsoft's interactions with third-party pixels do not demonstrate that Microsoft aided and abetted any unlawful conduct: Microsoft's only alleged engagement with third party pixels consisted of "cookie syncing," i.e. attaching a random identifier to browsing data already collected, not the initial, simultaneous interception of communications. *See, e.g.*, Compl. ¶ 131. Plaintiffs' conclusory allegations that Microsoft "aids" the partner pixels' alleged wiretapping—without any explanation of how Microsoft supposedly assisted these partner pixels with the interception of communications as opposed to later marketing activity—are insufficient to state a claim. *See, e.g.*, *id.* ¶¶ 135, 252.

**B. The Rule of Lenity Requires Interpreting ECPA and CIPA Narrowly.**

ECPA and CIPA are criminal statutes that carry the weight of possible imprisonment. *See* 18 U.S.C. § 2511(4)(a); Cal. Penal Code §§ 631(a), 638.52(c). Their language must be "clear and definite" to "give fair notice" of prohibited conduct. *See Nosal*, 676 F.3d at 863. When in "doubt," courts "must choose the interpretation least likely to impose [unintended] penalties." *Id.* at 863 (cleaned up); *see also United States v. Lanier*, 520 U.S. 259, 266 (1997). This rule of lenity helps to protect against the sudden conversion of every-day conduct believed to be lawful into criminal conduct that could lead to imprisonment. Plaintiffs raise exactly this risk by asking the Court to adopt their interpretations of ECPA and CIPA; the Court should decline that invitation under the rule of lenity.

The conflicting interpretations of ECPA and CIPA by respected federal and state judges is perhaps the best proof that the statutes are ambiguous and should be subject to the rule of lenity. As mentioned above, while some federal courts have allowed CIPA pen register claims to survive the pleading stage, numerous state courts have reached the exact opposite conclusion (including

as to one of the exact Microsoft technologies at issue in this case). *Compare Greenley*, 684 F. Supp. 3d at 1050 (observing that "no court has interpreted this provision of CIPA" and concluding that online advertising software was a "pen register") *with Scharon*, 2025 WL 2996812, at *2–3 (concluding that online web technologies, *including Adnxs*, are not "pen registers," and any other interpretation would render the CCPA "a nullity"); *see also supra* n.4 (collecting cases). These conflicting judicial opinions leave no doubt that ECPA and CIPA's criminal provisions are ambiguous. Following the rule of lenity, courts should interpret ECPA and CIPA in ways least likely to impose criminal punishment.

The current "state of affairs with CIPA is untenable," given that "Courts are issuing conflicting rulings, and companies have no way of telling whether their online business activities will subject them to liability." *Eating Recovery Ctr.*, 806 F. Supp. 3d at 1112. There is an "absence of an express textual provision or an indication of legislative intent" supporting Plaintiffs' position, and the "rule of lenity applies." *See Vita v. New England Baptist Hosp.*, 243 N.E.3d 1185, 1205, 1207 (Mass. 2024) (citations modified). Any other conclusion would improperly and "unintentionally turn ordinary citizens into criminals." *Nosal*, 676 F.3d at 863; *Harrott v. County of Kings*, 25 Cal. 4th 1138, 1144 (2001); *see also In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 512–13 (S.D.N.Y. 2001) (refusing to interpret ECPA to criminalize "access[ing] cookies on users' hard drives").

**C. Plaintiffs Fail to Allege that Microsoft's Conduct Was Intentional or Willful**

Plaintiffs must plead that Microsoft *intended* to violate their privacy and, for their wiretapping and pen register claims, that it intended to intercept the contents of their communications. In particular, Plaintiffs' privacy claim requires pleading that Microsoft "intentionally intrude[d]" on "private affairs or concerns." Restatement (Second) of Torts § 652B (2025). And because both ECPA and CIPA are criminal statutes that must be interpreted consistently in both criminal and civil contexts, *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004), both wiretapping statutes have a scienter requirement: a defendant must "intentionally" act to violate ECPA and "willfully" act to violate CIPA. 18 U.S.C. § 2511(1)(a); Cal. Penal Code § 631(a). And both CIPA's wiretapping and pen register provisions—which are criminal

provisions—require showing criminal intent. *See* Cal. Penal Code § 20 ("In every crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence.").

The Ninth Circuit has held that this requires plaintiffs to show that defendants "acted consciously and deliberately with the goal of intercepting wire communications." *See United States v. Christensen*, 828 F.3d 763, 775 (9th Cir. 2015); *see also Briskin v. Shopify, Inc.*, No. 21-cv-06269, 2026 WL 161441, at *4–5 (N.D. Cal. Jan. 21, 2026). Plaintiffs make only conclusory allegations that Microsoft "willfully" or "intentionally" violated their privacy and intercepted and used their communications. *See, e.g.*, Compl. ¶¶ 316, 332, 374, 376, 377. That is not enough. *See Ashcroft*, 556 U.S. at 678 (explaining that "conclusory statements" supporting an element of a cause of action "do not suffice") (citation omitted).

The recent decision in *Briskin* supports dismissal for Plaintiffs' failure to plead Microsoft's conduct was intentional or willful. In *Briskin*, plaintiffs alleged that Shopify collected their interactions with websites that had installed its code. 2026 WL 161441, at *4–5. The *Briskin* Court noted that whether third-party websites with that code obtained proper consent from their visitors says nothing about whether Shopify intended to intercept communications. The Court then dismissed plaintiff's CIPA and privacy claims because they "fail[ed] to allege that defendants acted with the requisite intent to violate the statute." *Id.* Other courts agree that merely providing advertising technology, without more, is not enough to establish intentionality in analogous cases. *See Doe I v. Google LLC*, 741 F. Supp. 3d 828, 840 (N.D. Cal. 2024) (dismissing ECPA, CIPA, and invasion of privacy claims where Google "told developers not to send personally identifiable information through use of its source code"); *Tsering*, 2026 WL 89320, at *4 (dismissing privacy claim where plaintiffs failed "to plausibly allege that Meta knew it was collecting . . . data without . . . consent" where the relevant privacy policies disclosed the data collection); s*ee also B.K. v. Desert Care Network*, No. 23-cv-05021, 2024 WL 5338587, at *3 (C.D. Cal. Aug. 22, 2024) (similar).

The ECPA, CIPA, and privacy claims here should be dismissed for the same reason. Publicly available documents show that Microsoft generally requires its customers to comply with the law, including privacy laws, and provides them tools to do so. *See, e.g.*, Request for

Judicial Notice, Exs. F–G. More importantly, each of the websites referenced in Plaintiffs' Complaint explicitly discloses the collection and sharing of data for advertising.[6] Plaintiffs fail to plead that Microsoft acted willfully or intentionally, and all ECPA, CIPA, and privacy claims should be dismissed.

**D. Plaintiffs Fail to Plead Intrusion Upon Seclusion.**

To support this claim under California law, Plaintiffs must plead that (1) Microsoft "intentionally intrude[d] into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy," and (2) the intrusion "occur[red] in a manner highly offensive to a reasonable person." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009). This is a "high bar" that Plaintiffs have not met. *See Belluomini v. Citigroup, Inc.*, No. CV 13-01743, 2013 WL 3855589, at *6 (N.D. Cal. July 24, 2013).[7]

**1. Plaintiffs Do Not Plead a Reasonable Expectation of Privacy.**

Plaintiffs fail to allege circumstances that would make it objectively reasonable for them to believe their interactions with the Websites would not be disclosed for advertising. Whether a plaintiff's purported "expectation of privacy is reasonable [depends on] the particular setting or context at issue." *Mathews v. Becerra*, 8 Cal. 5th 756, 770 (2019). The context alleged here is browsing public webpages. This context of "[c]ontemporary internet browsing involves the collection of users' data, including by tracking users across the internet, *and a reasonable user should expect as much*." *Hubbard v. Google LLC*, No. 19-cv-07016, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024). Plaintiffs fail to plausibly plead a reasonable expectation of privacy.

*First*, as this Court has observed, "[a]s a matter of law, there is generally no reasonable expectation of privacy over the information communicated on a website." *Rusow*, Dkt. 44 at 22. Accordingly, Courts routinely hold that internet users do not have a reasonable expectation of privacy in things like "URLs of web pages visited" or device information, and dismiss similar

[6] *See, e.g.*, Request for Judicial Notice, Exs. A at 5–6, B at 5–7, C at 14, D at 2–4, E at 1, 5–7. Plaintiffs' Complaint analyzes the relevant websites in detail. The Court therefore can consider privacy policies publicly posted on those websites. *See, e.g.*, *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 976 (N.D. Cal. 2015) (taking judicial notice of publicly available privacy policies).

[7] Plaintiffs cannot state a claim for intrusion upon seclusion under California law on behalf of non-California residents, because California common-law does not apply extraterritorially.

claims on that basis. *See Thomas v. Papa Johns Int'l, Inc.*, No. 22-CV-2012, 2024 WL 2060140, at *4 (S.D. Cal. May 8, 2024) (dismissing privacy claim and collecting cases). Where, as here, Plaintiffs fail to allege how their interactions with the websites would otherwise lead to any reasonable expectation of privacy, dismissal is appropriate. *See Harrill v. Emanuel Med. Ctr.*, No. 23-cv-01672, 2025 WL 1635428, at *6 (E.D. Cal. June 9, 2025) (dismissing intrusion upon seclusion claim where the plaintiff failed to allege how she shared any medical data with a website). While there are instances where courts have found that individuals might have reasonable expectations of privacy online, such as when a defendant intercepts sensitive information or makes misrepresentations, this is not one of them. For example, in *Rusow*, this Court denied the defendant's motion to dismiss a privacy claim because it allegedly intercepted "personally identifiable" medical information. *Rusow*, Dkt. 44 at 20–23.[8] No collection of sensitive information is alleged here. Nor is this case like *In re Facebook*, where Facebook represented it would not track users when they were logged out, then allegedly did so anyway. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 602 (9th Cir. 2020) (describing statements that "affirmatively stated that logged-out user data would not be collected").

*Second*, California statutes make it clear that consumers do not have a reasonable expectation of privacy in the kind of web-browsing information allegedly collected by Microsoft. The California Supreme Court has called out "sources of positive law governing the right to privacy," like "statutory enactment," as particularly important when assessing privacy interests. *See Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 36 (1994). The CCPA and CIPA are both instructive. The CCPA allows the collection and sharing of website activity information for advertising without affirmative consent as long as websites provide adequate privacy policies and, when necessary, a way to opt out. *See* Cal. Civ. Code. §§ 1798.120, 1798.135; *see also id.* § 1798.99.80(c) (implementing rules for "data brokers" who "collect[] and sell[] to third parties the personal information of a consumer with whom the business does not have a direct relationship"). That is exactly what occurred here, as each of the websites' privacy policies

[8] As explained above, Plaintiffs' Complaint references the Adnxs Pixel appearing on the Plushcare medical website, but none of the Plaintiffs allegedly visited that site or otherwise allege Microsoft collected their health data. *See* Compl. ¶¶ 224–233.

plainly disclosed the information allegedly collected. Similarly, CIPA includes a provision that *presumes* that businesses compile marketing lists that associate individuals with their interests, purchases, demographic profile, membership, or affiliation, *even using name and address* (which Microsoft does not do), and imposes no consent requirement to do so. *See* Cal. Penal Code § 637.9(f)(4).

Because California law regulates the data practices at issue and permits the type of data collection alleged *without* requiring opt-in consent, Plaintiffs cannot reasonably claim an expectation of privacy against such data collection.[9] This is especially true because Plaintiffs allege only the pseudonymous collection of commonly collected information such as IP address and pages visited in relation to mundane commercial browsing activity. *See United States v. Forrester*, 512 F.3d 500, 509–10 (9th Cir. 2008) ("Internet users have no expectation of privacy in . . . the IP addresses of the websites they visit[.]"); *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1190 (N.D. Cal. 2020) (similar).

Plaintiffs have failed to plausibly allege any expectation of privacy in the allegedly collected information, and the Court should dismiss Plaintiffs' invasion of privacy claim for this reason alone. *See Thomas*, 2024 WL 2060140, at *2 (joining "a number of courts" finding "that consumers do not have a reasonable expectation of privacy" in internet routine commercial browsing activity) (collecting cases); *see also Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012).

**2. Plaintiffs Do Not Allege Highly Offensive Conduct.**

To state an intrusion claim, Plaintiffs must also allege an invasion that is "sufficiently serious" to constitute "an *egregious breach* of the social norms underlying the privacy right." *Hill*, 7 Cal. 4th at 26, 37. Plaintiffs fall far short of alleging any "egregious breach" of social norms.

---

[9] The CCPA imposes additional requirements regarding "sensitive personal information," which includes "[p]ersonal information collected and analyzed concerning a consumer's health." Cal. Civ. Code § 1798.140(ae)(2)(B). However, no Plaintiff alleges that Microsoft collected and analyzed this information.

*First*, Microsoft's conduct cannot be highly offensive because it is mundane and ubiquitous. As this Court has acknowledged, "courts in this district have consistently refused to characterize the disclosure of common, basic digital information to third parties a serious or egregious violations of social norms." *Rusow*, Dkt. 44 at 24 (citation modified). At bottom, this is all Plaintiffs allege: "routine commercial behavior" akin to "obtaining [a person's] address without his knowledge or permission" to "mail [that person] coupons and other advertisements." *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992–93 (2011), *as modified* (June 7, 2011). This is not an egregious breach of social norms. *See also In re Google, Inc. Priv. Pol'y Litig.*, 58 F. Supp. 3d 968, 985 (N.D. Cal. 2014); *see also In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (disclosing "unique device identifier number, personal data, and geolocation information" was not "an egregious breach of social norms"); *Cook*, 689 F. Supp. 3d at 72 (dismissing intrusion upon seclusion claim under California law based on alleged collection of online shopping interactions by session replay and collecting cases). Plaintiffs' failure to plead highly offensive conduct by Microsoft also requires dismissing this claim. *See Hubbard*, 2024 WL 3302066, at *8.

*Second*, as argued above, California law allows the kind of on-line information collection and use alleged by Plaintiffs. *See supra* pp. 4–5, 18–19. Microsoft's alleged actions are consistent with the CCPA and CIPA. They are also commonplace, as seen in the Complaint's own allegations. *See, e.g.*, Compl. ¶ 2 (alleging that the "real-time-bidding ecosystem" is "present on thousands of major websites"). Plaintiffs cannot plausibly allege that Microsoft's conduct was egregious.

*Third*, Microsoft's alleged conduct cannot be highly offensive when it was clearly disclosed to Plaintiffs through the websites' privacy policies. *See supra* p. 18 & n.6. Plaintiffs' claim thus should be dismissed. *See Tsering*, 2026 WL 89320, at *7 (dismissing an intrusion upon seclusion claim because the complaint failed to "plausibly allege that Meta knew that it was collecting third-party app users' geolocation data without their consent" and thus did not "intentionally engage[] in a secret or deceptive, and thus highly offensive, intrusion").

**E. Plaintiffs Fail to State a Claim for Unjust Enrichment.**

Plaintiffs claim they are entitled to restitution on the basis that Microsoft "unlawfully trafficked" in their data "without their consent for substantial profits." Compl. ¶¶ 354, 356–57. This does not state a claim for unjust enrichment.[10]

*First*, unjust enrichment "is not a cause of action, just a restitution claim." *See Low*, 900 F. Supp. 2d at 1031 (collecting cases); *see also* 1 B.E. Witkin, *Summary of California Law*, Contracts § 1050 (11th ed. 2025) (collecting cases). When courts have allowed independent unjust enrichment claims to proceed, they do so by re-interpreting the claim as one for restitution under a quasi-contract. But there is no privity here. *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016). Plaintiffs do not allege privity or even interaction with Microsoft, and do not point to purported promises made by Microsoft to Plaintiffs regarding the conduct at issue. A quasi-contract claim thus could not apply. *See Hammerling*, 615 F. Supp. 3d at 1096 (dismissing claim where plaintiff failed to allege a misrepresentation or omission).

*Second*, unjust enrichment requires Microsoft to have "unjustly retained a benefit at the plaintiff's expense." *ESG Cap. Partners*, 828 F.3d at 1038. Plaintiffs do not allege as much. "[I]t is not enough that" the Plaintiffs allegedly provided a benefit to Microsoft (which Microsoft does not concede); Plaintiffs "must also allege that [Microsoft] unjustly secured that benefit through qualifying conduct." *Russell v. Walmart, Inc.*, 680 F. Supp. 3d 1130, 1133 (N.D. Cal. July 5, 2023) (citations modified). For example, Plaintiffs have not alleged any "mistake, fraud, coercion, or request" that would typically undergird a finding of "unjust" conduct. *Id.* (citation modified); *see also Hammerling*, 615 F. Supp. 3d at 1096; *Dinosaur Dev., Inc. v. White*, 216 Cal. App. 3d 1310, 1316 (1989). To the contrary, Microsoft and the websites are transparent about the practices challenged in the Complaint. *See supra* p. 18 & n.6. And Plaintiffs fail to show that any enrichment to Microsoft was "at their expense." *Cf.* Compl. ¶ 47 (alleging that Microsoft "enriches the value that website users would otherwise command" but not at Plaintiffs' expense).

---

[10] California unjust enrichment law does not apply extraterritorially, so Plaintiffs cannot bring such a claim on behalf of nationwide class that includes non-California residents.

*Third*, Plaintiffs have not pleaded they lack an adequate remedy at law, a fundamental prerequisite for their equitable unjust enrichment claim. *Chiulli v. Am. Honda Motor Co.*, 690 F. Supp. 3d 1038, 1062 (N.D. Cal. 2023). Indeed, they seek money damages. *See* Compl. at 82. This bars them from seeking equitable relief. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (affirming dismissal of claims for equitable restitution where the plaintiff "requested in damages to compensate her for the same past harm"); *Vance v. Google LLC*, No. 20-cv-04696, 2024 WL 5011611, at *7 (N.D. Cal. Dec. 5, 2024) (similar).

## VI. CONCLUSION

For the foregoing reasons, Microsoft respectfully requests that the Court dismiss the Complaint with prejudice for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6).

DATED: March 16, 2026

**PERKINS COIE LLP**

By: /s/ James G. Snell
James G. Snell (SBN 173070)
**PERKINS COIE LLP**
3150 Porter Drive
Palo Alto, California 94304-1212
Phone: (650) 838-4300
E-mail: JSnell@perkinscoie.com

Nicola Menaldo (pro hac vice forthcoming)
Jordan C. Harris (pro hac vice forthcoming)
**PERKINS COIE LLP**
1301 Second Avenue, Suite 4200
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000
Email: NMenaldo@perkinscoie.com
Email: JordanHarris@perkinscoie.com

Justin Potesta (SBN 314133)
**PERKINS COIE LLP**
405 Colorado Street, Suite 1700
Austin, TX 78701
Tel: (737) 256.6137
Email: JPotesta@perkinscoie.com

*Attorneys for Defendant Microsoft Corporation*