James G. Snell, Bar No. 173070
JSnell@perkinscoie.com
**PERKINS COIE LLP**
3150 Porter Drive
Palo Alto, California 94304-1212
Telephone: +1.650.838.4300
Facsimile: +1.650.838.4350

*Attorneys for Defendant*
*MICROSOFT CORPORATION*

*[additional counsel listed in signature block]*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO/OAKLAND DIVISION

STACY PENNING, SUNGGIL HONG, LAURA BONETTI, JONATHAN FINESTONE, and DILARA USKUP individually and on behalf of all others similarly situated,

Plaintiffs,

v.

MICROSOFT CORPORATION,

Defendant.

Case No. 3:25-cv-10557-CRB

[Removed from San Francisco County Superior Court, Case No. CGC2569612]

**DEFENDANT MICROSOFT CORPORATION'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

[*Request for Judicial Notice filed concurrently herewith*]

Judge: Hon. Charles R. Breyer
DATE: Aug 14, 2026
TIME: 10:00 a.m.
CTRM: 6, 17th Floor

Complaint Filed: September 25, 2025
Action Removed: December 9, 2025

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 14, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard, Defendant Microsoft Corp. will bring for hearing, in Courtroom 6 (17th Floor) of the above-captioned court located at 450 Golden Gate Avenue, San Francisco, California 94102, a Motion seeking an Order to Dismiss Plaintiffs' First Amended Complaint. This Motion is based upon this Notice of Motion, the supporting Memorandum of Points and Authorities, the Request for Judicial Notice and attached exhibits, the pleadings and other papers on file herein, and upon such oral argument as the Court may entertain at the hearing on this Motion.

## STATEMENT OF RELIEF SOUGHT – L.R. 7-2(B)(3)

Microsoft moves for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), on the ground that Plaintiffs fail to satisfy the basic pleading standards required to state a claim for relief.

## SUMMARY OF ARGUMENT

Plaintiffs' Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for the following reasons:

1. Plaintiffs fail to allege that Microsoft acted willfully or intentionally, defeating their intrusion upon seclusion, wiretapping, and pen register claims. *See Briskin v. Shopify*, No. 21-cv-06269, 2026 WL 161441, at *4–5 (N.D. Cal. Jan. 21, 2026).

2. Plaintiffs' wiretapping claims under the California Invasion of Privacy Act ("CIPA") and the Electronic Communications Privacy Act ("ECPA") fail because they (a) do not allege interception of "contents" of communications, (b) do not allege interception "in transit," (c) allege that website operators consented, defeating their ECPA claim, (d) fail to allege improper use or disclosure under ECPA, and (e) fail to allege that Microsoft aided or abetted another entity's violation of these statutes. *See, e.g.*, *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1103 (9th Cir. 2014); Order on Motion to Dismiss at 25–26, *Rusow v. Skinspirit Essential LLC*, No. 24-cv-09317 (N.D. Cal. Oct. 15, 2025), Dkt. 44; *Doe v. Eating Recovery Ctr., LLC*, 806 F. Supp. 3d 1109, 1118 (N.D. Cal. 2025).

3. Plaintiffs' eavesdropping claim under Section 632 of CIPA fails because they fail to allege the recording of a "confidential communication" since "device-to-server transmissions are 'by their very nature recorded on the [device] of at least the recipient' and thus are not 'confidential' communications under Section 632." *In re Apple Data Priv. Litig.*, No. 22-cv-07069, 2026 WL 146025, at *5 (N.D. Cal. Jan. 20, 2026) (quoting *In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *23 (N.D. Cal. Sept. 26, 2013) (holding that emails not "confidential" under Section 632)). Plaintiffs' Section 632 claims must therefore be dismissed because internet communications are categorically presumed *not* to be confidential and Plaintiffs offer no allegations establishing special circumstances to overcome this fact.

4. Plaintiffs fail to state a claim under California's pen register statute, which a growing number of courts have held does not apply as Plaintiffs allege, an issue recently taken up by the California Court of Appeal. *See Variety Media, LLC v. Super. Ct.*, No. B350578 (Cal. Ct. App., L.A. Cnty. Jan. 8, 2026).

5. The rule of lenity precludes application of criminal statutes like ECPA and CIPA here, given that it requires interpreting ambiguous criminal statutes narrowly. *See, e.g.*, *United States v. Nosal*, 676 F.3d 854, 862–63 (9th Cir. 2012) (citation modified); *see also Eating Recovery Ctr.*, 806 F. Supp. 3d at 1112.

6. Plaintiffs' intrusion upon seclusion claim fails because Plaintiffs do not have a reasonable expectation of privacy in generic web browsing data, including because the websites they visited disclosed the activities they target and California law permits this practice. *See, e.g.*, *Thomas v. Papa Johns Int'l, Inc.*, No. 22-cv-02012, 2024 WL 2060140, at *2 (S.D. Cal. May 8, 2024) (collecting cases), *aff'd*, No. 24-3557, 2025 WL 1704437 (9th Cir. June 18, 2025). Microsoft's conduct is routine commercial activity that is not highly offensive as a matter of law. *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090–91 (N.D. Cal. 2022) (Breyer, J.).

DATED: June 22, 2026

**PERKINS COIE LLP**

By: */s/ James G. Snell*

James G. Snell (SBN 173070)
**PERKINS COIE LLP**
3150 Porter Drive
Palo Alto, California 94304-1212
Phone: (650) 838-4300
Email: JSnell@perkinscoie.com

Nicola Menaldo
Jordan C. Harris
**PERKINS COIE LLP**
1301 Second Avenue, Suite 4200
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000
Email: NMenaldo@perkinscoie.com
Email: JordanHarris@perkinscoie.com

Justin Potesta (SBN 314133)
**PERKINS COIE LLP**
405 Colorado Street, Suite 1700
Austin, TX 78701
Tel: (737) 256.6137
Email: JPotesta@perkinscoie.com

*Attorneys for Defendant*
*Microsoft Corporation*

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1
II. STATEMENT OF ISSUES TO BE DECIDED – L.R. 7-4(A)(3) ..... 3
III. BACKGROUND ..... 3
A. The Online Advertising Ecosystem and Microsoft ..... 3
B. The Legal Framework Regulating Online Advertising ..... 4
C. The Xandr and Microsoft Services Alleged in the Complaint ..... 5
D. Plaintiffs' Allegations Related to Their Alleged Website Visits ..... 6
E. Procedural History ..... 7
IV. LEGAL STANDARD ..... 8
V. ARGUMENT ..... 8
A. Plaintiffs Fail to Allege that Microsoft's Conduct Was Intentional or Willful ..... 8
B. Plaintiffs Fail to Allege Unlawful Wiretapping under ECPA or CIPA. ..... 10
1. Plaintiffs Fail to Allege that Microsoft Intercepted the Contents of any Communication. ..... 11
2. Plaintiffs Fail to Allege that Any Interception Occurred "In Transit." ..... 14
3. Plaintiffs' ECPA Claim Fails Because the Website Operators Consented to Use of Xandr and UET ..... 16
4. The Court Should Dismiss Plaintiffs' Claims for Improper Use and Disclosure. ..... 17
5. Plaintiffs Fail to Allege Aiding and Abetting Liability under CIPA. ..... 17
C. Plaintiffs Fail to State a Claim for Eavesdropping Under Section 632 of CIPA. ..... 18
D. Plaintiffs Fail to Allege a Claim Under the Pen Register Act. ..... 19
E. The Rule of Lenity Requires Interpreting ECPA and CIPA Narrowly. ..... 20
F. Plaintiffs Fail to Plead Intrusion Upon Seclusion. ..... 22
1. Plaintiffs Do Not Plead a Reasonable Expectation of Privacy. ..... 22

2. Plaintiffs Do Not Allege Highly Offensive Conduct. .............................. 24
VI. CONCLUSION ........................................................................................................ 25

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Adler v. Community.com, Inc.*,
No. 21-cv-02416, 2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) ... 14

*Allen v. Quicken Loans, Inc.*,
No. 17-cv-12352, 2018 WL 5874088 (D.N.J. Nov. 9, 2018) ... 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... 8

*Attebery v. Atlas Fin. Sols., Inc.*,
No. 25STCV30118 (Cal. Super. Ct., May 8, 2026) ... 19

*Augustine v. Great Wolf Resorts, Inc.*,
No. 23-cv-00281, 2024 WL 3450967 (S.D. Cal. July 18, 2024) ... 11

*B.K. v. Desert Care Network*,
No. 23-cv-05021, 2024 WL 5338587 (C.D. Cal. Aug. 22, 2024) ... 11

*Balabbo v. Wildflower Brands, LLC*,
No. 25STCV20971, 2026 WL 1122773 (Cal. Super. Ct. Apr. 6, 2026) ... 20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ... 8, 14

*Belluomini v. Citigroup, Inc.*,
No. CV 13-01743, 2013 WL 3855589 (N.D. Cal. July 24, 2013) ... 23

*Blalock v. EquipmentShare.com Inc.*,
No. 30-2025-01508739-CU-MC-CJC (Cal. Super. Ct., Feb. 25, 2026) ... 19

*Boulton v. Community.com, Inc.*,
No. 23-3145, 2025 WL 314813 (9th Cir. Jan. 28, 2025) ... 19

*Briskin v. Shopify*,
No. 21-cv-06269, 2026 WL 161441 (N.D. Cal. Jan. 21, 2026) ... 1, 9, 10

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ... 12

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ... 17

*Cammorata v. Sonifi Sols., Inc.*,
No. 25STCV25259, 2026 WL 500856 (Cal. Super. Ct. Feb. 18, 2026) ... 20

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) ....................18

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023) ....................14, 26

*DellaSala v. Samba TV, Inc.*,
No. 25-CV-03470, 2025 WL 3034069 (N.D. Cal. Oct. 30, 2025) ....................23

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ....................11

*Doe v. Eating Recovery Ctr., LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) ....................1, 2, 16, 21, 22

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) ....................4

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011), *as modified* (June 7, 2011) ....................25

*Fregosa v. Mashable, Inc.*,
No. 25-cv-01094, 2025 WL 2886399 (N.D. Cal. Oct. 9, 2025), *motion to certify appeal denied*, No. 25-cv-01094, 2026 WL 183857 (N.D. Cal. Jan. 23, 2026) ....................12, 14, 20

*Gonzales v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018) ....................12

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) ....................5, 22

*Griffith v. TikTok, Inc.*,
No. 23-cv-00964, 2024 WL 5279224 (C.D. Cal. Dec. 24, 2024), *appeal filed*, No. 25-553 (9th Cir. Jan. 28, 2025) ....................14, 15, 16

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ....................2, 13

*Hammerling v. Google LLC*,
No. 21-cv-09004, 2022 WL 17365255 (N.D. Cal. Dec. 1, 2022), *aff'd*, No. 22-17024, 2024 WL 937247 (9th Cir. Mar. 5, 2024) ....................15

*Harrill v. Emanuel Med. Ctr.*,
No. 23-cv-01672, 2025 WL 1635428 (E.D. Cal. June 9, 2025) ....................23

*Harrott v. County of Kings*,
25 Cal. 4th 1138 (2001) ....................22

*Hayter v. PHH Mortg. Corp.*,
No. 15-cv-03332, 2016 WL 3902483 (N.D. Cal. July 19, 2016)....9

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) ....25

*Heiting v. HP Inc.*,
No. 24STCV29634, 2025 WL 2993673 (Cal. Super. Ct. Aug. 1, 2025) ....20, 22

*Heiting v. Wildflower Brands, LLC*,
No. 25STCV18507, 2026 Cal. Super. LEXIS 30729 (Cal. Super. Ct. Apr. 16, 2026) ....20

*Hernandez v. Hillsides Inc.*,
47 Cal. 4th 272 (2009) ....9, 23

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) ....24, 25

*Hubbard v. Google LLC*,
No. 19-cv-07016, 2024 WL 3302066 (N.D. Cal. July 1, 2024)....23

*In re Apple Data Priv. Litig.*,
No. 22-cv-07069, 2026 WL 146025 (N.D. Cal. Jan. 20, 2026)....2, 19, 20

*In re DoubleClick Inc. Priv. Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001)....22

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ....18

*In re Google Inc. Gmail Litig.*,
No. 13-MD-02430, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ....2, 19

*In re Google Inc. Gmail Litig.*,
No. 13–MD–02430, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ....17

*In re Google, Inc. Priv. Pol'y Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) ....25

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ....26

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ....11

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014).... passim

*King v. Hard Rock Cafe Int'l (USA), Inc.*,
No. 24-cv-01119, 2025 WL 1635419 (E.D. Cal. June 9, 2025) ....................14

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005)....................10

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002)....................14, 16

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) ....................17

*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023) ....................16

*Licea v. Hickory Farms LLC*,
No. 23STCV26148, 2024 WL 1698147 (Cal. Super. Ct. Mar. 13, 2024) ....................20, 21, 22

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ....................25

*Lozano v. City of Los Angeles*,
73 Cal. App. 5th 711 (2022) ....................9, 10

*Manier v. Triple Lift Inc*,
No. 25-cv-03223, 2026 WL 1295546 (C.D. Cal. Apr. 15, 2026) ....................9, 10

*Marden v. LMND Med. Grp., Inc.*,
No. 23-cv-03288, 2024 WL 4448684 (N.D. Cal. July 3, 2024)....................17

*Mathews v. Becerra*,
8 Cal. 5th 756 (2019) ....................23

*Mirmalek v. L.A. Times Commc'ns LLC*,
No. 24-cv-01797, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024)....................20

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024)....................16

*NovelPoster v. Javitch Canfield Grp.*,
140 F. Supp. 3d 938 (N.D. Cal. 2014) ....................15

*Opperman v. Path, Inc.*,
84 F. Supp. 3d 962 (N.D. Cal. 2015) ....................10

*Penning v. Microsoft Corp.*,
No. 25-cv-00570 (W.D. Wash. April 1, 2025) ....................8

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) ....................17

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ....................8

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ....................17

*Revitch v. New Moosejaw, LLC*,
No. 18-cv-06827, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ....................18

*Rodriguez v. Google LLC*,
No. 20-cv-04688, 2021 WL 2026726 (N.D. Cal. May 21, 2021)....................17

*Rodriguez v. IMDB.com, Inc.*,
No. 24STCV14922, 2026 WL 886927 (Cal. Super. Ct. Mar. 24, 2026) ....................20

*Rodriguez v. Ink Am. Int'l. Grp. LLC*,
No. 25STCV15350, 2025 WL 4034985 (Cal. Super. Ct. Dec. 10, 2025)....................12

*Rodriguez v. Sparc Grp., LLC*,
No. 24STCV26946, 2025 WL 2993671 (Cal. Super. Ct. July 9, 2025) ....................21

*Rosenow v. Facebook, Inc.*,
No. 19-cv-1297, 2020 WL 1984062 (S.D. Cal. Apr. 27, 2020)....................16

*Rusow v. Skinspirit Essential LLC*,
No. 24-cv-09317, 2025 WL 4657637 (N.D. Cal. Oct. 15, 2025) ....................16

*Rusow v. Skinspirit Essential LLC*,
No. 24-cv-09317 (N.D. Cal. Oct. 15, 2025)....................1, 23, 24, 25

*Sanchez v. Cars.com Inc.*,
No. 24STCV13201, 2025 WL 487194 (Cal. Super. Ct. Jan. 27, 2025)....................20, 22

*Schallert v. Orkin LLC*,
No. 24STCV31244, 2025 WL 4332757 (Cal. Super. Ct. Dec. 15, 2025)....................20

*Schallert v. Palo Alto Networks, Inc.*,
No. 25STCV17109, 2026 WL 754028 (Cal. Super. Ct. Mar. 6, 2026) ....................20

*Scharon v. Paramount Glob.*,
No. 25STCV10585, 2025 WL 2996812 (Cal. Super. Ct. Oct. 3, 2025) ....................20, 22

*Seven Arts Filmed Ent., Ltd. v. Content Media Corp.*,
733 F.3d 1251 (9th Cir. 2013)....................8

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) ....................14

*Sussman v. Am. Broad. Cos.*,
186 F.3d 1200 (9th Cir. 1999)....................17

*Tavernetti v. Super. Ct.*,
22 Cal. 3d 187 (1978) ....................11

*Thomas v. Papa Johns Int'l, Inc.*,
No. 22-cv-02012, 2024 WL 2060140 (S.D. Cal. May 8, 2024), *aff'd*, No. 24-3557, 2025 WL 1704437 (9th Cir. June 18, 2025) ....................2, 23, 25

*Torres v. Prudential Fin.*,
No. 22-cv-07465, 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025)....................15, 16

*Tsering v. Meta Platforms, Inc.*,
No. 25-cv-01611, 2026 WL 89320 (N.D. Cal. Jan. 12, 2026)....................3, 11, 26

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015)....................9

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008)....................25

*United States v. Lanier*,
520 U.S. 259 (1997)....................21

*United States v. Nosal*,
676 F.3d 854 (9th Cir. 2012)....................2, 21, 22

*Variety Media, LLC v. Super. Ct.*,
No. B350578 (Cal. Ct. App., L.A. Cnty. Jan. 8, 2026)....................2, 20

*Vita v. New England Baptist Hosp.*,
243 N.E.3d 1185 (Mass. 2024) ....................22

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ....................12, 14

**STATUTES**

18 U.S.C. § 2510(8) ....................11

18 U.S.C. § 2511 .................... *passim*

18 U.S.C. § 2516....................4

18 U.S.C. § 2520....................4

18 U.S.C. § 3121 *et seq.* .......... 4

Cal. Civ. Code § 1798.100 *et seq.* .......... *passim*

Cal. Penal Code § 20 .......... 9

Cal. Penal Code § 631 .......... *passim*

Cal. Penal Code § 632(c) .......... 19

Cal. Penal Code § 638.50(b) .......... 4

Cal. Penal Code § 638.52(c) .......... 21

**RULES**

Fed. R. Civ. P. 12(b)(6) .......... passim

**OTHER AUTHORITIES**

A.B. 566, 2025–2026 Reg. Sess. (Cal. 2025) .......... 5

A.B. 929, 2015–2016 Reg. Sess. (Cal. 2015) .......... 4

California Privacy Rights Act of 2020 ("CPRA"), Cal. Prop. 24, § 3(C) (Gen. Election Nov. 3, 2020) .......... 5

Microsoft, *Microsoft Privacy Statement*, https://www.microsoft.com/en-us/privacy/privacystatement (Mar. 2026) .......... 4

Microsoft, *Online advertising self-regulatory organizations,* https://learn.microsoft.com/en-us/xandr/policies-regulations/online-advertising-self-regulatory-organizations (last visited June 21, 2026) .......... 4

Networl Advertising Initiative, *Privacy Principles for Members*, https://thenai.org/self-regulatory-framework/privacy-principles-for-members/ (last visited June 21, 2026) .......... 4

Restatement (Second) of Torts § 652B (2025) .......... 9

## I. INTRODUCTION

Plaintiffs allege they visited hundreds of public websites that used Microsoft's Adnxs Pixel or Bing Pixel. When Plaintiffs visited those websites, they browsed for information or goods just as they would in a public hotel lobby, bike shop, or bookstore. They did not give private information to the websites or seek information on sensitive topics. And all the websites they visited provided the Plaintiffs with published policies explaining that the sites collected information about their visits and shared that information with third parties for advertising. Plaintiffs allege that the websites did just what the notices said—they collected basic information about Plaintiffs' visits such as their IP addresses, device information, browser information, and the pages they visited and shared that information with third parties for advertising. In total, Plaintiffs describe their own everyday web-browsing and the unremarkable exchange of IP address and similar information that occurs virtually every time someone visits a website. Such practices are ubiquitous, consistent with the law, and adequately disclosed in websites' published privacy policies that explain how such information is collected and used to tailor advertising and fund websites. Plaintiffs now contend that Microsoft committed wiretapping and invaded their privacy by receiving—through widely deployed advertising pixels—the same browsing data that the websites' own privacy policies told Plaintiffs would be shared with third parties for advertising. That is not actionable conduct. Plaintiffs have not and cannot plead their claims for relief, and their Complaint should be dismissed.

Plaintiffs seek payment by twisting decades-old statutes that never conceived of the internet or the routine transmission of IP addresses, device identifiers, and browsing data that enables websites to operate securely and deliver content to visitors. Plaintiffs ignore that their theory conflicts with more recent legislation that expressly permits this conduct. The California Consumer Privacy Act ("CCPA") allows websites to gather information from visitors and share it with advertisers so long as the websites post policies about the collection and give visitors a way to opt out. Plaintiffs make no allegation that Microsoft or any of the hundreds of websites they allegedly visited violated the CCPA, nor that Plaintiffs ever tried to exercise their rights under that statute. Instead, they try to distort criminal statutes for statutory damages and exploit inapplicable privacy torts. Their efforts fail for the following reasons.

***First***, Plaintiffs cannot allege that Microsoft intentionally or willfully intercepted their information, defeating (at a minimum) their claims for intrusion upon seclusion (Count 1), wiretapping (Counts 2 and 5), and eavesdropping (Count 4).

***Second***, Plaintiffs' wiretapping claims under the California Invasion of Privacy Act ("CIPA") and the Electronic Communications Privacy Act ("ECPA") (Counts 2 and 5) fail because Plaintiffs do not plausibly allege that Microsoft intercepted the "contents" of communications, much less that it did so while the alleged communications were "in transit." Plaintiffs' ECPA claim fails for the additional reason that Plaintiffs allege that the website operators consented to the alleged conduct, and ECPA is a one-party consent statute. Finally, in the absence of an unlawful interception, Plaintiffs cannot state a claim under CIPA or ECPA for any alleged use or disclosure, nor for aiding or abetting a violation by another entity.

***Third***, Plaintiffs' CIPA eavesdropping fails because this claim requires a "confidential communication" and "California courts presume that internet communications do not give rise to a reasonable expectation of privacy, in part because they are written communications that are by their very nature recorded." *In re Apple Data Priv. Litig.*, 2026 WL 146025, at *5 (N.D. Cal. Jan. 20, 2026) (citations omitted).

***Fourth**,* Plaintiffs fail to state a claim under CIPA's pen register provision (Count 3), which a growing number of courts have held does not apply as Plaintiffs allege, an issue recently taken up by the California Court of Appeal. *See* Order to Show Cause, *Variety Media, LLC v. Super. Ct.*, (Cal. Ct. App., L.A. Cnty. Jan. 8, 2026). While Microsoft is aware of this Court's decisions holding otherwise, it asks the Court to reconsider in light of growing precedent.

***Fifth***, because ECPA and CIPA are criminal statutes carrying severe penalties, the Court should apply the rule of lenity, which requires interpreting criminal statutes narrowly, and would preclude their application here. *See, e.g.*, *Doe v. Eating Recovery Ctr., LLC*, 806 F. Supp. 3d 1109, 1112 (N.D. Cal. 2025).

***Sixth***, Plaintiffs do not have a reasonable expectation of privacy in the kind of basic information allegedly collected through Plaintiffs' non-sensitive web-browsing, as both the CCPA and CIPA confirm. The websites' clear privacy policy disclosures defeat any reasonable

expectation that Plaintiffs' data would not be used as disclosed, and foreclose any finding of highly offensive conduct, dooming their California intrusion upon seclusion claim (Count 1), which they cannot assert on a nationwide basis in any event. Courts require "plaintiffs bringing invasion of privacy claims arising from the collection . . . of personal data" to allege something "more" than that the defendant "engage[d] in such routine behavior[.]" *Tsering v. Meta Platforms, Inc.*, 2026 WL 89320, at *7 (N.D. Cal. Jan. 12, 2026).

Plaintiffs have had multiple chances to cure their Complaint of these defects: First, after Microsoft moved to dismiss their original complaint filed in the Western District of Washington, and again after Microsoft moved to dismiss their nearly-identical initial complaint in this Action. Plaintiffs are now on their third complaint, and should not be given a fourth bite at the apple, particularly after engaging in such brazen forum shopping. The Court should dismiss the latest, third version of their Complaint with prejudice.

## II. STATEMENT OF ISSUES TO BE DECIDED – L.R. 7-4(A)(3)

Whether this Court should dismiss Plaintiffs' Complaint against Microsoft with prejudice under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for relief.

## III. BACKGROUND

### A. The Online Advertising Ecosystem and Microsoft

Online advertising is the backbone of the free internet, which allows websites, both big and small, to "rely on advertising to make money as opposed to charging consumers a fee." *See, e.g.*, California Privacy Rights Act of 2020 ("CPRA"), Cal. Prop. 24, § 3(C) (Gen. Election Nov. 3, 2020) (amending the CCPA). The online advertising industry involves three main groups: publishers who sell advertising space on their websites and apps; advertisers who buy that space; and technology companies that provide the infrastructure for these transactions. *See* FAC ¶¶ 29–30. This process often occurs through "real time bidding" ("RTB") auctions that occur on "thousands" of major websites. *See id.* ¶¶ 2, 30–31. Microsoft helps publishers sell their digital ad space, assists advertisers in selecting which users to show ads to and bidding for the ability to do so, and provides some of the infrastructure for these transactions to take place. *See id.* ¶¶ 30–31.

Microsoft is one of many companies that provides such tools, and it is a leader in privacy

initiatives for online advertising. It is a member of online advertising self-regulatory organizations like the Interactive Advertising Bureau (IAB) and the Network Advertising Initiative (NAI), which promulgate industry standards for thousands of online advertising participants, including standards that promote user privacy. *See* Microsoft, *Online advertising self-regulatory organizations,* https://learn.microsoft.com/en-us/xandr/policies-regulations/online-advertising-self-regulatory-organizations (last visited Jun. 18, 2026); *see also* Network Advertising Initiative, *Privacy Principles for Members*, https://thenai.org/self-regulatory-framework/privacy-principles-for-members/ (last visited Jun. 18, 2026). Microsoft also publishes the Microsoft Privacy Statement, which explains in-depth to consumers how Microsoft collects and uses consumer information across its products—to include the use of data collected from third-party sources for purposes of targeting advertising. Microsoft, *Microsoft Privacy Statement*, https://www.microsoft.com/en-us/privacy/privacystatement (last updated Mar. 2026).

**B. The Legal Framework Regulating Online Advertising**

The wiretapping statutes underlying Plaintiffs' Complaint largely became law before the Internet existed. Enacted in 1967 (CIPA) and 1968 (ECPA's predecessor, the federal Wiretap Act), these laws governed monitoring and recording telephone calls and other oral communications and imposed civil and criminal remedies for violations. *See* 18 U.S.C. §§ 2511(1)(c), 2516, 2520; Cal. Penal Code §§ 631(a), 629.52; *see also In re Zynga Priv. Litig.*, 750 F.3d 1098, 1103 (9th Cir. 2014); *Flanagan v. Flanagan*, 27 Cal. 4th 766, 768–69 (2002). California's pen register statute, added to CIPA in 2015, expanded state law enforcement's ability to obtain pen registers in criminal investigations, similar to the pen registers allowed in federal cases. *See* A.B. 929, 2015–2016 Reg. Sess. (Cal. 2015); Cal. Penal Code § 638.50(b); 18 U.S.C. § 3121 *et seq.* Nothing in these laws suggests they target the internet generally or online advertising tools specifically; these theories emerged years later. *See, e.g.*, *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023) (first case considering a pen register claim based on website tools).

Indeed, California regulates online advertising through other recent and carefully crafted laws. The CCPA, passed in 2018 and updated in 2020 through the CPRA, was specifically intended to regulate "advertising businesses" that "track [consumers] across the internet, and . . . create

detailed profiles of their individual interests." Prop. 24 § 2(I) (2020). The statute comprehensively governs businesses' collection, use, and sharing of "personal information," which includes IP addresses, "Internet or other electronic network activity information," and "information regarding a consumer's interaction with an internet website[.]" *See* Cal. Civ. Code § 1798.140(v)(1)(F). It permits websites to collect IP addresses and other personal information without consent, subject to adequate notice and ways for website visitors to opt out of certain types of activities. *See, e.g.*, *id.* §§ 1798.120, 1798.135. The California legislature continues to look to the CCPA to regulate online data collection and sharing, amending the CCPA just this year to require developers of web browsers—not just websites—to provide consumers a way to communicate their "choice to opt out of the sale and sharing of the consumer's personal information." *Id.* § 1798.136 (as created by A.B. 566, 2025–2026 Reg. Sess., ch. 465 (Cal. 2025)).

### C. The Xandr and Microsoft Services Alleged in the Complaint

A pixel is online technology "that website operators can integrate into their websites[.]" FAC ¶ 56. Plaintiffs allege they visited websites with the Adnxs pixel on them.[1] *Id.* ¶¶ 166, 288, 303, 318, 334, 350. They allege that when a website visitor reaches a website that uses one of these pixels, the pixel sends data in the form of a "cookie" to the website visitor's browser, which, according to Plaintiffs, allows Microsoft to pseudonymously link disparate website browsing sessions associated with that same browser. *Id.* ¶¶ 60, 79–81. Plaintiffs claim these pixels and cookies allow Microsoft to collect information about their website activities, such as which browser they used, what kind of device they had, their IP address (i.e., a "set of numbers assigned to a device

---

[1] Plaintiffs' Complaint also includes general allegations regarding the "Bing Pixel," which is allegedly incorporated into the Expedia (FAC ¶¶ 218–21), Zillow (*id.* ¶¶ 248–51), Redfin (*id.* ¶¶ 259–62), and Healthline (*id.* ¶¶ 272–75) websites. However, no named Plaintiff allegedly visited Expedia. *See generally,* FAC. And there is no Microsoft service called the "Bing Pixel." Based on the allegations in the Complaint, Microsoft assumes Plaintiffs are referring to Microsoft's Universal Event Tracking ("UET") service. Additionally, Microsoft does not in any way concede that it is the proper defendant in this lawsuit. Based on the allegations in the Complaint, and pending further investigation, other entities such as Xandr, Inc. and/or Microsoft Online, Inc., may be the proper entities. Finally, many of Plaintiffs' allegations about how pixels and cookies work, among others, are grossly factually inaccurate. For purposes of the Motion to Dismiss, however, Microsoft accepts Plaintiffs' allegations as true, as it must under Rule 12(b)(6).

on a network"), and the URLs of websites they visited. *See id.* ¶¶ 67; *see also, e.g.,* 297–99.[2] Plaintiffs allege that Microsoft then assigns to individuals advertising "audiences" or "segments," which according to Plaintiffs are "collection[s] of users who have interacted on a website in a similar way." *Id.* ¶ 155. Websites allegedly can use these segments to sell advertising space, and businesses large and small can bid on available advertising space (i.e., "real-time bidding") to deliver advertising campaigns tailored to visitors' interests. *See id.* ¶¶ 135–159, 221. Plaintiffs otherwise vaguely accuse Microsoft of maintaining "profiles" on individuals but do not explain what "profiles" are or what they contain in the case of Plaintiffs. *See id.*, e.g., ¶¶ 298, 308.

Plaintiffs do not and cannot allege that Microsoft or the websites they visited broke any promises or failed to honor any rights under the CCPA, such as the right to access or delete information. *See* Cal. Civ. Code § 1798.110. Nor do they allege that Plaintiffs took steps to stop cookies from being installed on their browsers, even though all browsers offer tools to stop or clear cookies, *see, e.g.*, FAC ¶ 47, and the CCPA requires websites to provide consumers the right to opt out of certain disclosures of their personal information, including disclosures for the purposes of targeted advertising, *see, e.g.*, Cal. Civ. Code §§ 1798.120 (opt outs required to "share"), 1798.140(ah)(1) ("share" includes disclosures for cross-context behavioral and targeted ads. And they do not allege that anyone used Plaintiffs' website browsing information for malicious purposes. Finally, the FAC lacks any factual allegations that, to the extent any website used or configured Microsoft's technology in a manner inconsistent with the law, that Microsoft intended this result, or even that Microsoft intended to intercept, record, or receive communications contents. *See generally*, FAC; *see also id.* ¶¶ 439–42 (only conclusorily alleging that Microsoft acted intentionally).

### D. Plaintiffs' Allegations Related to Their Alleged Website Visits

---

[2] Although they also allege that Microsoft *can* collect information about use of Microsoft branded applications (FAC ¶ 61) and use of mobile applications (*id.* ¶¶ 101–20), Plaintiffs do not allege that they used any Microsoft branded applications or any mobile applications using UET or Xandr services, *see generally* FAC. Similarly, although Plaintiffs allege that Microsoft could collect e-mail addresses (*id.* ¶ 122) and location information (*id.* ¶ 123), and later mention in passing that the pixels collected "geolocation," (*id.* ¶ 443) the allegations about Plaintiffs' own experiences do not mention these data elements. *Cf. id.* ¶¶ 288–365.

According to the Complaint, the only data that Microsoft purportedly collected from Plaintiffs were their ***IP addresses, information about their devices and browsers, and the URLs of pages they visited***. FAC ¶¶ 288–365. Plaintiffs allege that Microsoft shared these same basic data elements with other businesses, which Plaintiffs call "Partner Pixels," after assigning the data to a random "Microsoft ID." *See id*. ¶¶ 125–40 (describing IDs "assign[ed]" to records of web and app activity). Again, Plaintiffs do not define or describe the "profiles" that Microsoft allegedly created based on this limited information.

For example, Ms. Bonetti alleges that Microsoft's Adnxs pixel collected "the webpages she visited, his (*sic*) IP address, and fingerprint information about her device and browser, among others" at some unspecified time in the past when she visited the Zillow and Bon Appetit websites. *Id.* ¶¶ 318, 321–22. The "among others" is not explained anywhere in the FAC. *See generally, id.* Ms. Bonetti alleges the collection, verbatim, of the same information by the "Bing Pixel" on those same websites. *Id.* ¶¶ 327. The remaining Plaintiffs all make similar allegations regarding a total of 29 websites that they collectively identify in the FAC. *See id.* ¶¶ 291, 297, 306, 312, 321, 327, 337, 343, 353, 359 (all repeating the same boilerplate allegation). Each Plaintiff alleges that Microsoft also provided cookie syncing services to various Partner Pixels on at least some websites, *see, e.g.*, *id.* ¶¶ 301, 316.

No Plaintiff alleges the collection of conventional identifying information such as name, physical address, or date of birth, nor do they allege the collection of any of their sensitive health or financial information. *See generally, id.* Although the FAC includes allegations about websites which ostensibly could involve the collection of healthcare-related and personal financial information, such as Fidelity and WebMD,[3] Plaintiffs neither allege that those websites collect medical or financial data nor that the websites shared such information. *See generally*, FAC.

### E. Procedural History

Most of the Plaintiffs' allegations in this case are virtually identical to a prior complaint

[3] The FAC also includes allegations about the PlushCare website which allegedly allows patients to make medical appointments and purchase medication, FAC ¶¶ 229–38, however no named Plaintiff allegedly visited that site, *see generally, id.*

filed in the Western District of Washington on April 1, 2025. *See* Complaint, *Penning v. Microsoft Corp.*, (W.D. Wash. April 1, 2025), Dkt. 1 ("*Penning*"). The court there stayed the *Penning* case until resolution of the then-pending appeal in *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025). *See Penning*, Dkt. 18. Following resolution of the *Popa* appeal, which addressed similar claims with respect to different Microsoft technology, the *Penning* plaintiffs voluntarily dismissed their complaint in Washington without prejudice on September 25, 2025. *Id.*, Dkt. 21. That same day, plaintiffs refiled virtually the same complaint in California state court, adding Plaintiff Nieves and dropping two of the prior plaintiffs. *See* Dkt. 1-1. Microsoft removed this case to this Court on December 9, 2025, Dkt. 1, and then filed a motion to dismiss the complaint on March 16, 2026, Dkt. 24. Plaintiffs responded by filing the FAC. Dkt. 26.

## IV. LEGAL STANDARD

Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requires "plead[ing] factual content" that permits a "reasonable inference" of liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Seven Arts Filmed Ent., Ltd. v. Content Media Corp.*, 733 F.3d 1251, 1254 (9th Cir. 2013) (citation omitted).

## V. ARGUMENT

### A. Plaintiffs Fail to Allege that Microsoft's Conduct Was Intentional or Willful

One of the elements of nearly all of Plaintiffs' claims is intentional conduct—an element that is not satisfied here where Plaintiffs allege third parties used Microsoft's technology on their own websites, allegedly without the requisite consent of *those websites'* visitors. Because the complaint here does not establish that Microsoft intended to invade privacy, wiretap, or eavesdrop without consent when third-party websites used its technology, all of these claims fail.

To state a claim for intrusion upon seclusion, Plaintiffs must plead that Microsoft *intended* to violate their privacy—specifically that Microsoft "intentionally intrude[d]" on "private affairs or concerns." Restatement (Second) of Torts § 652B (2025); *see also Hayter v. PHH Mortg. Corp.*, 2016 WL 3902483, at *2 (N.D. Cal. July 19, 2016) ("The intrusion must be intentional."). This is

because "the intruder's motives and objectives" are an important factor when considering whether an intrusion is highly offensive. *Manier v. Triple Lift Inc*, 2026 WL 1295546, at *5 (C.D. Cal. Apr. 15, 2026) (quoting *Hernandez v. Hillsides Inc.*, 47 Cal. 4th 272, 295 (2009)).

Plaintiffs' wiretapping and eavesdropping claims similarly have an intent element, because they are criminal statutes. *See* Cal. Penal Code § 20 ("In every crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence."); 18 U.S.C. § 2511(1)(a) (a defendant must "intentionally" act to violate ECPA); Cal. Penal Code §§ 631(a), 632 (same); *see also, e.g.*, *Lozano v. City of Los Angeles*, 73 Cal. App. 5th 711, 727 (2022) ("The text of Penal Code section 632 plainly requires proof of 'intentional conduct' to establish a statutory violation . . . ."). For wiretapping, the Ninth Circuit has explained that this requires plaintiffs to show that defendants "acted consciously and deliberately with the goal of intercepting wire communications." *See United States v. Christensen*, 828 F.3d 763, 775 (9th Cir. 2015); *see also Manier*, 2026 WL 1295546, at *3 (dismissing CIPA claim in an analogous case because "CIPA liability only extends to willful or intentional conduct" which the plaintiff failed to establish); *Briskin v. Shopify, Inc.*, 2026 WL 161441, at *4–5 (N.D. Cal. Jan. 21, 2026) (similar). California courts have likewise held that use of the term "'intentionally' in [CIPA] . . . require[s] an intent to bring about the proscribed result rather than an intent merely to do an act which unintentionally brought about that result." *Lozano*, 73 Cal. App. 5th at 728 (dismissing a CIPA eavesdropping claim).

Here, Plaintiffs' allegations about Microsoft's state of mind are wholly conclusory. *See, e.g.*, FAC ¶¶ 382, 401, 442, 444, 445. They offer no facts showing that Microsoft intended to learn "private" facts about Plaintiffs when third party websites used its technology, nor that Microsoft intended to intercept communications (as opposed to non-communicative browsing data), let alone record confidential communications. Nor are there facts that plausibly suggest that Microsoft intended the websites that used its technology to avoid getting consent. Moreover, the privacy policies on the websites Plaintiffs visited disclose the type of third-party data collection alleged here, further belying any intentional conduct by Microsoft.[4] Without plausible factual allegations

---

[4] *See, e.g.*, Request for Judicial Notice in Support of Microsoft's Motion to Dismiss ("RJN"), Ex. 1 at 5 (disclosing data sharing with third-party marketing and advertising partners), Ex. 2 at 6

establishing the requisite intent or willfulness, these intrusion upon seclusion claims, wiretap, and eavesdropping claims all fail as a matter of law.

Courts regularly dismiss comparable claims in similar circumstances. For example, in *Briskin*, plaintiffs alleged that Shopify collected their interactions with websites that had installed its code. 2026 WL 161441, at *1–2. The *Briskin* Court noted that whether third-party websites with that code obtained proper consent from their visitors says nothing about whether Shopify intended to intercept communications. The Court then dismissed plaintiff's CIPA and intrusion upon seclusion claims because they "fail[ed] to adequately allege that defendants acted with the requisite intent to violate the law." *Id.* at *5. In *Manier*, which involved pixel-based advertising technology as here, the court similarly found that the plaintiff's numerous assertions in the complaint that the defendant intentionally acted unlawfully were insufficient, dismissing CIPA and other claims. *Manier*, 2026 WL 1295546, at *3. Several other courts agree that merely providing advertising technology, without more, is not enough to establish intentionality in analogous cases. *See Doe I v. Google LLC*, 741 F. Supp. 3d 828, 840 (N.D. Cal. 2024) (dismissing ECPA, CIPA, and invasion of privacy claims where Google "told developers not to send personally identifiable information through use of its source code"); *Tsering*, 2026 WL 89320, at *7 (dismissing invasion of privacy claim where plaintiffs failed "to plausibly allege that Meta knew it was collecting . . . data without . . . consent" where the relevant privacy policies disclosed the data collection); s*ee also B.K. v. Desert Care Network*, 2024 WL 5338587, at *3 (C.D. Cal. Aug. 22, 2024) (similar). As in these cases, the Court here should dismiss counts 1, 2, 4, and 5 because Plaintiffs do not plausibly allege intent.

### B. Plaintiffs Fail to Allege Unlawful Wiretapping under ECPA or CIPA.

To plead an ECPA claim, Plaintiffs must allege that Microsoft "(1) intentionally (2) intercepted (3) the contents of (4) plaintiffs' electronic communications (5) using a device." *In*

---

(similar), Ex. 3 at 3–4 (similar). Plaintiffs' Complaint discusses the relevant websites in detail. *See, e.g.*, FAC ¶¶ 167–77 (allegations concerning the Scientific American website). The Court therefore can consider privacy policies publicly posted on those websites. *See, e.g.*, *Knievel v. ESPN*, 393 F.3d 1068, 1076–77 (9th Cir. 2005); *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 976 (N.D. Cal. 2015) (taking judicial notice of publicly available privacy policies).

*re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 794–95 (N.D. Cal. 2022). Similarly, to plead a wiretapping claim under CIPA § 631(a), Plaintiffs must show that Microsoft "[1] willfully [2] attempt[ed] to learn the contents or meaning of a communication [3] in transit [4] over a wire[.]" *Tavernetti v. Super. Ct.*, 22 Cal. 3d 187, 192 (1978).[5] Both ECPA and CIPA are criminal statutes. 18 U.S.C. § 2511(4)(a) (violations of ECPA "shall be fined under this title or imprisoned not more than five years, or both"); Cal. Penal Code § 631(a) (violations of CIPA are punishable by a fine not exceeding $2,500, by imprisonment not exceeding one year, or both). Plaintiffs fail to plausibly allege several of the elements of these claims.

**1. Plaintiffs Fail to Allege that Microsoft Intercepted the Contents of any Communication.**

Plaintiffs' wiretap claims fail because they do not allege facts plausibly showing that Microsoft collected the "*contents*" of any "communication." Under ECPA, the "contents" of a communication are "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8); *see also Zynga*, 750 F.3d at 1104. This refers to the "intended message conveyed by the communication," not any "record information regarding the characteristics of the message . . . generated in the course of the communication." *Zynga*, 750 F.3d at 1098. Courts recognize that CIPA has the same "contents" requirement and definition. *See Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020).[6]

Plaintiffs assert, at most, that the "collection of the universal resource locator ('URL') for each page of each website visited by an individual" amounts to collecting communication "contents." *See* FAC ¶¶ 67, 70–78. Under Ninth Circuit precedent, this is not enough. A URL

[5] The first clause of Section 631(a), related to "intentional wiretapping," applies only to any "telegraph or telephone wire," which is not relevant here.

[6] Plaintiffs have failed to allege any actionable communications under ECPA or CIPA, but Microsoft is aware of the Court's earlier decision in *Fregosa* on the breadth of CIPA's definition of "communication." *See Fregosa v. Mashable, Inc.*, 2025 WL 2886399, at *7 (N.D. Cal. Oct. 9, 2025). The Ninth Circuit in *Zynga*, however, has indicated that ECPA is focused on communication between "computer users," 750 F.3d at 1103, and thus both ECPA and CIPA regulate person-to-person communications, not browsing public webpages as alleged here. Courts have dismissed wiretapping and pen register claims on these grounds. *See, e.g.*, *Augustine v. Great Wolf Resorts, Inc.*, 2024 WL 3450967, at *6 (S.D. Cal. July 18, 2024); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021); *Rodriguez v. Ink Am. Int'l. Grp. LLC*, 2025 WL 4034985, at *3–5 (Cal. Super. Ct. Dec. 10, 2025). !

merely "identifies the location of a webpage a user is viewing on the internet, and therefore functions like an 'address.'" *Zynga*, 750 F.3d at 1107. In *Zynga*, the Ninth Circuit held that, under ECPA, URLs are not "content," even if they disclose the precise webpage that a user views. *See id.* at 1108 (rejecting argument that URLs are contents "because they disclose specific information regarding a webpage that a user previously viewed," such as, for example, a URL reflecting "viewing the Facebook page of a gay support group"); *see also Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1086 (N.D. Cal. 2018) (dismissing CIPA claim because "opening a webpage" is "not a communication with content"). The Ninth Circuit did so despite the *Zynga* plaintiffs' argument that URLs could allow the defendant to associate the "page the user was previously viewing" to "the user's [Facebook] profile page and any personal information made available to the public on that page." *Zynga*, 750 F.3d at 1107.

*In re Zynga* did opine, *in dicta*, that there could exist a narrow set of circumstances where a URL might contain the "contents" of a communication, *id.* at 1108, but Plaintiffs allege no facts to establish that this limited exception applies here. In *Zynga*, the Ninth Circuit held that a URL could be "contents" if it reveals that "a user is using the Google search engine" *and* "the specific search terms the user had communicated to Google." *Id.* at 1108. This Court further recognized this distinction between non-"content" URLs and URLs that "reproduce a person's personal search engine queries," which might be content in some situations. *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1093 (N.D. Cal. 2022) (Breyer, J.). Here, ***none of the Plaintiffs have alleged that Microsoft collected their search terms or other input text through URLs***. *See generally*, FAC. Instead, they merely allege that Microsoft collected URLs "for each page of each website visited by an individual." *Id.* ¶ 67. But this is exactly what the Ninth Circuit rejected. *See Zynga*, 750 F.3d at 1108 (rejecting argument that "the webpage addresses contained in the referrer headers in this case revealed the contents of a communication, because they disclose specific information regarding a webpage that a user previously viewed"). Because URLs are not "a person's intended message to another," *id.* at 1106, and because that is the only "communication" that Plaintiffs allege that Microsoft collected, Plaintiffs do not plausibly allege any contents of any communication, dooming their wiretap claims.

Plaintiffs may point to allegations in the FAC that purportedly show that Microsoft is capable of collecting URLs containing visitors' search queries, FAC ¶¶ 261, 265, 268, 274, but such an argument fails for two reasons. *First*, none of these allegations are sufficiently factually supported because Plaintiffs' screenshots do not show that a visitor's typed text into a search bar is replicated verbatim into a URL—the critical requirement is therefore missing. *See id.* ¶¶ 261, 265, 268, 274. For example, the alleged screenshot of the Healthline website merely shows that a URL might contain the title of the article a visitor navigates to, not that their search term is replicated. *Id.* ¶ 274. Likewise, the alleged screenshot of the Redfin website merely shows that a URL might contain a property address, without showing that a visitor typed that address into the search bar. *Id.* ¶ 256. In short, Plaintiffs have no factual support for an allegation that these websites create URLs that replicate a visitor's search queries. *Second*, Plaintiffs do not allege that they personally conducted any searches on any of these websites. *See generally*, FAC. Courts routinely dismiss cases where plaintiffs, like the Plaintiffs here, merely allege that they visited and navigated websites without identifying any specific searches they performed that were collected by the defendant. *See also Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 70 (W.D. Pa. 2023) ("movements and clicks" constitute "a record of . . . movements within a digital space," not any "communicative" content); *King v. Hard Rock Cafe Int'l (USA), Inc.*, 2025 WL 1635419, at *4 (E.D. Cal. June 9, 2025) (dismissing CIPA claims where pixel allegedly collected "button clicks" and "URLs" related to hotel "booking information"); *Griffith v. TikTok, Inc.*, 2024 WL 5279224, at *10 (C.D. Cal. Dec. 24, 2024) (similar); *Yoon*, 549 F. Supp. 3d at 1082–83 (similar).

Plaintiffs allege that "HTTP requests, when intercepted by Microsoft, collect device information that can also identify whether the same user is visiting multiple sites or apps[.]" *See* FAC ¶ 124. But the Ninth Circuit has rejected the argument that an HTTP request is communication content merely because it includes data about a website visitor and the website they visited. *See Zynga*, 750 F.3d at 1102 (affirming dismissal of wiretapping claim based on "HTTP request" that "included a referrer header that provided both the user's Facebook ID and the address of the

Facebook webpage the user was viewing").[7]

### 2. Plaintiffs Fail to Allege that Any Interception Occurred "In Transit."

Plaintiffs' wiretapping claims fail under both federal and California law for the independent reason that Plaintiffs do not plausibly allege that Microsoft intercepted any of their communications "in transit," as both statutes require. *See Adler v. Community.com, Inc.*, 2021 WL 4805435, at *3–4 (C.D. Cal. Aug. 2, 2021); *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). CIPA presents an even higher "in transit" bar than ECPA, because not only must the content be intercepted while the communication is in transit, but the defendant must also read or attempt to learn the contents of the communication *while it is in transit*. Cal. Penal Code § 631(a). That is, as this Court has observed, CIPA requires that the defendant "attempt to understand or interpret the *substantive meaning* of a communication." *See Torres v. Prudential Fin.*, No. 22-cv-07465, 2025 WL 1135088, at *6 (N.D. Cal. Apr. 17, 2025) (Breyer, J.). Plaintiffs must thus allege that Microsoft acquired the contents of a communication during its transmission, not after it was received or stored by the website. *Id.*

Here, Plaintiffs offer only a conclusory assertion that the Xandr and UET pixels "intercepted" their communications "in transit." *See* FAC ¶¶ 394, 398. Plaintiffs plead no facts to support this assertion. Their "formulaic recitation of the elements" does not suffice. *See Twombly*, 550 U.S. at 555; *see also Hammerling v. Google LLC*, 2022 WL 17365255, at *10 (N.D. Cal. Dec. 1, 2022) (concluding that "allegations that Google collects 'real-time data' do not plausibly allege that Google collects data while 'in transit'"), *aff'd*, No. 22-17024, 2024 WL 937247 (9th Cir. Mar. 5, 2024).

More importantly, Plaintiffs allege facts that rebut their sole, conclusory "in transit" allegation. Plaintiffs allege that the Xandr and UET pixels allow Microsoft to "collect the URL

[7] The analysis by this Court of HTTP requests in *Fregosa* aligns with the fact that Plaintiffs have not adequately pleaded the interception of any communication "contents." In *Fregosa*, this Court held that the HTTP request from a user's browser to a website server could be sufficient to plead a communication for certain CIPA pen register claims. *See* 2025 WL 2886399, at *5 (citing *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 929–931 (N.D. Cal. 2024)). Here, even if the Court were inclined to find that the same HTTP request suffices as a communication under an ECPA or CIPA wiretapping claim, that would still doom Plaintiffs' wiretapping claim because that HTTP request is not *content*.

values of the pages visited." *See* FAC ¶ 72. But, as the Ninth Circuit has explained, to visit a URL, a website user's browser sends a request to the website's server, which then responds by delivering the requested content to the user's browser. *See Zynga*, 750 F.3d at 1101–02. Plaintiffs do not allege that either the Adnxs or the UET Pixel taps this connection by stepping in between the user's browser and the website server to intercept the communication enroute. To the contrary, Plaintiffs allege that the Adnxs and UET pixels are "piece[s] of code" that are "integrate[d]" into and "loaded on" the websites themselves—at one end of the communication, not in between. *See* FAC ¶¶ 56, 62, 67. Thus, according to Plaintiffs, any URLs collected using these pixels necessarily occurred after the website had received the user's request, after the communication arrived. *See id.*; *see also Griffith*, 2024 WL 5279224, at *10 (the "sequence" of transmission is determinative for interception claims). Plaintiffs fail to allege interception "in transit" under either the ECPA standard or the heightened CIPA standard.

The "in transit" requirement limits wiretapping claims to a narrow window for interception, given the speed of online activity. *See NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 951–52 (N.D. Cal. 2014). Indeed, the wiretapping statutes were not intended to apply to "mechanically deployed" data processing "with no intelligible understanding" of any underlying communication. *See Torres*, 2025 WL 1135088, at *7; *see also Eating Recovery Ctr.*, 806 F. Supp. 3d at 1118 (explaining that, under CIPA, "you must do something more than just intercept the communication while it is in transit to be held liable"). As this Court has previously explained, even where "communications are near instantaneous and cannot be meaningfully read or understood until later," it "would stretch CIPA's statutory language too far to interpret 'while . . . in transit' to encompass any hypothetical future attempt to read or understand the meaning of a communication.'" *Torres*, 2025 WL 1135088, at *6. Plaintiffs do not allege that Microsoft intercepted any communications between them and the websites they visited while those communications were in transit, much less that it attempted to "understand or interpret" any such communication in real time. Instead, as discussed above, any alleged collection occurred after the websites already received Plaintiffs' requests.

Simply put, Plaintiffs' own allegations defeat their federal and California wiretap claims.

*See Konop*, 302 F.3d at 878–79; *Griffith*, 2024 WL 5279224, at *10; *see also Rosenow v. Facebook, Inc.*, 2020 WL 1984062, at *7 (S.D. Cal. Apr. 27, 2020) (dismissing ECPA claim when the plaintiff failed to allege facts to show acquisition "during transmission"); *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1110 (C.D. Cal. 2023) (dismissing CIPA claim because "[p]laintiffs must provide more than conclusory allegations that messages were 'intercepted in real time'").

### 3. Plaintiffs' ECPA Claim Fails Because the Website Operators Consented to Use of Xandr and UET.

ECPA is a one-party consent statute; it permits the interception of communications where one party to the communication consents. *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1095 (W.D. Wash. 2024); 18 U.S.C. § 2511(2)(d). Plaintiffs allege that each website was a party to their so-called communications. *See, e.g.*, FAC ¶ 441 (alleging that Plaintiffs' "interactions ***with each website*** are electronic communications" (emphasis added)). And they admit that the website operators, not Microsoft, installed the Xandr and UET pixels on their sites. *See id.* ¶ 56 (explaining "***website operators*** can integrate [pixels] into their websites" (emphasis added)). Because the websites chose to deploy these services, they consented to Microsoft's alleged collection of data through them. *Rodriguez v. Google LLC*, 2021 WL 2026726, at *6 (N.D. Cal. May 21, 2021) (dismissing ECPA claim where "Google's alleged interceptions occurred with the consent of app developers"). Plaintiffs' own allegations establish that the websites they visited consented to using the pixels and to the alleged wiretap. Hence, their ECPA claim fails.

ECPA's narrow crime-tort exception does not change the result. *See* 18 U.S.C. § 2511(2)(d). As this Court has previously held, allegations that a defendant merely "monetize[s] . . . data for targeted advertising" are insufficient to show that the defendant intercepted any communication "for the express purpose of committing" a tort. *See Rusow v. Skinspirit Essential LLC*, 2025 WL 4657637, *15 (N.D. Cal. Oct. 15, 2025) (Breyer, J.); *see also Allen v. Quicken Loans, Inc.*, 2018 WL 5874088, at *6 (D.N.J. Nov. 9, 2018) (unpublished). Rather, for the crime-tort exception to apply, Plaintiffs must allege that Microsoft's interception was "done for the purpose of facilitating some further impropriety, such as blackmail" that is "separate and independent from the act of the [alleged] recording." *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1135–36

(9th Cir. 2022) (quoting *Sussman v. Am. Broad. Cos.*, 186 F.3d 1200, 1202 (9th Cir. 1999)). Plaintiffs plead no such thing, nor could they. Instead, Plaintiffs argue that Microsoft's alleged creation of "profiles" is an unlawful "use" of their data. FAC ¶ 445. But this merely raises the "circular" logic that the Ninth Circuit has rejected. *See Planned Parenthood*, 51 F.4th at 1135–36. The crime-tort exception simply "cannot apply" in a case like this. *See In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014); *see also Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1057–58 (N.D. Cal. 2025).[8]

**4. The Court Should Dismiss Plaintiffs' Claims for Improper Use and Disclosure.**

Both ECPA and CIPA prohibit use and disclosure of unlawfully intercepted communications. *See* 18 U.S.C. § 2511(1)(c)–(d); Cal. Penal Code § 631. As explained, Plaintiffs do not allege facts showing that Microsoft unlawfully intercepted their communications. *Supra* pp. 11–17. Therefore, they have not alleged facts that Microsoft used or disclosed such intercepted communications, requiring dismissal of their use and disclosure claims. *See* FAC ¶ 399; *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020) (an improper use claim under CIPA's third clause requires an unlawful interception under one of the first two clauses).

**5. Plaintiffs Fail to Allege Aiding and Abetting Liability under CIPA.**

Plaintiffs claim that Microsoft "aid[ed] in the wiretapping of [Plaintiffs'] communications by Partner Pixels" by allegedly sharing anonymous information with them. *See, e.g.*, FAC ¶¶ 300, 400. Just as Plaintiffs have not alleged facts establishing that *Microsoft* unlawfully intercepted their communications, or that it did so while any communication was in transit, they likewise have not alleged facts establishing that any *third party* has done so. *See Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1003 (N.D. Cal. 2024) (dismissing CIPA aiding and abetting claim where the plaintiff "fail[ed]

[8] This case is nothing like the cases cited in paragraph 446 of the FAC. *Cf. Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021) (exception applied where defendant "associate[ed] . . . data with preexisting user profiles" even though users enabled a private browsing mode); *Marden v. LMND Med. Grp., Inc.*, 2024 WL 4448684, at *3 (N.D. Cal. July 3, 2024) (exception applied where defendant "purposefully configured its website to intercept individually identifiable information about highly sensitive health issues"); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 889, 901–02 (C.D. Cal. 2024) (exception applied where "private health information was rendered personally identifiable" because it was disclosed and associated with "active Facebook accounts").

to establish an underlying third-party violation"). There is nothing to aid and abet where there is no underlying unlawful conduct. Indeed, the Complaint contains only sparse allegations regarding how third-party pixels even supposedly operate.

Regardless, Plaintiffs' allegations about Microsoft's interactions with third-party pixels do not demonstrate that Microsoft aided and abetted any unlawful conduct: Microsoft's only alleged engagement with third party pixels consisted of "cookie syncing," i.e. attaching a random identifier to browsing data already collected, not the initial, simultaneous interception of communications. *See, e.g.*, FAC ¶¶ 49, 269. Plaintiffs' conclusory allegations that Microsoft "aids" the partner pixels' alleged wiretapping—without any explanation of how Microsoft supposedly assisted these partner pixels with the interception of communications as opposed to later marketing activity—are insufficient to state a claim. *See, e.g.*, *id.* ¶¶ 138, 269.

### C. Plaintiffs Fail to State a Claim for Eavesdropping Under Section 632 of CIPA.

Plaintiffs' eavesdropping claim must be dismissed because they fail to allege the recording of a "confidential communication." Section 632 prohibits only the non-consensual recording of a "confidential communication," which excludes any conversation one made in circumstances in which the parties "may reasonably expect that the communication may be . . . recorded." Cal. Penal Code § 632(c). Because internet communications are "by their nature" recorded, California courts appropriately exclude them from the scope of Section 632. *Boulton v. Community.com, Inc.*, 2025 WL 314813, at *2 (9th Cir. Jan. 28, 2025) (affirming the dismissal of a Section 632 claim because "text messages are by nature recorded and so cannot be 'confidential communications' per the exclusion clarified in § 632(c)"); *In re Apple Data Priv. Litig.*, 2026 WL 146025, at *5 (N.D. Cal. Jan. 20, 2026) ("device-to-server transmissions are 'by their very nature recorded on the [device] of at least the recipient' and thus are not 'confidential' communications under Section 632" (quoting *In re Google Inc. Gmail Litig.*, 2013 WL 5423918, at *23 (N.D. Cal. Sept. 26, 2013) (holding that emails not "confidential" under Section 632))); *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) (collecting cases holding that written communications are not "confidential" under Section 632).

The Court should reach the same result here. Plaintiffs base their Section 632 claim on the

collection of data associated with their visits to websites and use of mobile apps. *See, e.g.*, FAC ¶¶ 418, 421–27. Although Plaintiffs make a conclusory allegation that their "communications" with these websites and apps[9] were confidential "due to the protected nature of the information at issue" nowhere do they allege any specifics that would support the conclusory allegation that communications were at issue or that they were confidential. *See infra* pp. 22–24. For example, no Plaintiff alleges they shared any sensitive health or financial information with a website or app. *See generally*, FAC. It follows that Plaintiffs have failed to establish any special circumstances that could tip the scale to overcome the general rule that web browsing information and metadata are not "confidential communications" for purposes of Section 632. *See, e.g.*, *In re Apple Data Priv. Litig.*, 2026 WL 146025, at *5. Plaintiffs' Section 632 claims should therefore be dismissed.

### D. Plaintiffs Fail to Allege a Claim Under the Pen Register Act

Microsoft is aware of the Court's recent ruling in *Fregosa v. Mashable, Inc.*, 2025 WL 2886399, at *4–9 (N.D. Cal. Oct. 9, 2025), *motion to certify appeal denied*, 2026 WL 183857 (N.D. Cal. Jan. 23, 2026), and *Mirmalek v. L.A. Times Commc'ns LLC*, 2024 WL 5102709, at *3–4 (N.D. Cal. Dec. 12, 2024). There, this Court rejected arguments that the Pen Register Act does not apply to online conduct similar to that alleged here. *See id.* Since the Court's decisions in *Fregosa* and *Mirmalek*, a number of other courts have ruled in favor of defendants in analogous cases finding that the Pen Register Act does not apply in cases like this.[10]

---

[9] No Plaintiff specifically alleges the use of a mobile app in the FAC. *See generally*, FAC.

[10] *See, e.g.*, *Heiting v. Wildflower Brands, LLC*, 2026 Cal. Super. LEXIS 30729, at *5 (Cal. Super. Ct. Apr. 16, 2026) (sustaining demurrer of Section 638.51 claim because the statute is limited to telephones); *Attebery v. Atlas Fin. Sols., Inc.*, No. 25STCV30118 (Cal. Super. Ct., May 8, 2026) (RJN Ex. 30) (same); *Blalock v. EquipmentShare.com Inc.*, No. 30-2025-01508739-CU-MC-CJC (Cal. Super. Ct., Feb. 25, 2026) (RJN, Ex. 31) (same); *Schallert v. Orkin LLC*, 2025 WL 4332757, at *2–3 (Cal. Super. Ct. Dec. 15, 2025) (same); *Balabbo v. Wildflower Brands, LLC*, 2026 WL 1122773, at *8 (Cal. Super. Ct. Apr. 6, 2026) (holding that Section 638.51 did not apply to online tracking tools); *Rodriguez v. IMDB.com, Inc.*, 2026 WL 886927, at *3–5 (Cal. Super. Ct. Mar. 24, 2026) (same); *Schallert v. Palo Alto Networks, Inc.*, 2026 WL 754028, at *2 (Cal. Super. Ct. Mar. 6, 2026) (same); *Cammorata v. Sonifi Sols., Inc.*, 2026 WL 500856, at *2 (Cal. Super. Ct. Feb. 18, 2026) (same); *Scharon v. Paramount Glob.*, 2025 WL 2996812, at *2–3 (Cal. Super. Ct. Oct. 3, 2025); *Heiting v. HP Inc.*, 2025 WL 2993673, at *4 (Cal. Super. Ct. Aug. 1, 2025); *Sanchez v. Cars.com Inc.*, 2025 WL 487194, at *3 (Cal. Super. Ct. Jan. 27, 2025); *Licea v. Hickory Farms LLC*, 2024 WL 1698147, at *2–4 (Cal. Super. Ct. Mar. 13, 2024). At the same time, the California Courts of Appeal is set to hear the issue for the first time. *Variety Media, LLC v. Super. Ct.*, No. B350578 (Cal. Ct. App., L.A. Cnty. Jan. 8, 2026).

Briefly, to preserve the argument for appeal: Plaintiffs fail to state a claim under Section 638.51 because they have failed to allege Microsoft's use of a "pen register." *First*, as a growing number of courts have held, the statutory language and legislative history of the Act show it is limited to telephonic communications and, at best, person-to-person communications closely resembling them.

*Second*, the legislative history also supports the proper reading of the Act as not extending to the types of online tools at issue here. If the "[l]egislature really intend[ed] to subject companies like [Microsoft] to criminal liability for using third-party software to track website activity," one would expect to find some indication of that intent in the statute's text, context, or history, but no such intent appears anywhere in the Act. *Eating Recovery Ctr.*, 806 F. Supp. 3d at 1119. Instead, the legislature passed more recent and more specific legislation explicitly governing this space, most notably the CCPA, which "more clearly speak[s] to the practice of data sharing" by websites. *Id.* Rather than banning the collection of personal information such as IP addresses or requiring express consent, the CCPA provides a "right to opt out" from its sale. *Id.* § 1798.120(a) (emphasis added).

*Third*, the Plaintiffs' reading of the Act would effectively upend the internet. The Act "cannot reasonably be read" so broadly as to establish liability where a website collects an "IP address"—even when the defendant allegedly enables "third part[ies]" to access that data—or else "every website interaction that identifies electronic information about the user in a manner that allows the website to [f]unction" would become unlawful. *Rodriguez v. Sparc Grp., LLC*, 2025 WL 2993671, at *3 (Cal. Super. Ct. July 9, 2025). "Such a broad based interpretation would potentially disrupt a large swath of internet commerce[.]" *Licea v. Hickory Farms LLC*, 2024 WL 1698147, at *4 (Cal. Super. Ct. Mar. 13, 2024).

**E. The Rule of Lenity Requires Interpreting ECPA and CIPA Narrowly.**

ECPA and CIPA are criminal statutes that carry the weight of possible imprisonment. *See* 18 U.S.C. § 2511(4)(a); Cal. Penal Code §§ 631(a), 638.52(c). Their language must be "clear and definite" to "give fair notice" of prohibited conduct. *See Nosal*, 676 F.3d at 863. When in "doubt," courts "must choose the interpretation least likely to impose [unintended] penalties." *Id.* (cleaned

up); *see also United States v. Lanier*, 520 U.S. 259, 266 (1997). The rule of lenity protects against converting everyday conduct believed to be lawful into criminal conduct that could lead to imprisonment. Plaintiffs raise exactly this risk by asking the Court to adopt their interpretations of ECPA and CIPA; the rule of lenity instructs the Court to decline that invitation.

The conflicting interpretations of ECPA and CIPA by respected federal and state judges are perhaps the best proof that the statutes are ambiguous and should be subject to the rule of lenity. As mentioned above, for example, while some federal courts including this one have allowed CIPA pen register claims to survive the pleading stage, numerous state courts have reached the exact opposite conclusion (including as to one of the exact Microsoft technologies at issue in this case). *Compare Greenley*, 684 F. Supp. 3d at 1050 (observing that "no court has interpreted this provision of CIPA" and concluding that online advertising software could be a "pen register"), *with Scharon*, 2025 WL 2996812, at *2–3 (concluding that online web technologies, *including Adnxs*, are not "pen registers," and any other interpretation would render the CCPA "a nullity"); *Heiting v. HP Inc.*, 2025 WL 2993673, at *4 (Cal. Super. Ct. Aug. 1, 2025); *Sanchez*, 2025 WL 487194, at *3; *Licea*, 2024 WL 1698147, at *2–4; *see also infra* note **Error! Bookmark not defined.** (collecting cases). These conflicting judicial opinions leave no doubt that ECPA and CIPA's criminal provisions are ambiguous. Following the rule of lenity, courts should interpret ECPA and CIPA in ways least likely to impose criminal punishment.

The current "state of affairs with CIPA is untenable," given that "Courts are issuing conflicting rulings, and companies have no way of telling whether their online business activities will subject them to liability." *Eating Recovery Ctr.*, 806 F. Supp. 3d at 1112. There is an "absence of an express textual provision or an indication of legislative intent" supporting Plaintiffs' position, and the "rule of lenity applies." *See Vita v. New England Baptist Hosp.*, 243 N.E.3d 1185, 1205, 1207 (Mass. 2024) (citations modified). Any other conclusion would improperly and "unintentionally turn ordinary citizens into criminals." *Nosal*, 676 F.3d at 863; *Harrott v. County of Kings*, 25 Cal. 4th 1138, 1144–45 (2001); *see also In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 512–13 (S.D.N.Y. 2001) (refusing to interpret ECPA to criminalize "access[ing] cookies on users' hard drives").

### F. Plaintiffs Fail to Plead Intrusion Upon Seclusion.

To support this claim under California law, Plaintiffs must plead that (1) Microsoft "intentionally intrude[d] into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy," and (2) the intrusion "occur[red] in a manner highly offensive to a reasonable person." *Hernandez*, 47 Cal. 4th at 286. This is a "high bar" that Plaintiffs have not met. *See Belluomini v. Citigroup, Inc.*, 2013 WL 3855589, at *6 (N.D. Cal. July 24, 2013).[11]

#### 1. Plaintiffs Do Not Plead a Reasonable Expectation of Privacy.

Plaintiffs fail to allege circumstances that would make it objectively reasonable for them to believe their interactions with the Websites would not be disclosed for advertising. Whether a plaintiff's purported "expectation of privacy is reasonable [depends on] the particular setting or context at issue." *Mathews v. Becerra*, 8 Cal. 5th 756, 770 (2019). The context alleged here is browsing public webpages. This context of "[c]ontemporary internet browsing involves the collection of users' data, including by tracking users across the internet, *and a reasonable user should expect as much*." *Hubbard v. Google LLC*, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024). Plaintiffs fail to plausibly plead a reasonable expectation of privacy.

As this Court has observed, "[a]s a matter of law, there is generally no reasonable expectation of privacy over the information communicated on a website." *Rusow*, Dkt. 44 at 22. Accordingly, Courts routinely hold that internet users do not have a reasonable expectation of privacy in things like "URLs of web pages visited" or device information, and dismiss similar claims on that basis. *See Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, at *4 (S.D. Cal. May 8, 2024) (dismissing privacy claim and collecting cases). Where, as here, Plaintiffs fail to allege how their interactions with the websites would otherwise lead to any reasonable expectation of privacy, dismissal is appropriate. *See Harrill v. Emanuel Med. Ctr.*, 2025 WL 1635428, at *4, *6 (E.D. Cal. June 9, 2025) (dismissing intrusion upon seclusion claim where plaintiff failed to identify what searches she conducted or what information was allegedly transmitted).

---

[11] Plaintiffs cannot state a claim for intrusion upon seclusion under California law on behalf of non-California residents, because California common-law does not apply extraterritorially. *See, e.g., DellaSala v. Samba TV, Inc.*, 2025 WL 3034069, at *4 (N.D. Cal. Oct. 30, 2025) (dismissing non-California residents' CIPA claims because CIPA does not apply extraterritorially).

While there are instances where courts have found that individuals might have reasonable expectations of privacy online, such as when a defendant intercepts sensitive information or makes misrepresentations, this is not one of them. For example, in *Rusow*, this Court denied the defendant's motion to dismiss a privacy claim because it allegedly intercepted "personally identifiable" medical information. *Rusow*, Dkt. 44 at 20–23. Plaintiffs here do not allege the collection of sensitive information to support a reasonable expectation of privacy. Although the FAC references websites that ostensibly *could* involve the sharing of medical and financial information, i.e., Fidelity and WebMD, Plaintiffs' complaint fails to allege the types of information the websites may collect or that Plaintiffs themselves shared any sensitive information with such sites.[12]

Additionally, California statutes make it clear that consumers do not have a reasonable expectation of privacy in the kind of web-browsing information allegedly collected by Microsoft. The California Supreme Court has called out "sources of positive law governing the right to privacy," like "statutory enactment," as particularly important when assessing privacy interests. *See Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 36 (1994). The CCPA and CIPA are both instructive. The CCPA allows the collection and sharing of website activity information for advertising without affirmative consent as long as websites provide adequate privacy policies and, when necessary, a way to opt out. *See* Cal. Civ. Code §§ 1798.120, 1798.135; *see also id.* § 1798.99.80(c) (implementing rules for "data brokers" who "collect[] and sell[] to third parties the personal information of a consumer with whom the business does not have a direct relationship"). That is exactly what occurred here, as each of the websites' privacy policies plainly disclosed the information allegedly collected.

Because California law regulates the data practices at issue and permits the type of data collection alleged *without* requiring opt-in consent, Plaintiffs cannot reasonably claim an

---

[12] The FAC does allege that the PlushCare website allows patients to make medical appointments and buy medication, FAC ¶¶ 229–38, but no Plaintiff allegedly visited that site, *see generally, id.*

expectation of privacy against such data collection.[13] This is especially true because Plaintiffs allege only the pseudonymous collection of commonly collected information such as IP address and pages visited in relation to mundane commercial browsing activity. *See United States v. Forrester*, 512 F.3d 500, 509–10 (9th Cir. 2008) ("Internet users have no expectation of privacy in . . . the IP addresses of the websites they visit . . . ."); *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1190 (N.D. Cal. 2020) (similar). Plaintiffs have failed to plausibly allege any expectation of privacy in the allegedly collected information, and the Court should dismiss Plaintiffs' invasion of privacy claim for this reason alone. *See Thomas*, 2024 WL 2060140, at *2 (joining "a number of courts" finding "that consumers do not have a reasonable expectation of privacy" in routine browsing activity) (collecting cases); *see also Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012).

**2. Plaintiffs Do Not Allege Highly Offensive Conduct.**

To state an intrusion claim, Plaintiffs must also allege an invasion "sufficiently serious" to constitute "an *egregious breach* of the social norms underlying the privacy right." *Hill*, 7 Cal. 4th at 26, 37 (emphasis added). They do not.

*First*, Microsoft's conduct, and that of hundreds of websites, cannot be highly offensive because it is mundane and ubiquitous. As this Court has acknowledged, "courts in this district have consistently refused to characterize the disclosure of common, basic digital information to third parties a serious or egregious violation of social norms." *Rusow*, Dkt. 44 at 24 (citation modified). At bottom, this is all Plaintiffs allege: the "routine commercial behavior" of "hundreds" of websites akin to "obtaining [a person's] address without his knowledge or permission" to "mail [that person] coupons and other advertisements." *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011), *as modified* (June 7, 2011). This is not an egregious breach of social norms. *See also In re Google, Inc. Priv. Pol'y Litig.*, 58 F. Supp. 3d 968, 985 (N.D. Cal. 2014); *see also In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (disclosing "unique device

---

[13] The CCPA imposes additional requirements regarding "sensitive personal information," which includes "[p]ersonal information collected and analyzed concerning a consumer's health." Cal. Civ. Code § 1798.140(ae)(2)(B). No Plaintiff alleges Microsoft collected or analyzed such information.

identifier number, personal data, and geolocation information" was not "an egregious breach of social norms"); *Cook*, 689 F. Supp. 3d at 72 (dismissing intrusion upon seclusion claim under California law based on alleged collection of online shopping interactions by session replay and collecting cases). Plaintiffs' failure to plead highly offensive conduct by Microsoft also requires dismissing this claim.

*Second*, as argued above, California law allows the kind of online information collection and use Plaintiffs allege. *See supra* pp. 4–5, 18–19. Microsoft's actions are consistent with the CCPA and CIPA. They are also commonplace, as seen in the Complaint's own allegations. *See, e.g.*, FAC ¶ 2 (alleging that the "real-time-bidding ecosystem" is "present on thousands of major websites"). Plaintiffs cannot plausibly allege that Microsoft's conduct was egregious.

*Third*, Microsoft's alleged conduct cannot be highly offensive when it was clearly disclosed to Plaintiffs through the websites' privacy policies. *See supra* p. 18 & n.6. Plaintiffs' claim thus should be dismissed. *See Tsering*, 2026 WL 89320, at *7 (dismissing an intrusion upon seclusion claim because the complaint failed to "plausibly allege that Meta knew that it was collecting third-party app users' geolocation data without their consent" and thus did not "intentionally engage[] in a secret or deceptive, and thus highly offensive, intrusion").

## VI. CONCLUSION

For the foregoing reasons, Microsoft respectfully requests that the Court dismiss the Complaint with prejudice for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6).

DATED: June 22, 2026


**PERKINS COIE LLP**

By: _/s/ James G. Snell_

James G. Snell (SBN 173070)
**PERKINS COIE LLP**
3150 Porter Drive
Palo Alto, California 94304-1212
Phone: (650) 838-4300
E-mail: JSnell@perkinscoie.com

Nicola Menaldo (pro hac vice forthcoming)
Jordan C. Harris (pro hac vice forthcoming)
**PERKINS COIE LLP**
1301 Second Avenue, Suite 4200
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000
Email: NMenaldo@perkinscoie.com
Email: JordanHarris@perkinscoie.com

Justin Potesta (SBN 314133)
**PERKINS COIE LLP**
405 Colorado Street, Suite 1700
Austin, TX 78701
Tel: (737) 256.6137
Email: JPotesta@perkinscoie.com

*Attorneys for Defendant*
*Microsoft Corporation*