**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
50 Main St., Ste. 475
White Plains, NY 10606
Telephone: (914) 874-0710
Facsimile: (914) 206-3656
E-mail: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Kaili C. Lynn (State Bar No. 334933)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: klynn@bursor.com
jwilner@bursor.com

**BURSOR & FISHER, P.A.**
Max S. Roberts (State Bar No. 363482)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10069
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: mroberts@bursor.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

STACY PENNING, SUNGGIL HONG, LAURA BONETTI, JONATHAN FINESTONE, and DILARA USKUP individually and on behalf of all persons similarly situated,

Plaintiffs,

v.

MICROSOFT CORPORATION,

Defendant.

Case No. 3:25-cv-10557-CRB

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Judge: Hon. Charles R. Breyer
Date: TBD
Time: TBD
Courtroom: 6 - 17th Floor

# TABLE OF CONTENTS

PAGE

INTRODUCTION ........ 1

ARGUMENT ........ 2

I. PLAINTIFFS ALLEGE DEFENDANT'S CONDUCT WAS INTENTIONAL ........ 2

II. PLAINTIFFS ALLEGE VIOLATIONS OF THE CIPA AND THE ECPA ........ 3

A. Plaintiffs Allege A Violation Of CIPA § 631(a) And The ECPA ........ 3

1. Defendant Intercepted Content ........ 3

2. Defendant Intercepted Communications In Transit ........ 5

3. The Crime-Tort Exception To The ECPA Applies ........ 6

4. Defendant Aided The Partner Pixels' CIPA Violations ........ 7

5. Defendant Used The Intercepted Information ........ 8

B. Plaintiffs Allege A Violation Of CIPA § 632 ........ 8

C. Plaintiffs Allege A Violation Of CIPA § 638.51 ........ 10

D. Defendant's Rule Of Lenity Argument Should Be Rejected ........ 12

III. PLAINTIFFS STATE A CLAIM FOR INTRUSION UPON SECLUSION ........ 13

IV. TO THE EXTENT THE COURT GRANTS THE MOTION (AND IT SHOULD NOT), PLAINTIFFS SHOULD BE PERMITTED LEAVE TO AMEND ........ 16

CONCLUSION ........ 17

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Anderson v. Nat. Collegiate Athletic Association*,
2026 WL 925519 (C.D. Cal. Mar. 25, 2026) ........ 10

*Belridge Farms v. Agricultural Labor Relations Bd.*,
21 Cal. 3d 551 (1978) ........ 11

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ........ 6

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ........ 4, 13

*Cancelmo v. Southern New Hampshire Medical Ctr.*,
2025 WL 2783652 (D.N.H. Sept. 30, 2025) ........ 13

*Centennial Bank v. Holmes*,
717 F. Supp. 3d 542 (N.D. Tex. 2024) ........ 13

*Chatrie v. United States*,
146 S. Ct. 2193 (2026) ........ 14

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) ........ 3

*D'Antonio v. Cable News Network*,
830 F. Supp. 3d 322 (S.D.N.Y. 2026) ........ 10

*Deivaprakash v. Condé Nast Digital*,
798 F. Supp. 3d 1100 (N.D. Cal. 2025) ........ 12, 14, 15

*Dellasala v. Samba TV, Inc.*,
2026 WL 1138358 (N.D. Cal. Apr. 21, 2026) ........ 10

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) ........ 13

*Drummer v. Costar Grp., Inc.*,
2025 WL 3190656 (C.D. Cal. Oct. 22, 2025) ........ 11

*Fregosa v. Mashable, Inc.*,
2025 WL 2886399 (N.D. Cal. Oct. 9, 2025) ........ 1, 10, 11, 13

*Fregosa v. Mashable, Inc.*,
2026 WL 183857 (N.D. Cal. Jan. 23, 2026) ........ 10, 11

*Freifeld v. Epsilon Data Management, LLC*,
2026 WL 1759012 (N.D. Ill. June 15, 2026) ........ 1, 5

*Gabrielli v. Motorola Mobility LLC*,
2025 WL 1939957 (N.D. Cal. July 14, 2025) ........ 11

*Gilligan v. Experian Data Corp.*,
2026 WL 32259 (N.D. Cal. Jan. 6, 2026) ........ passim

*Gladstone v. Amazon Web Servs. Inc.*,
739 F. Supp. 3d 846 (W.D. Wash. 2024) ........ 2, 3

*Gliksman v. Healthline Media, LLC*,
2026 WL 1908082 (N.D. Cal. July 2, 2026) ........ 10, 13

*Harrott v. Cnty. Of Kings*,
25 Cal. 4th 1138 (2001) ........ 13

*In re Application of U.S. for an Order Pursuant to 18 U.S.C. Section 2703(d)*,
157 F. Supp. 2d 286 (S.D.N.Y. 2001) ........ 12

*In re DoubleClick Inc. Priv. Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001) ........ 13

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ 14

*In re Meta Android Privacy Litig.*,
--- F. Supp. 3d ---, 2026 WL 1279416 (N.D. Cal. May 11, 2026) ........ 3

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ........ 13

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ........ 4

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) ........ 5

*Joffe v. Google, Inc.*,
746 F.3d 920 (9th Cir. 2013) ........ 12

*Jones v. Skullcandy, Inc.*,
2026 WL 699819 (S.D. Cal. Mar. 12, 2026) ........ 8, 9

*Kearney v. Salomon Smith Barney, Inc.*,
39 Cal. 4th 95 (2006) ........ 9

*Krzyzek v. OpenX Techs., Inc.*,
817 F. Supp. 3d 857 (N.D. Cal. 2026) ........ passim

*Kurowski v. Rush Sys. for Health*,
2024 WL 2344020 (N.D. Ill. July 18, 2024) ........ 13

*L.B. v. LinkedIn Corp.*,
2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) ........ 2, 3

*Lewis v. Magnite, Inc.*,
2025 WL 3687546 (C.D. Cal. Dec. 4, 2025) ........ 11, 15

*Limas v. Wayfair LLC*,
2026 WL 2351592 (C.D. Cal. Aug. 13, 2026) ........ 13

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) ........ 16

*Lynch v. Express Scripts Holding Co.*,
2026 WL 1749550 (N.D. Cal. June 17, 2026) ........ 3

*Maketa v. Valnet Inc.*,
2026 WL 323126 (N.D. Cal. Feb. 6, 2026) ........ 2, 10

*Manier v. Triple Lift Inc.*,
2026 WL 1295546 (C.D. Cal. Apr. 15, 2026) ........ 14, 15

*Mirmalek v. Los Angeles Times Communications LLC*,
2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) ........ 12, 15

*Moody v. C2 Educ. Sys. Inc.*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024) ........ 13

*Nelson v. Reddit, Inc.*,
2026 WL 445627 (S.D. Cal. Feb. 17, 2026) ........ 11

*NovelPoster v. Javitch Canfield Grp.*,
140 F. Supp. 3d 938 (N.D. Cal. 2014) ........ 6

*Ortiz v. Foris Dax, Inc.*,
2026 WL 1430720 (N.D. Cal. May 21, 2026) ........ 10, 11

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ........ 4

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) ........ passim

*Roney v. Miller*,
705 F. App'x 670 (9th Cir. 2017) ........ 16

*Rusow v. Skinspirit Essential LLC*,
2025 WL 4657637 (N.D. Cal. Oct. 15, 2025) ........ 7

*Selby v. Sovrn Holdings, Inc.*,
2025 WL 2950164 (N.D. Cal. Oct. 17, 2025) ........ 1, 4, 5, 16

*Semien v. PubMatic Inc.*,
2026 WL 216333 (N.D. Cal. Jan. 27, 2026)........ passim

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024)........ 10, 11

*Smith v. Google, LLC*,
735 F.Supp.3d 1188 (N.D. Cal. 2024)........ 5

*Smith v. LoanMe, Inc.*,
11 Cal. 5th 183 (2021)........ 12, 13

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 2210002 (N.D. Cal. Aug. 4, 2025) ........ 7

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024)........ 9

*United States v. Corinthian Colleges*,
655 F.3d 984 (9th Cir. 2011) ........ 16

*United States v. Nosal*,
676 F.3d 854 (9th Cir. 2012) ........ 13

*United States v. United Healthcare Ins. Co.*,
848 F.3d 1161 (9th Cir. 2016) ........ 16

*Vita v. New England Baptist Hosp*,
494 Mass. 824 (2024) ........ 13

*Xu v. Reuters News & Media, Inc.*,
2025 WL 3035016 (Super. Ct. Santa Clara Cnty. Oct. 24, 2025) ........ 14

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023)........ 9

**STATUTES**

18 U.S.C. § 2510(12)........ 12

Cal. Civ. Code § 1798.100(a) ........ 3

Cal. Penal Code § 631(a)........ 11

**RULES**

Fed. R. Civ. P. 9(b)........ 2

Plaintiffs Stacy Penning, SungGil Hong, Laura Bonetti, Jonathan Finestone, and Dilara Uskup (together, "Plaintiffs") respectfully submit this opposition to Defendant Microsoft Corporation's ("Defendant") Motion to Dismiss the First Amended Complaint (ECF No. 34) (the "Motion" or "MTD").

## INTRODUCTION

This case involves egregious privacy violations perpetuated on an enormous scale across the internet by Defendant. Plaintiffs' First Amended Complaint (ECF No. 26) (the "FAC") alleges that by contracting with hundreds of website operators, data brokers, and technology companies, Defendant improperly collects massive amounts of data on millions of internet users, including their identifying information, addressing information, and the contents of their private communications with websites, all without website users' knowledge or consent. FAC ¶¶ 1, 54-164. Defendant does this to profit off consumers' data, compiling the information it collects into detailed profiles on consumers and their online behavior, which are sold to dozens of entities to facilitate real-time bidding. *Id.* ¶¶ 11, 50-52, 164, 287. The result is dragnet surveillance of near every aspect of Plaintiffs' and Class Members' lives and a loss of control of even one's most intimate information, which is made available for sale to data brokers and advertisers in the blink of an eye without notice or consent. *Id.* ¶¶ 24-25, 29-53, 163-164, 287.

This Court has already sustained privacy claims involving one of Defendant's same trackers, and in doing so, overruled many of the same arguments by the same defense counsel as here. *See generally Fregosa v. Mashable, Inc.*, 2025 WL 2886399 (N.D. Cal. Oct. 9, 2025) (Breyer, J.). And across this District and elsewhere, courts have sustained similar privacy claims against competitors of Defendant's who buy and sell user's information without consent. *See, e.g.*, *Selby v. Sovrn Holdings, Inc.*, 2025 WL 2950164 (N.D. Cal. Oct. 17, 2025); *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075 (N.D. Cal. 2025); *Krzyzek v. OpenX Techs., Inc.*, 817 F. Supp. 3d 857 (N.D. Cal. 2026); *Semien v. PubMatic Inc.*, 2026 WL 216333 (N.D. Cal. Jan. 27, 2026); *Gilligan v. Experian Data Corp.*, 2026 WL 32259 (N.D. Cal. Jan. 6, 2026); *Freifeld v. Epsilon Data Management, LLC*, 2026 WL 1759012 (N.D. Ill. June 15, 2026). The arguments are so rout at this point that, in a case involving another of Defendant's competitors, the Court summarily denied a

motion to dismiss. *See In re The Trade Desk, Inc. Data Privacy Litig.*, Case No. 3:25-cv-2889, ECF No. 69 (N.D. Cal. Dec. 18, 2025) (Breyer, J.). Defendant's suggestion that the Court "chart a different path in this case is not persuasive," and its Motion should be denied. *See Maketa v. Valnet Inc.*, 2026 WL 323126, at *1 (N.D. Cal. Feb. 6, 2026).

## ARGUMENT

### I. PLAINTIFFS ALLEGE DEFENDANT'S CONDUCT WAS INTENTIONAL

Defendant argues the FAC "does not establish that Microsoft intended to invade privacy, wiretap, or eavesdrop," even though Defendant "offers a suit of products that rely on the collection of mass amounts of data on each individual, collected both from the Microsoft pixels and other sources." *Compare* MTD at 8, *with* FAC ¶ 164. "Whether a person possesses the requisite intent … is generally a question of fact." *Gladstone v. Amazon Web Servs. Inc.*, 739 F. Supp. 3d 846, 859 (W.D. Wash. 2024); *see also L.B. v. LinkedIn Corp.*, 2025 WL 2899514, at *12 (N.D. Cal. Oct. 10, 2025); Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). Thus, to the extent there are doubts as to whether Defendant possessed the requisite intent, its Motion should be denied and the question revisited "on an evidentiary record. *Gladstone*, 739 F. Supp. 3d at 860 (cleaned up). Even so, Plaintiffs have sufficiently alleged Defendant possessed the requisite intent.

*First*, Defendant is correct that "[t]o state a claim for intrusion upon seclusion, Plaintiffs must plead that Microsoft intended to violate their privacy." MTD at 9. Plaintiffs plead such. *See* FAC ¶ 382 ("By conducting such widespread surveillance, Defendant intentionally invaded Plaintiffs' and Class Members' privacy rights, as well as intruded upon Plaintiffs' and Class Members' seclusion.").

*Second*, Defendant claims Plaintiffs "offer no facts showing that Microsoft intended to learn 'private' facts about Plaintiffs, … intercept communications, … [or] record confidential communications." MTD at 9. Not so. Plaintiffs allege "Defendant engages in widespread data collection and interception of Plaintiffs' and Class Members' internet and app activity, including their communications with websites and apps, thereby learning intimate details of their daily lives based on the massive amount of information collected about them." FAC ¶ 385.

*Third*, Defendant claims there are no "facts that plausibly suggest that Microsoft intended the

websites that used its technology to avoid getting consent" and "the privacy policies on the websites Plaintiffs visited disclose the type of third-party data collection alleged here." MTD at 9. Microsoft does not demonstrate the policies it cites disclosed its eavesdropping, nor that the websites adequately informed users of the existence of those policies. *See*, *e.g.*, *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1000 (N.D. Cal. 2024) ("Ring fails to cite any cases in which merely having a privacy policy online is sufficient to show consent under CIPA."); *In re Meta Android Privacy Litig.*, --- F. Supp. 3d ---, 2026 WL 1279416, at *4 (N.D. Cal. May 11, 2026) ("[I]f a plaintiff could have plausibly understood the disclosures as not disclosing that the defendant would engage in particular conduct, their claims cannot be dismissed.") (cleaned up).[1] And as the "majority rule" states, any Microsoft policies requiring its vendors to get consent are not "dispositive of its intent at the pleadings stage." *L.B.*, 2025 WL 2899514, at *13; *see also*, *e.g.*, *Gladstone*, 739 F. Supp. 3d at 860 ("[T]he Court is not convinced that Defendant's inclusion of a catch-all provision requiring its customers to comply with the law generally is enough to satisfy its legal obligations under CIPA.") (cleaned up); *Lynch v. Express Scripts Holding Co.*, 2026 WL 1749550, at *8 (N.D. Cal. June 17, 2026) ("[T]he issues of knowledge, intent, and substantial assistance are better addressed on a more fully developed record."). As it stands, it is "not a leap to infer" Defendant knew how its technology worked and what data it transmitted. *Lynch*, 2026 WL 1749550, at *8. This is so where, as here, Defendant's Tracker "is designed for the purpose of" de-anonymizing users and facilitating the sale of their information. *Gladstone*, 739 F. Supp. 3d at 860; *see also*, *e.g.*, FAC ¶¶ 57-61, 67, 81-82, 141-164.

In sum, Plaintiffs sufficiently allege Defendant's intent.

## II. PLAINTIFFS ALLEGE VIOLATIONS OF THE CIPA AND THE ECPA

### A. Plaintiffs Allege A Violation Of CIPA § 631(a) And The ECPA

#### *1. Defendant Intercepted Content*

Defendant argues Plaintiffs' CIPA § 631(a) and ECPA claims fail because Plaintiffs "do not

[1] Defendant claims the CCPA "allows the collection and sharing of website activity information for advertising without affirmative consent as long as websites provide adequate privacy policies." MTD at 23. This is false. The CCPA requires "[a] business that controls the collection of a consumer's personal information [to], *at or before* the point of collection, inform consumers" of the types of information collected. Cal. Civ. Code § 1798.100(a) (emphasis added). "[T]he CCPA does not authorize a party to intercept communications without the communicator's knowledge or consent." *Gilligan*, 2026 WL 32259, at *3.

allege facts plausibly showing that Microsoft collected the 'contents' of any 'communications.'" MTD at 11. Specifically, Defendant contends the "collection of the universal resource locator ('URL') for each page of each website visited by an individual" do not constitute "contents." *Id.* (quotations omitted). Defendant is wrong.

"Content is defined to 'include[] any information concerning the substance, purport, or meaning of [the] communication.'" *Brown v. Google LLC*, 685 F. Supp. 3d 909, 935 (N.D. Cal. 2023). This includes "the links, pages, and tabs users click and view and the search terms they employ," including those contained in URLs. *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024) ("URLs which disclose search terms that reveal website users' 'personal interests, queries, and habits' are 'contents' of communications under CIPA and ECPA."). *In re Zynga* did not hold otherwise. *See In re Zynga Priv. Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014) (noting that "divulging a URL containing [a] search term to a third party could amount to disclosure of the contents").

Here, Plaintiffs allege that, at least on some websites, Defendant collects the specific web pages they visit and read, and the contents of their communications with those websites. *See, e.g.*, FAC ¶ 71 ("For example, when a user enters information into the Expedia website indicating where they would like to stay and the dates of travel, that information is included in the URL of the webpage with the search results.").[2] The FAC also alleges that the Partner Trackers collect similarly detailed URLs, and that by syncing with these Partner Trackers, Defendant aides the Partner Trackers' interception of contents by de-anonymizing users. *See* FAC ¶¶ 276-78. In either case, Plaintiffs plausibly allege that either Defendant itself intercepted the "contents" of users' communications or aided the Partner Trackers in doing so. *Selby*, 2025 WL 2950164, at *3 (finding "contents" were intercepted where "Plaintiffs have alleged that, among other things, Sovrn collects 'full-string URLs' that reflect not only the website visited, but also, for example, search queries and specific items Plaintiffs viewed"); *Semien*, 2026 WL 216333, at *8-9.

Defendant claims that "none of the Plaintiffs have alleged that Microsoft collected their

[2] Plaintiffs allege that the websites listed in the FAC are just exemplars, and that "there are hundreds of thousands of other websites where [Defendant collects] the same or similar information." FAC ¶ 165.

search terms or other input text through URLs." MTD at 12 (emphasis in original). Not so. *See* FAC ¶¶ 244, 250, 256, 261, 268 (all alleging Defendant intercepts search terms in URLs). Defendant posits that "because Plaintiffs' screenshots do not show that a visitor's typed text into a search bar is replicated verbatim into a URL" there is no allegation of contents of a communication being intercepted. MTD at 13. Courts at the pleading stage have never required screenshots at all; Plaintiffs provide screenshots to illustrate some allegations in the FAC.

Defendant argues Plaintiffs must allege specific searches on visited websites. MTD at 13. That is wrong. Plaintiffs do not need to provide exact search terms at the motion to dismiss stage. *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 956 (N.D. Cal. 2023) ("[T]o the extent Disney suggests Plaintiffs must plead the exact communications they had with the ESPN.com website, other courts have rejected that position."); *Smith v. Google, LLC*, 735 F.Supp.3d 1188, 1199 (N.D. Cal. 2024) ("Although it does not specify exactly what information was actually transmitted by H&R Block, the allegations are sufficient at the pleading stage to state a claim that the contents or meaning of plaintiffs' confidential communications were read and/or used by Google").

*2. Defendant Intercepted Communications In Transit*

Defendant argues "Plaintiffs plead no facts" showing "in transit" interception. MTD at 14. The allegations Defendant quotes describe the process by which Defendant's "code gets to a website user's device" in the first instance. *James*, 701 F. Supp. 3d at 962. Indeed, Plaintiffs clearly allege that after the Pixel technologies load tracking software in the form of cookies onto a user's browser, the technologies then "intercepts the detailed, full-string URL of the pages visited by each user, revealing search terms and properties selected by that user." FAC ¶ 244; *see also Selby*, 2025 WL 2950164, at *3 (finding in-transit interception); *Krzyzek*, 817 F. Supp. 3d at 868 (same where "after the OpenX pixel is loaded onto a user's browser, then it intercepts the detailed, full-string URL from each page of a website a user visits, thereby intercepting the user's communications with the website regarding which articles they want to view") (cleaned up); *Freifeld*, 2026 WL 1759012, at *4.

Plaintiffs' allegations showing an in-transit interception "are not conclusory." *Selby*, 2025 WL 2950164, at *3; *see*, *e.g.*, FAC ¶¶ 172, 174 (once the Adnxs Pixel is set up on a website, it "immediately loads the Adnxs Tracking Cookies onto the individual's browser" and "collects each

individual's device information."). Plaintiffs laboriously explain how the real-time bidding process works (FAC ¶¶ 29-51), demonstrate how Defendant's Tracker operates on websites (FAC ¶¶ 54-164), and detail how Defendant monetizes collected user data in real-time on hundreds of websites, including the nine websites that the named Plaintiffs' claims arise out of (FAC ¶¶ 165-287).

Defendant's reliance on *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938 (N.D. Cal. 2014) is misplaced. *See* MTD at 15. "[U]nlike in *NovelPoster* where emails were accessed in accounts after they were received, here the complaint alleges that [Defendant's] 'interceptions' occurred while users communicated with websites through their browsing activities." *Semien*, 2026 WL 216333, at *8; FAC ¶¶ 169-75.

Finally, Defendant posits that Plaintiffs do not allege that Defendant "attempted to 'understand or interpret' any … communication in real time." MTD at 15. But Plaintiffs did. *See* FAC ¶ 398 ("Defendant willfully and without the consent of all parties to the communication, and in an unauthorized manner, read, attempted to read, and learned the contents of the electronic communications of Plaintiffs and Subclass Members, on the one hand, and the websites at issue, on the other, while the electronic communications were in transit."). Indeed, Defendant's business works within the real-time bidding ecosystem, which involves learning who consumers are and what they are viewing in real time to better facilitate the sale of their information. *See*, *e.g.*, FAC ¶¶ 1, 14, 36, 78, 146, 164, 168, 170.

### *3. The Crime-Tort Exception To The ECPA Applies*

Defendant contends its website partners consented to using the Xandr and UET pixels by installing them onto the websites, thereby negating Defendant's liability under the ECPA. *See* MTD at 16. Defendant then contends the crime-tort exception does not apply because it "merely monetize[s] data for targeted advertising." *See* MTD at 16 (cleaned up). Defendant is wrong. "Courts have held that 'the association of Plaintiffs' data with preexisting user profiles is a further use of Plaintiffs' data that satisfies this exception.'" *Krzyzek*, 817 F. Supp. 3d at 869 (collecting cases) (quoting *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021)); *Semien*, 2026 WL 216333, at *10; *Gilligan*, 2026 WL 32259, at *3 ("[T]he disclosure and use of Plaintiffs'

information for advertising can plausibly constitute an independent invasion of privacy beyond the act of intercepting the information alone, satisfying the crime-tort exception.").

Plaintiffs have alleged such facts here. *See*, *e.g.*, FAC ¶ 140 (Defendant "allowed for the user to be identified; (ii) link[ed] the user to information from across other websites and apps; and (iii) benefit[ed] the websites, apps, and Partner Pixels by making that user more valuable to advertisers because the user could be better targeted with relevant ads due to the extensive information Defendant collected and provided to the Partner Pixels."); *id.* ¶¶ 396-401, 445-447 (alleging Defendant violates state and federal laws by intercepting and de-anonymizing user information to compile comprehensive user dossiers); *id.* ¶¶ 29-42 (explaining how Defendant monetizes the information by facilitating real-time bidding as an ad exchange). And "the majority [of] courts" have "decline[d] to adopt any bright-line rule insulating financial motives from the crime-tort exception." *Riganian*, 791 F. Supp. 3d at 1091; *Smith v. Rack Room Shoes, Inc.*, 2025 WL 2210002, at *5 (N.D. Cal. Aug. 4, 2025); *see also In re Otter.AI Privacy Litig.*, --- F. Supp. 3d ---, 20926 WL 2351237, at *6 (N.D. Cal. Aug. 13, 2026) ("[C]ommitting a tort and seeking a profit are not mutually exclusive."). This makes sense as "the crime-tort exception applies when a party uses intercepted communications to blackmail someone, even if the primary motivation for engaging in blackmail is to make money." *Rack Room Shoes*, 2025 WL 2210002, at *5. This Court's decision in *Rusow v. Skinspirit Essential LLC*, 2025 WL 4657637, at *15 (N.D. Cal. Oct. 15, 2025), is not the contrary, as unlike here, no independent purpose was alleged there.

*4. Defendant Aided The Partner Pixels' CIPA Violations*

Defendant argues that Plaintiffs fail to allege aiding and agreeing liability because "they have not alleged facts that any third party has" wiretapped under CIPA. MTD at 17. That is wrong. *See*, *e.g.*, FAC ¶ 187 ("Receiving the UID allows Criteo and any other Partner Pixel to identify which individual is entering which information into the AliExpress website and, thus the Adnxs Pixel aids Criteo's wiretapping.").

Specifically, Plaintiffs explain how Defendant's Trackers aid with the interception of Plaintiffs' communications by de-anonymizing users and better facilitating the sale of their information. Plaintiffs allege the Partner Pixels:

> communicated with the Adnxs pixel to better enable their advertising. Each Partner Pixel would itself intercept users' communications with the website or app. The Adnxs pixel would then assign a Microsoft ID to the user's activity on the website or app, which, among other things, (i) allowed for the user to be identified; (ii) link the user to information from across other websites and apps; and (iii) benefit the websites, apps, and Partner Pixels by making that user more valuable to advertisers because the user could be better targeted with relevant ads due to the extensive information Defendant collected and provided to the Partner Pixels.

FAC ¶ 140; *see also*, *e.g.*, *id.* ¶¶ 87, 125, 182-187. Such allegations are sufficient. *Semien*, 2026 WL 216333, at *9 ("The FAC adequately alleges aiding and abetting liability. Plaintiffs state that defendant aids, agrees with, employs, or conspires with each Partner Tracker that it provides identity resolution to and who intercepts Plaintiffs' and California subclass Members' confidential communications.") (cleaned up); *Krzyzek*, 817 F. Supp. 3d at 866 n.7.

*5. Defendant Used The Intercepted Information*

Defendant argues Plaintiffs cannot allege violations of the CIPA and ECPA provisions prohibiting the "use" of their information because "Plaintiffs do not allege facts showing that Microsoft unlawfully intercepted their communications." MTD at 17. Because, for the reasons stated above, Plaintiffs plausibly allege violations of CIPA § 631(a) and the ECPA regarding the interception of their information, Plaintiffs likewise allege a violation of those statutes for the "use" of their improperly acquired information.

**B. Plaintiffs Allege A Violation Of CIPA § 632**

Defendant argues that Plaintiffs "fail to allege the recording of a 'confidential communication.'" MTD at 18. That is wrong. For instance, in *Jones v. Skullcandy, Inc.*, 2026 WL 699819 (S.D. Cal. Mar. 12, 2026), the plaintiff alleged third parties "collect[ed] information such as detailed browsing histories and product preferences, … personally identifiable information including names, email addresses, and Facebook/Google account identifiers, real-time behavioral data showing consumer interests and purchasing patterns, and demographic and psychographic profiles that enable targeted marketing." *Id.* at *18 (cleaned up). The court sustained the plaintiff's CIPA § 632 claim because the plaintiffs had "a reasonable expectation that the immense amount of personally identifiable and browsing data allegedly collected by the Tracking Technologies would not be shared with third parties." *Id.*

So too here. Plaintiffs allege "Defendant acts as a data broker that uniquely identifies and de-anonymizes users of various websites and mobile application by matching users' persistent identifier … values with comprehensive profiles held by Defendant." FAC ¶ 14; *see also*, *e.g.*, *id.* ¶¶ 37, 63-64, 67, 74, 78-79, 82, 132, 165-166, 173, 276, 285. Through this surveillance, Defendant learns "intimate details about" consumers' "daily lives based on the massive amount of information collected"—none of which is anonymous—and shares those profiles with other third parties "for targeted advertising." *See*, *e.g.*, *id.* ¶¶ 51, 84, 385, 387, 423, 443. Thus, as in *Jones*, Defendant violated Plaintiff's reasonable expectation that "the immense amount of personally identifiable and browsing data allegedly collected by [Defendant] would not be shared with third parties." *Jones*, 2026 WL 699819, at *18.

Further, Defendant misstates that "no Plaintiff alleges they shared any sensitive health or financial information with a website or app." MTD at 19. Plaintiffs allege that "Defendant collected their … financial status and information, health information**,** political leanings and interests, and the media they consume." FAC ¶ 423. For instance, Plaintiffs allege Defendant collected information from multiple healthcare-related websites in a non-anonymized manner. *See*, *e.g.*, *id.* ¶¶ 229-238, 272-278 (alleging Defendant collected information from Plushcare and Healthline websites); *id.* ¶ 294 (alleging Plaintiff Penning had his information collected by Defendant on Healthline and Walgreens' websites); *id.* ¶ 303 (alleging Plaintiff Hong had his information collected by Defendant on CVS and WebMD's websites); *id.* ¶ 350 (alleging Plaintiff Uskup had her information collected by Defendant on Healthline, Western Union, and WebMD's websites). Courts have sustained CIPA § 632 claims when information from medical or financial websites is collected by a third party. *See*, *e.g.*, *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 973 (N.D. Cal. 2023) (sustaining CIPA § 632 claim based on interception of information from chat portal on Kaiser Permanente's website); *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 943 (N.D. Cal. 2024) ("Plaintiff has plausibly alleged that the sensitive financial information being recorded is the type that could be reasonably considered confidential."); *see also Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 118 n.10 (2006) (noting "the strong privacy interest most persons have with regard to the personal financial information"). Indeed, as to CVS and Walgreens specifically, the Department of Health and Human

Services previously published guidance warning HIPAA-covered entities like CVS and Walgreens about the use of tracking technologies like Defendant's.[3]

**C. Plaintiffs Allege A Violation Of CIPA § 638.51**

This Court has already determined that Defendant's Tracker is a "pen register" under CIPA § 638.50(b). *Fregosa v. Mashable, Inc.*, 2025 WL 2886399, at *4-5 (N.D. Cal. Oct. 9, 2025). So too have other courts. *See*, *e.g.*, *Gliksman v. Healthline Media, LLC*, 2026 WL 1908082, at *2, *6 (N.D. Cal. July 2, 2026); *Maketa v. Valnet Inc.*, 2026 WL 323126, at *1 (N.D. Cal. Feb. 6, 2026); *Anderson v. Nat. Collegiate Athletic Association*, 2026 WL 925519, at *3, *7-9 (C.D. Cal. Mar. 25, 2026); *D'Antonio v. Cable News Network*, 830 F. Supp. 3d 322, 325, 330-31 (S.D.N.Y. 2026). And on the whole, "the overwhelming majority of courts that have considered this question"—including this Court and "*every* federal court to tackle the CIPA applicability question"—"have similarly concluded that third-party internet trackers [like Defendant's] meet the technical requirements of a pen register under CIPA." *Dellasala v. Samba TV, Inc.*, 2026 WL 1138358, at *7 (N.D. Cal. Apr. 21, 2026) (cleaned up); *Fregosa v. Mashable, Inc.*, 2026 WL 183857, at *2 (N.D. Cal. Jan. 23, 2026) (Breyer, J.) (emphasis in original). This trend has not slowed since the Court issued either *Fregosa* decision. *See*, *e.g.*, *Ortiz v. Foris Dax, Inc.*, 2026 WL 1430720, at *6 (N.D. Cal. May 21, 2026) ("While decisions are split, a majority have adopted the broader construction that Plaintiffs urge, mostly relying on the plain text of the statute.").[4]

Defendant acknowledges it is starting behind the eight-ball and simply repeats argument the Court has rejected "to preserve the argument for appeal." MTD at 20. Plaintiff briefly does the same. "Nothing in the statutory definition limits pen registers to those that operate the same way as a traditional phone pen register." *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 929 (N.D. Cal. 2024). On the contrary, "[t]he statutory text is deliberately expansive, designed to encompass new technologies and apply to conduct like that alleged here." *Fregosa*, 2025 WL 2886399, at *9. "If

---

[3] USE OF ONLINE TRACKING TECHNOLOGIES BY HIPAA COVERED ENTITIES AND BUSINESS ASSOCIATES, https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html.

[4] Most of the decisions Defendant cites pre-date the Court's decision on the motion to dismiss in *Fregosa*, as well as the Court's decision denying interlocutory appeal in the same matter. *See* MTD at 19 n.9.

the drafters of Section 638.50 had intended for 'pen register' to be limited to telephone technologies, they knew how to do so—as evidenced by other sections of CIPA where they imposed such limitations." *Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *11 (N.D. Cal. July 14, 2025) (citing Cal. Penal Code §§ 631(a) (clause one), 632.7)). Nor is there any requirement limiting the statute to communications with content (*i.e.*, person-to-person communications). *See Nelson v. Reddit, Inc.*, 2026 WL 445627, at *5 (S.D. Cal. Feb. 17, 2026).

The legislative history buttresses this interpretation. The California legislature copied the definition of a "pen register" from the definition found in the modern Federal Pen Register Act, which "*removed* language which had limited pen registers to telephone lines and broadened their scope considerably to sweep in internet-based tracking." *Ortiz*, 2026 WL 1430720, at *7. "By directly borrowing the federal pen register definition, the California legislature imported the expansion of its scope which occurred in 2001, years before CIPA was enacted." *Id.*; *see also Belridge Farms v. Agricultural Labor Relations Bd.*, 21 Cal. 3d 551, 557 (1978) ("[W]hen legislation has been judicially construed and a subsequent statute on the same or an analogous subject is framed in the identical language, it will ordinarily be presumed that the Legislature intended that the language as used in the later enactment would be given a like interpretation. This rule is applicable to state statutes which are patterned after (the) federal statutes.") (cleaned up). On top of this, "[g]iving effect to CIPA's broad statutory language is consistent with the California Legislature's stated intent to protect privacy interests, as well as the California courts' approach when applying statutes to new technologies." *Shah*, 754 F. Supp. 3d at 930.

Defendant's policy concerns are "overstated." *Fregosa*, 2026 WL 183857, at *2; *Lewis v. Magnite, Inc.*, 2025 WL 3687546, at *13 (C.D. Cal. Dec. 4, 2025) ("Defendant's prophecy has not come to fruition in the last few years since other courts have interpreted CIPA as this Court does"). Defendant did not receive Plaintiffs' information "as part of an ordinary online exchange," but rather, as a surreptitious third party intending to compile that information into profiles and facilitate its sale. *Fregosa*, 2025 WL 2886399, at *7. Nothing about such third-party data collection implicates "basic internet function." *Drummer v. Costar Grp., Inc.*, 2025 WL 3190656, at *4 (C.D. Cal. Oct. 22, 2025). And "any perceived harshness … is lessened by the fact that a party can avoid liability under

the statute by taking reasonable precautions, such as obtaining the consent to record the statute requires." *Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 201 (2021). Nor does Plaintiffs' interpretation conflict with the CCPA. The "CCPA and CIPA are complementary," and the CCPA takes a backseat to laws that "afford the greatest protection for the right of privacy for consumers" regardless. *Mirmalek v. Los Angeles Times Communications LLC*, 2024 WL 5102709, at *5 (N.D. Cal. Dec. 12, 2024) (Breyer, J.). Contrary to Defendant's reading, "the CCPA does not authorize a party to intercept communications without the communicator's knowledge or consent," as, if users do "not know about the data collection," they cannot "exercise[] [their] right to opt out." *Gilligan*, 2026 WL 32259, at *3; *Deivaprakash v. Condé Nast Digital*, 798 F. Supp. 3d 1100, 1106 (N.D. Cal. 2025).

As Defendant admits though, "the California Courts of Appeal is set to hear the issue for the first time. *Variety Media, LLC v. Super. Ct.*, No. B350578 (Cal. Ct. App., L.A. Cnty. Jan. 8, 2026)." MTD at 19 n.9. For now though, the Court should follow the path it and most other courts have already charted and sustain Plaintiffs' CIPA § 638.51 claim.

### D. Defendant's Rule Of Lenity Argument Should Be Rejected

Defendant argues "[t]he conflicting interpretations of ECPA and CIPA by respected federal and state judges are perhaps the best proof that the statutes are ambiguous and should be subject to the rule of lenity." MTD at 21. The Court previously rejected this same argument by this same defense counsel and should do so again here. *In re The Trade Desk, Inc. Data Privacy Litig.*, Case No. 3:25-cv-2889, ECF No. 69 (N.D. Cal. Dec. 18, 2025).

"[T]he rule of lenity applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute." *Joffe v. Google, Inc.*, 746 F.3d 920, 935-36 (9th Cir. 2013). Defendant identifies no such grievous ambiguity or uncertainty here. As to the ECPA, "it has been repeatedly recognized that the ECPA applies to electronic communications transmitted via the internet." *In re Application of U.S. for an Order Pursuant to 18 U.S.C. Section 2703(d)*, 157 F. Supp. 2d 286, 290 (S.D.N.Y. 2001) (collecting cases). This is evident from the plain text of the statute, which broadly defines an "electronic communication" as "*any* transfer of signs, signals, writing, images, sound, data, or intelligence of any nature." 18 U.S.C. § 2510(12) (emphasis added). Thus, courts have consistently sustained ECPA claims like those here based on information

collected from internet communications. *See, e.g.*, *In re Meta Pixel Healthcare Litig*., 647 F. Supp. 3d 778, 796 (N.D. Cal. 2022); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 935-36 (N.D. Cal. 2023). Courts in this District and elsewhere have rejected interpretations of the ECPA (and other statutes) proffered by *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497 (S.D.N.Y. 2001), which Defendant cites. *See*, *e.g.*, *Riganian*, 791 F. Supp. 3d at 1090; *Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1077 (C.D. Cal. 2024); *Kurowski v. Rush Sys. for Health*, 2024 WL 2344020, at *5 (N.D. Ill. July 18, 2024); *Centennial Bank v. Holmes*, 717 F. Supp. 3d 542, 568 (N.D. Tex. 2024).

Likewise, the California Supreme Court and the majority of federal district courts (including this one) have rejected rule of lenity arguments involving the CIPA. *LoanMe*, 11 Cal. 5th at 202 (rejecting application of rule of lenity to CIPA § 632.7); *Fregosa*, 2025 WL 2886399, at *9 ("[T]he statute contains no grievous ambiguity."); *Riganian*, 791 F. Supp. 3d at 1094 ("LiveRamp … has not established any 'grievous ambiguity' in the statute's express language."); *Limas v. Wayfair LLC*, 2026 WL 2351592, at *9 (C.D. Cal. Aug. 13, 2026) (same); *Gliksman*, 2026 WL 1908082, at *6 (same). *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109 (N.D. Cal. 2025), which Defendant cites, is in the minority and ignored *LoanMe* in applying the rule of lenity to CIPA.

Last, Defendant cites *Vita v. New England Baptist Hosp*, 494 Mass. 824 (2024); *United States v. Nosal*, 676 F.3d 854 (9th Cir. 2012); and *Harrott v. Cnty. Of Kings*, 25 Cal. 4th 1138 (2001). Those decisions are inapposite as they address statutes or terms not at issue here. *Cf. Cancelmo v. Southern New Hampshire Medical Ctr.*, 2025 WL 2783652, at *5 (D.N.H. Sept. 30, 2025) ("This court respectfully declines to apply *Vita* because the New Hampshire Wiretap Act is distinguishable.").

## III. PLAINTIFFS STATE A CLAIM FOR INTRUSION UPON SECLUSION

Defendant argues "Plaintiffs fail to allege circumstances that would make it objectively reasonable for them to believe their interactions with the Websites would not be disclosed for advertising." MTD at 22. This is wrong. Courts have roundly found the violation of a reasonable expectation of privacy based on widespread profiling like Defendant's. *See*, *e.g.*, *Krzyzek*, 817 F. Supp. 3d at 865 (finding a reasonable expectation of privacy where "OpenX allegedly tracks, compiles, and sells massive amounts of information on plaintiffs, without their knowledge that an

OpenX pixel has been loaded onto a given website"); *Semien*, 2026 WL 216333, at *6 (same); *Manier v. Triple Lift Inc.*, 2026 WL 1295546, at *5 (C.D. Cal. Apr. 15, 2026) ("The manner of Defendant's data collection and subsequent usage of the data to create profiles even after Plaintiff's visit to certain sites is comparable to the logic in [*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020)]."); *Gilligan*, 2026 WL 32259, at *2 (intrusion upon seclusion claim alleged where "Plaintiffs allege that Experian engages in unauthorized widespread tracking and data collection, allowing it to compile detailed profiles of each Plaintiff's online web browsing activity tied to their email address and other personal identifiers"). This is precisely what Plaintiffs allege here—that Defendant unlawfully tracks, collects, and deanonymizes Plaintiffs' web browsing activity and identification such that Defendant can create "comprehensive user profiles" by matching individuals' identities with the data collected about them. FAC ¶ 43; *see also id.* ¶¶ 29, 50; *id.* ¶ 177 (Defendant tracks "the future web activity" of individuals and adds it to profiles).

Thus—and contrary to Defendant's argument that "consumers do not have a reasonable expectation of privacy in the kind of web-browsing information allegedly collected" (MTD at 23)—"it does not matter whether [Plaintiffs] had a reasonable expectation of privacy in the information collected because the privacy violation … encompasses how that collection allegedly allowed [Defendant] to: (1) build a profile reflecting [Plaintiffs'] personal information; and (2) interfere with [Plaintiffs'] ability to remain anonymous." *Deivaprakash*, 798 F. Supp. 3d at 1106-07; *Xu v. Reuters News & Media, Inc.*, 2025 WL 3035016, at *3 (Super. Ct. Santa Clara Cnty. Oct. 24, 2025) (same); *Riganian*, 791 F. Supp. 3d at 1087 ("[T]he Court here cannot conclude at the pleading stage that Plaintiffs had no reasonable expectation of privacy in the information that LiveRamp compiled across hundreds to thousands of disparate online and offline sources and then sold to third parties without their knowledge or consent.").

Further, the Supreme Court recently held that "police officers invade a cell-phone user's reasonable expectation of privacy when they access his Location History," which includes cellphone information based in part on "IP address information." *Chatrie v. United States*, 146 S. Ct. 2193, 2215 (2026). Plaintiffs allege Defendant collected such information here. *See*, *e.g.*, FAC ¶¶ 92, 106, 160, 412, 443.

Defendant's argument that the CCPA belies any reasonable expectation of privacy is unsupported. MTD at 23. As one court held in rejecting that same argument (again, brought by this same defense counsel):

> [b]y Defendant's logic, no claims like Plaintiffs' could go forward under California common law or the California Constitution in the wake of the CCPA and the Delete Act. Of course, that is not the case, as plaintiffs have a reasonable expectation of privacy where data is collected without their consent. The Court will not fabricate out of whole cloth a rule that because another statute creates an opt-out regime for data collection, a user could not plausibly have a reasonable expectation of privacy in that data.

*Lewis*, 2025 WL 3687546, at *8 (cleaned up). In any event, Defendant's skewed interpretation of the CCPA—that consumers somehow have no privacy rights because they can opt out of data collection they have no idea is occurring—has been rejected by this Court and others. *See*, *e.g.*, *Mirmalek*, 2024 WL 5102709, at *5; *Gilligan*, 2026 WL 32259, at *3; *Deivaprakash*, 798 F. Supp. 3d at 1106. Defendant's "pseudonymization" argument (MTD at 24) is unpersuasive, as Plaintiffs allege the data collection is not anonymous because Defendant de-anonymize users by synchronizing its Trackers with other identifiers and third parties. *See*, *e.g.*, FAC ¶¶ 14, 35, 48-49, 51; *see also Riganian*, 791 F. Supp. 3d at 1087 ("Plaintiffs allege that the Attribute Enrichment feature allows any of LiveRamp's customers to seek any 'segment' information associated with an individual … effectively rendering any anonymity functionally meaningless."); *Krzyzek*, 817 F. Supp. 3d at 864 (citing allegations like those here that "OpenX's technology [has the] capacity to deanonymize data" and that "plaintiffs claim that OpenX products do identify and deanonymize users"); *Semien*, 2026 WL 216333, at *5 (same).

Defendant next argues Plaintiffs' claim fail because "Microsoft's conduct, and that of hundreds of websites, cannot be highly offensive because it is mundane and ubiquitous." MTD at 24. "Under California law, courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is." *Riganian*, 791 F. Supp. 3d at 1088 (cleaned up). But even were this Court to wade into these factual waters, courts have found "the alleged aggregation, synthesis, and sale of comprehensive … data of individuals without their knowledge," like that alleged here, highly offensive. *See id.*; *see also*, *e.g.*, *Manier*, 2026 WL 1295546, at *6 ("A

reasonable factfinder could determine the alleged unauthorized collection of personally identifiable information and use of that information [to] create detailed profiles of individuals through its cookie syncing across multiple unrelated websites was an unacceptable intrusion in violation of public policy.") (cleaned up); *Gilligan*, 2026 WL 32259, at *2; *Krzyzek*, 817 F. Supp. 3d at 864; *Selby*, 2025 WL 2950164, at *3. Defendant's conduct is hardly "mundane" and goes "well beyond [] routine commercial behavior." *Riganian*, 791 F. Supp. 3d at 1088.

## IV. TO THE EXTENT THE COURT GRANTS THE MOTION (AND IT SHOULD NOT), PLAINTIFFS SHOULD BE PERMITTED LEAVE TO AMEND

Should the Court grant Defendant's Motion (which it should not), Plaintiffs respectfully request leave to amend. The Ninth Circuit has consistently granted plaintiffs leave to amend regardless of multiple previously amended pleadings. *See Roney v. Miller*, 705 F. App'x 670, 671 (9th Cir. 2017) (holding lower court erred in denying leave to amend after dismissing first amended complaint); *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1183 (9th Cir. 2016) (reversing denial of leave to amend even though the plaintiff had previously amended his pleading three times). This is especially true where, as here, the Court has not yet ruled on the merits of Defendant's arguments or Plaintiffs' allegations.

Furthermore, the Ninth Circuit has emphasized that "[u]nder futility analysis, dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment." *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (cleaned up); *see also Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (noting that a court should permit amendment "unless it determines that the pleading could not possibly be cured by the allegation of other facts"). Here, it is far from certain that Plaintiffs' claim is futile. As noted throughout this brief, numerous courts have sustained claims similar to those here, and even without allegations related to data brokers and real-time bidding. Thus, should the Court grant Defendant's Motion (and it should not), Plaintiffs respectfully request leave to amend to cure defects in the allegations.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion. If the Court grants the Motion in any respect, Plaintiffs respectfully request leave to amend.

Dated: August 18, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Philip L. Fraietta*
Philip L. Fraietta

Philip L. Fraietta (State Bar No. 354768)
50 Main St., Ste. 475
White Plains, NY 10606
Telephone: (914) 874-0710
Facsimile: (914) 206-3656
E-mail: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Kaili C. Lynn (State Bar No. 334933)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: klynn@bursor.com
jwilner@bursor.com

**BURSOR & FISHER, P.A.**
Max S. Roberts (State Bar No. 363482)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10069
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: mroberts@bursor.com

*Attorneys for Plaintiffs*