James G. Snell, SBN 173070
**ASHURST PERKINS COIE US LLP**
3150 Porter Drive
Palo Alto, CA 94304-1212
Telephone: 650.838.4300
Facsimile: 650.838.4350
Email: jim.snell@ashurstperkins.com

*Attorneys for Defendant*
*MICROSOFT CORPORATION*

[*additional counsel listed in signature block*]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| LANA NIEVES, STACY PENNING, SUNGGIL HONG, LAURA BONETTI, and JONATHAN FINESTONE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>MICROSOFT CORPORATION,<br><br>Defendant. | Case No. 3:25-cv-10557-CRB<br><br>[Removed from San Francisco County Superior Court, Case No. CGC2569612]<br><br>**REPLY IN SUPPORT OF DEFENDANT MICROSOFT CORPORATION'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Judge: Hon. Charles R. Breyer<br><br>DATE: October 30, 2026<br>TIME: 10:00 a.m.<br>CTRM: 6, 17th Floor<br><br>Complaint Filed: September 25, 2025<br>Action Removed: December 9, 2025 |

## TABLE OF CONTENTS

I. SUMMARY OF ARGUMENT .......... 1
II. ARGUMENT .......... 2
A. Plaintiffs Fail to Allege That Microsoft Acted Intentionally or Willfully. .......... 2
B. Plaintiffs Fail to Allege Unlawful Wiretapping under ECPA or CIPA. .......... 5
1. The FAC Lacks Allegations that Microsoft Intercepted the Contents of any Communication. .......... 5
2. Plaintiffs Fail to Allege that Any Interception Occurred "In Transit." .......... 7
3. Plaintiffs' ECPA Claim Fails Because the Website Operators Consented to the Use of Xandr and UET .......... 8
4. Plaintiffs Fail to Allege Aiding and Abetting Liability under CIPA. .......... 9
C. Plaintiffs Fail to State a Claim for Eavesdropping under Section 632 of CIPA .......... 10
D. Plaintiffs Fail to Allege a Claim under the Pen Register Act. .......... 11
E. The Rule of Lenity Requires Interpreting ECPA and CIPA Narrowly. .......... 12
F. Plaintiffs Fail to Plead Intrusion upon Seclusion. .......... 13
1. Plaintiffs Do Not Plead a Reasonable Expectation of Privacy. .......... 13
2. Plaintiffs Do Not Allege Highly Offensive Conduct. .......... 14
III. CONCLUSION .......... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..... 2, 3

*Boulton v. Community.com, Inc.*,
No. 23-3145, 2025 WL 314813 (9th Cir. Jan. 28, 2025) ..... 11

*Briskin v. Shopify Inc.*,
No. 21-cv-06269-PJH, 2026 WL 161441 (N.D. Cal. Jan. 21, 2026) ..... 2, 4

*Brown v. Google, LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ..... 14

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) ..... 5

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ..... 2, 3, 4

*Doe v. Eating Recovery Ctr.*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) ..... 8, 13

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) ..... 3

*Filtrol Corp. v. Kelleher*,
467 F.2d 242 (9th Cir. 1973) ..... 12

*Fregosa v. Mashable, Inc.*,
No. 25-cv-01094-CRB, 2025 WL 2886399 (N.D. Cal. Oct. 9, 2025) ..... 11

*Freifeld v. Epsilon Data Mgmt., LLC*,
No. 25-CV-9984, 2026 WL 1759012 (N.D. Ill. June 15, 2026) ..... 7

*Gilligan v. Experian Data Corp.*,
No. 25-cv-02873-RFL, 2026 WL 32259 (N.D. Cal. Jan. 6, 2026) ..... 1, 13

*Gladstone v. Amazon Web Servs., Inc.*,
739 F. Supp. 3d 846 (W.D. Wash. 2024) ..... 5

*Gonzalez Merical v. The Joint Corp.*,
No. 1:26-cv-00974-KES-SAB, 2026 WL 2225531 (E.D. Cal. Aug. 3, 2026) ..... 13

*Gutierrez v. Converse Inc.*,
No. 24-4797, 2025 WL 1895315 (9th Cir. July 9, 2025)........ 13

*In re Apple Data Priv. Litig.*,
824 F. Supp. 3d 888 (N.D. Cal. 2026)........ 5, 6

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)........ 14

*In re Meta Android Priv. Litig.*,
833 F. Supp. 3d 1010 (N.D. Cal. 2026)........ 5

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014)........ 5, 6

*Jones v. Skullcandy, Inc.*,
No. 25-CV-1759 JLS (BLM), 2026 WL 699819 (S.D. Cal. Mar. 12, 2026)........ 11

*Kearney v. Salomon Smith Barney, Inc.*,
39 Cal. 4th 95 (2006)........ 11

*Krzyzek v. OpenX Techs., Inc.*,
817 F. Supp. 3d 857 (N.D. Cal. 2026)........ 7, 10, 13

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025)........ 9

*Leadsinger, Inc. v. BMG Music Pub.*,
512 F.3d 522 (9th Cir. 2008)........ 15

*Lynch v. Express Scripts Holding Co.*,
No. 23-cv-01170-AMO, 2026 WL 1749550 (N.D. Cal. June 17, 2026)........ 5

*Manier v. Triple Lift Inc.*,
No. 5:25-cv-03223-SSS-DTBX, 2026 WL 1295546 (C.D. Cal. Apr. 15, 2026)........ 2, 3

*Pete v. Facebook Data Breach*,
No. 25-CV-09081-JST, 2026 WL 32635 (N.D. Cal. Jan. 6, 2026)........ 14

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024)........ 5

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025)........ 1, 13, 14

*Rodriguez v. Accident Fund Holdings, Inc.*,
No. 2:25-cv-03920-SK, 2026 WL 2365062 (C.D. Cal. Aug. 13, 2026)........ 1, 15

*Roe v. Airbnb, Inc.*,
No. 3:25-cv-1699-RSH-BLM, 2025 WL 3280888 (S.D. Cal. Nov. 25, 2025) .......................... 3

*Rusow v. Skinspirit Essential LLC*,
No. 24-cv-09317-CRB, 2025 WL 4657637 (N.D. Cal. Oct. 15, 2025) .......................... 8, 9, 13

*Selby v. Sovrn Holdings, Inc.*,
No. 25-cv-03139-RFL, 2025 WL 2950164 (N.D. Cal. Oct. 17, 2025) ........................ 1, 5, 7, 13

*Semien v. PubMatic Inc.*,
No. 25-CV-03164-SI, 2026 WL 216333 (N.D. Cal. Jan. 27, 2026) ...................................... 5, 9

*Shah v. Cap. One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) ........................................................................ 15

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) ........................................................................ 9, 11

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) ........................................................................ 10

*Torres v. Prudential Fin., Inc.*,
No. 22-cv-07465 (CRB), 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) .................................. 8

*Tsering v. Meta Platforms, Inc.*,
No. 25-cv-01611-RFL, 2026 WL 89320 (N.D. Cal. Jan. 12, 2026) ...................................... 2, 4

*Walsh v. Dollar Tree Stores, Inc.*,
No. 25-cv-01601-SVK, 2025 WL 2939229 (N.D. Cal. Oct. 16, 2025) .................................... 6

*Wiley v. Universal Music Invs., Inc.*,
No. 25-cv-03095-PCP, 2026 WL 2690163 (N.D. Cal. Sept. 14, 2026) .................................... 6

*Wood v. McEwen*,
644 F.2d 797 (9th Cir. 1981) ........................................................................ 12

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023) ........................................................................ 11

**Statutes**

Cal. Penal Code § 632(a) ........................................................................ 5

Cal. Penal Code § 632(c) ........................................................................ 11

Cal. Penal Code § 637.2(d) ........................................................................ 11

**Other Authorities**

S.B. 690, 2025–2026 Leg., Reg. Sess. (Cal. 2026)........................................................... 11

## I. SUMMARY OF ARGUMENT

Plaintiffs' FAC both lacks allegations critical to their claims and includes allegations that undermine them. For example, despite asserting wiretapping claims, Plaintiffs do not identify any communications content input on the websites they visited. They do not meaningfully contest this, instead relying on generic allegations in the FAC about how websites work generally rather than plausible allegations about the Plaintiffs' own experiences. In the same way, despite asserting a claim under CIPA section 632, Plaintiffs do not allege that Microsoft collected any "confidential" information about them; their Opposition once again relies on generic allegations rather than Plaintiffs' own experiences. To make matters worse, Plaintiffs fail to meaningfully dispute that every privacy policy on every website identified in the FAC disclosed the exact conduct underlying their claims. Plaintiffs' Opposition does not meaningfully address this at all and instead strings together a series of plaintiff-friendly rulings in hopes of obscuring the flaws in their own FAC. *See, e.g.*, Opp. at 1–2. But the fact that some courts have sided with plaintiffs in distinguishable cases does not cure the fundamental flaws in this case. *See, e.g.*, *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1087 (N.D. Cal. 2025) (involving profiles allegedly searchable by "name, physical address, or email address"); *Selby v. Sovrn Holdings, Inc.*, No. 25-cv-03139-RFL, 2025 WL 2950164, at *3 (N.D. Cal. Oct. 17, 2025) (addressing allegations related to actual "search queries"); *Gilligan v. Experian Data Corp.*, No. 25-cv-02873-RFL, 2026 WL 32259, at *3 (N.D. Cal. Jan. 6, 2026) (same).

In addition to being distinguishable, many of the cases Plaintiffs cite in their Opposition did not address Microsoft's core arguments, including whether the defendants had acted intentionally or willfully, as required to state privacy, CIPA, and ECPA claims. And none of the District Court cases that Plaintiffs suggest this Court should blindly follow are binding law, and courts within the Ninth Circuit continue to side with Microsoft's arguments. *See, e.g.*, *Rodriguez v. Accident Fund Holdings, Inc.*, No. 2:25-cv-03920-SK, 2026 WL 2365062, at *5, *8–9 (C.D. Cal. Aug. 13, 2026) (dismissing invasion of privacy claim based on web tracking and noting that

there is no "per se prohibition against tracking and collection" on the internet, particularly in light of the CCPA). Further weakening Plaintiffs' case, the California legislature unanimously voted to amend CIPA's pen register provisions to foreclose Plaintiffs' pen register claim here.

For all the reasons in Microsoft's Motion, the Court should dismiss Plaintiffs' claims with prejudice.

## II. ARGUMENT

### A. Plaintiffs Fail to Allege That Microsoft Acted Intentionally or Willfully.

Plaintiffs do not dispute that they must allege intentional or willful conduct to support their privacy, CIPA, and ECPA claims. *See* Opp. at 2–3. Neither Plaintiffs' conclusory allegations that Microsoft acted "intentionally" nor their allegations that Microsoft's alleged conduct is supposedly "widespread" are sufficient, even under the caselaw they cite.

*First*, Plaintiffs argue intent is too fact-based to resolve at this stage. *Id.* at 2. Citing Rule 9(b), they maintain that they need to plead intent only "generally." *See* Opp. at 2. But as the Supreme Court observed, Rule 9(b) "does not give [plaintiffs] license to evade the . . . strictures of Rule 8." *See Ashcroft v. Iqbal*, 556 U.S. 662, 686–87 (2009). Put differently, what Plaintiffs must do, but have not done, is provide "factual allegation[s] sufficient to plausibly suggest" Microsoft's "state of mind." *Iqbal*, 556 U.S. at 683. For this reason, multiple courts, including in this District by Judges Hamilton, Lin, and Chhabria, have had no trouble dismissing at the pleading stage similar claims lacking plausible allegations of intent. *See, e.g.*, *Briskin v. Shopify Inc.*, No. 21-cv-06269-PJH, 2026 WL 161441, at *5 (N.D. Cal. Jan. 21, 2026); *Tsering v. Meta Platforms, Inc.*, No. 25-cv-01611-RFL, 2026 WL 89320, at *7 (N.D. Cal. Jan. 12, 2026); *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 840 (N.D. Cal. 2024); *Manier v. Triple Lift Inc.*, No. 5:25-cv-03223-SSS-DTBX, 2026 WL 1295546, at *3 (C.D. Cal. Apr. 15, 2026). Plaintiffs' request that any "doubts" about intent be resolved "on an evidentiary record" thus only underscores their failure to plead intent facts sufficient to demonstrate intent now. Opp. at 2.

*Second*, Plaintiffs' efforts to characterize the FAC as alleging intent plainly fail. For example, they observe that the FAC uses the word "intentionally" and includes allegations that Microsoft engaged in "widespread data collection and interception." *See* Opp. at 2. But, of course, "mere conclusory statements[] do not suffice" to meet Plaintiffs' Rule 12 obligations. *See Iqbal*, 556 U.S. at 678. Nor does the allegation that Microsoft's conduct is supposedly "widespread" reflect intentionality as Plaintiffs contend. *See* Opp. at 2–3 (quoting FAC ¶¶ 382, 385). There is no legal, or even logical, principle that providing technology to many online companies amounts to intentional efforts to violate privacy or intercept communications without consent. Even if this were a logical premise, even allegations that are "consistent with" the requisite "intent" are insufficient when they do "not tend to exclude a plausible and innocuous alternative explanation." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 998 (9th Cir. 2014). Here, the innocuous, alternative explanation—that Microsoft intended its customers to use its technology lawfully, consistent with clear privacy disclosures (Mot. at 9)—is far more plausible than Plaintiffs', which would require allegations of fraud or deceit wholly absent from the FAC. Finally, Plaintiffs' assertion that they have pleaded intent because they alleged Microsoft "knew how its technology worked and what data it transmitted" (Opp. at 3) does not meet the standard. This is because the concept that "intent only requires awareness that information is likely being transmitted" is "not the right way to think about intent" when the "operative question" is "whether the defendant acted *consciously* and *deliberately* with the goal of intercepting wire communications." *Doe I*, 741 F. Supp. 3d at 840 (emphasis added); *see also Manier*, 2026 WL 1295546, at *3. Plaintiffs have not met and cannot meet that standard.

*Third*, in response to Microsoft citing the website privacy policies that disclose the conduct underlying this case,[1] Plaintiffs argue that Microsoft "does not demonstrate the policies

---

[1] Plaintiffs do not dispute, and therefore concede, that the privacy policies are relevant and that the Court may consider them. *See generally* Opp.; *see also, e.g.*, *Roe v. Airbnb, Inc.*, No. 3:25-cv-1699-RSH-BLM, 2025 WL 3280888, at *2 (S.D. Cal. Nov. 25, 2025) (granting defendant's request for judicial notice of a website privacy policy when plaintiff did not oppose).

it cites disclosed its eavesdropping," and that the websites may not have "adequately informed users of the existence of those policies." Opp. at 3 (citations omitted). But, contrary to Plaintiffs' arguments, the privacy policies on their face clearly disclose the alleged conduct. For example, the Scientific American privacy policy discloses that "[t]o present online advertising we use the services of, inter alia . . . Microsoft Advertising" and that "[t]he cookies and web beacons [of third party services like Microsoft Advertising] enable our service providers to collect information about you and your behavior, e.g., IP address, browser information, information on user activities, including video content that you viewed, and click data, and to recognize visitors to our website under a pseudonym and only display products that are likely to be of interest to our visitors." Dkt. 34-5, Ex. 22 at 6. Bon Appetit, as another example, discloses:

> We and our third-party business partners may collect and share Personal Information about your online and offline activities over time and across unaffiliated websites and mobile applications to predict your preferences and interests, and, in conjunction with third parties, may use your Personal Information for cross-context behavioral advertising and to serve advertising believed to be of interest to you ('Targeted Advertising').

*Id.*, Ex. 3 at 13. Simply put, Plaintiffs cannot credibly dispute that each website discloses the use of third-party tools to collect information about how visitors interact with the websites. *See* Dkt. 34-3 through Dkt. 34-5, Exs. 1–29. As multiple courts have held on similar records, Plaintiffs therefore have not alleged the intent necessary to sustain their privacy, CIPA, and ECPA claims. *See Tsering*, 2026 WL 89320, at *7 (dismissing invasion of privacy claim where plaintiffs failed "to plausibly allege that Meta knew it was collecting . . . data without . . . consent" where the relevant privacy policies disclosed the alleged data collection); *Briskin*, 2026 WL 161441, at *5 (same); *Doe I*, 741 F. Supp. 3d at 840 (similar); Mot. at 9–10 (collecting cases). Plaintiffs' Opposition contains no response to or basis for distinguishing any of these authorities.

Finally, Plaintiffs' authorities are easily distinguishable, as they either did not consider

the intent question at all, *see Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1000 (N.D. Cal. 2024); *In re Meta Android Priv. Litig.*, 833 F. Supp. 3d 1010, 1025–27 (N.D. Cal. 2026); did not consider circumstances where the relevant conduct was clearly and publicly disclosed, *see Gladstone v. Amazon Web Servs., Inc.*, 739 F. Supp. 3d 846, 860 (W.D. Wash. 2024); or involved categorically different allegations, *see Lynch v. Express Scripts Holding Co.*, No. 23-cv-01170-AMO, 2026 WL 1749550, at *8 (N.D. Cal. June 17, 2026) (addressing claims that online pharmacy knew it was collecting "personal health information" in violation of HIPAA).

Accordingly, like many other judges in this District have recently done, the Court should dismiss Plaintiffs' intrusion, wiretapping, and eavesdropping claims (Counts I, II, IV, and V) for failure to allege that Microsoft acted intentionally or willfully.

### B. Plaintiffs Fail to Allege Unlawful Wiretapping under ECPA or CIPA.

#### 1. The FAC Lacks Allegations that Microsoft Intercepted the Contents of any Communication.

Plaintiffs' wiretapping and eavesdropping[2] claims (Counts II, IV, and V) all fail for the additional reason that the FAC does not allege that Microsoft collected the contents of any communication. Mot. at 10–11. Plaintiffs' Opposition confirms this. Seizing on the Ninth Circuit *dicta* described in Microsoft's Motion (Mot. at 12), every single case they rely upon concludes, at most, only that "URLs which disclose ***search terms***" may in some circumstances qualify as communications content. *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024) (emphasis added); *see also Selby*, 2025 WL 2950164, at *3 (referring to URLs containing "search queries"); *Semien v. PubMatic Inc.*, No. 25-CV-03164-SI, 2026 WL 216333, at *8–9 (N.D. Cal. Jan. 27, 2026) (similar); *see also In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014) (holding that URLs are not "content" even if they disclose specific webpages viewed).

---

[2] Section 632 prohibits the eavesdropping on "confidential communications." Cal. Penal Code § 632(a). Within the context of Section 632, "'communication' refers to the substance or content of an exchange of ideas, not the 'non-content-based conduct coincident to the communication.'" *See, e.g.*, *In re Apple Data Priv. Litig.*, 824 F. Supp. 3d 888, 900 (N.D. Cal. 2026).

Thus, under Plaintiffs' theory, the only type of data even potentially relevant to the wiretapping claims would be URLs containing Plaintiffs' search terms. *See* Mot. at 12–14. *But not one of the named Plaintiffs alleges that they entered search terms on any website in the FAC (or any other website).* Rather, Plaintiffs generically claim in their Opposition that for "at least . . . some" (but apparently not all) "websites," Microsoft collects the web pages visited and the "contents of their communications." Opp. at 4. The lone support Plaintiffs offer is one paragraph of the FAC addressing the purported operation of the Expedia website. *Id.* (citing FAC ¶ 71). Critically, however, *no named Plaintiff alleges that they visited the Expedia website. See* Mot. at 5 n.1.

In Opposition, Plaintiffs attempt to overcome this by pointing to FAC's repeated use of the word "search terms." *See* Opp. at 5 (citing FAC ¶¶ 244, 250, 256, 261, 268). But, here again, each of these paragraphs alleges only generalized facts about various websites, not allegations that any named Plaintiffs entered search terms on a specific website. *Cf.* FAC ¶¶ 288–365. Thus, not only have Plaintiffs failed to "provide exact search terms," Opp. at 5—a far from Herculean effort—they also have failed to allege they entered any search terms at all. Accordingly, even assuming Plaintiffs are correct that their search terms could qualify as communications content, their failure to allege that they conducted any searches whatsoever is dispositive. *See, e.g.*, *Walsh v. Dollar Tree Stores, Inc.*, No. 25-cv-01601-SVK, 2025 WL 2939229, at *16 (N.D. Cal. Oct. 16, 2025); *In re Apple Data Priv. Litig.*, 824 F. Supp. 3d at 900.

Plaintiffs' other arguments about the "contents" Microsoft allegedly intercepted are easily dispatched. Plaintiffs allege that both Microsoft and "Partner Trackers" receive detailed URLs. *See* Opp. at 4. But under binding Ninth Circuit law, a detailed URL reflecting the webpage viewed is not content, particularly where (as here) there is no allegation that the URL contained the user's search terms. *See In re Zynga*, 750 F.3d at 1108 (rejecting the argument that web addresses contained in referrer headers "revealed the contents of a communication, because they disclose information regarding a webpage a user previously viewed"); *see also Wiley v.*

*Universal Music Invs., Inc.*, No. 25-cv-03095-PCP, 2026 WL 2690163, at *4 (N.D. Cal. Sept. 14, 2026) (dismissing CIPA claim where defendant allegedly collected only "webpage addresses and associated browsing information, not any communication"). The Court should dismiss each of Plaintiffs' wiretapping and eavesdropping claims.

**2. Plaintiffs Fail to Allege that Any Interception Occurred "In Transit."**

Plaintiffs' wiretapping claims also fail because their conclusory allegations that Microsoft collected the contents of their communication while they were "in transit" is belied by their other allegations. *See* Mot. at 14–16. Plaintiffs argue that "after the Pixel technologies load . . . cookies onto a user's browser, the technologies then 'intercepts the detailed, full-string URL of the pages visited by each user, revealing search terms and properties selected by that user.'" Opp. at 5 (quoting FAC ¶ 244). But Plaintiffs do not dispute what Microsoft argued in its Motion: that neither Adnxs nor UET allegedly steps between the user's browser and the website server to intercept any supposed communications en route, but rather are pieces of code that exist at either end of the supposed communication. *See* Mot. at 14–15. The allegation that these technologies collect "URL of the pages visited by each user," Opp. at 5, says nothing about the *timing* of that supposed collection. Thus, even if Plaintiffs had allegedly input search terms on the relevant websites (which, again, they do not allege), Plaintiffs fail to allege that Microsoft collected those searches as the user was typing them. *Compare* Mot. at 14–15, *with* Opp. at 5.

This is fatal to Plaintiffs' wiretapping claims. The cases Plaintiffs cite in Opposition either do not address these distinctions or, respectfully, wrongly rely on non-content information as the information intercepted "in transit." Opp. at 5 (citing *Selby*, 2025 WL 2950164, at *3 (not addressing the argument); *Krzyzek v. OpenX Techs., Inc.*, 817 F. Supp. 3d 857, 867–68 (N.D. Cal. 2026) (permitting a claim despite plaintiff's failure to allege the interception of search terms); *Freifeld v. Epsilon Data Mgmt., LLC*, No. 25-CV-9984, 2026 WL 1759012, at *4 (N.D.

Ill. June 15, 2026) (improperly concluding that "web browsing activity, purchases, and a list of content streamed" could be "content").

Moreover, the standard under CIPA is even higher than it is for ECPA, requiring not only in transit *interception* (which is not satisfied here) but also in transit "attempt to understand or interpret the substantive meaning of a communication." *Torres v. Prudential Fin., Inc.*, No. 22-cv-07465 (CRB), 2025 WL 1135088, at *5–6 (N.D. Cal. Apr. 17, 2025) (Breyer, J.). Plaintiffs do not dispute this but argue that Microsoft's business model somehow requires Microsoft to learn the contents of these search terms as they are in transit. *See* Opp. at 5–6; *see also* FAC ¶ 398. This is far from self-evident and is not alleged in the FAC. More importantly, Plaintiffs' Opposition contains no response to Microsoft's authorities, each of which support the notion that, as a matter of logic, search terms contained in URLs cannot be understood or interpreted while "in transit" given that URLs are created after an individual inputs them. *Doe v. Eating Recovery Ctr.*, 806 F. Supp. 3d 1109, 1117–18 (N.D. Cal. 2025); *Torres*, 2025 WL 1135088, at *6–7. Counts II and V should be dismissed on this basis too.

**3. Plaintiffs' ECPA Claim Fails Because the Website Operators Consented to the Use of Xandr and UET.**

Plaintiffs do not dispute that the website operators consented to Microsoft's alleged conduct, or that one party's consent is ordinarily a bar to an ECPA claim. *See* Opp. at 6–7. Instead, Plaintiffs claim that this consent is not a defense in this circumstance because the "crime/tort exception" applies. But the Court has already rejected this argument, and Plaintiffs offer no good reason why that prior decision should not apply.

Plaintiffs' position, like some of the District Court opinions they cite, is that collecting data to build "profiles" is itself an invasion of privacy, and thus sufficient tortious motivation to undermine a website's consent to installing the Microsoft pixel. *Id.* But as Microsoft explained in its Motion, and this Court has already held, this type of "circular" logic is exactly the logic rejected by the Ninth Circuit. *See* Mot. at 16–17; *Rusow v. Skinspirit Essential LLC*, No. 24-cv-

09317-CRB, 2025 WL 4657637, at *15 (N.D. Cal. Oct. 15, 2025). Plaintiffs' other argument, that courts have declined to "insulat[e] financial motives from the crime-tort exception," Opp. at 7 (citation omitted), is also flatly inconsistent with this Court's prior decision. *See Rusow*, 2025 WL 4657637, at *15 (allegation that a defendant "monetize[s] . . . data for targeted advertising" is insufficient to show that the defendant acted "for the express purpose of committing" a tort); *see also, e.g.*, *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1057–58 (N.D. Cal. 2025).

Because Plaintiffs have not identified an independent crime or tort separate from the supposed interception itself, the crime-tort exception cannot save Plaintiffs' ECPA claim.[3]

**4. Plaintiffs Fail to Allege Aiding and Abetting Liability under CIPA.**

Plaintiffs' aiding and abetting theory is similarly flawed. First, as already explained, they have not alleged intent or the elements of interception. *See supra* Sections II.A–B; *see also Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 942–43 (N.D. Cal. 2024) (holding that "aiding" claims under § 631(a) require allegations of "some level of knowledge and intent").

Second, even if they had, the FAC does not plausibly allege that Microsoft aided third parties in any interception. The paragraphs of the FAC that Plaintiffs cite to in their Opposition describe "cookie syncing"—Microsoft allegedly sharing information to help partners "de-anonymiz[e] users and better facilitate the sale of their information"—not aiding an interception. *See* Opp. at 7–8 (citing FAC ¶ 140); *see also* FAC ¶ 140 (alleging that Microsoft "assign[s] a Microsoft ID to the user's activity"). Plaintiffs do not explain how allegations of cookie syncing, which the FAC alleges takes place separately and independently from the acquisition of any content of any communication, can form the basis for an aiding liability under CIPA. Plaintiffs' authority fails to resolve this issue. *Semien*, 2026 WL 216333, at *9 (concluding, without

---

[3] Because Plaintiffs fail to plead an actionable interception under either CIPA or ECPA, their allegations regarding improper "use" and "disclosure" of illegally acquired communications must be rejected.

analysis, that providing identity resolution was sufficient to state an aiding claim); *Krzyzek*, 817 F. Supp. 3d at 866 n.7 (similar).

### C. Plaintiffs Fail to State a Claim for Eavesdropping under Section 632 of CIPA.

Because Plaintiffs fail to allege that Microsoft recorded a "confidential communication," they cannot sustain their Section 632 claim. Mot. at 18. In Opposition, Plaintiffs point to generalized allegations in the FAC that Microsoft collected information about "financial status information, health information, political leanings and interests, and the media they consume." Opp. at 9 (citing FAC ¶ 423). But Plaintiffs' own allegations undermine these assertions. None of the named Plaintiffs have alleged that they disclosed ***any of this information*** while visiting any website. *See* FAC ¶ 294 (alleging only that "Penning visited over 100 websites" including "Healthline.com"), *id.* ¶ 303 (alleging that "Hong visited over 100 websites," including "Webmd.com" and "Cvs.com"), *id.* ¶ 350 (alleging that "Uskup visited over 200 websites" including "Healthline.com," "Westernunion.com," and "Webmd.com"). The mere fact that someone visits a website, even one that is health or finance adjacent, "do[es] not give rise to the requisite expectation" of confidentiality, much less establish that any Plaintiff communicated something they reasonably expected to be "confidential." *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 747 (N.D. Cal. 2023) (collecting cases).

In the alternative, Plaintiffs argue that collecting browsing data to build "profiles" generally violates Section 632(a), but this logic also falls apart upon close examination. CIPA requires the identification of a "confidential communication," which is a "communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties[.]" Cal. Penal Code § 632(c). Having failed to plead any specific communication that was confidential, Plaintiffs cannot rely on the alleged aggregation of multiple *non*-confidential communications to fabricate a Section 632 claim.

Finally, each of Plaintiffs' authorities is easily distinguishable on the facts as they each involve allegations of confidential communications not present here. *See Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 973 (N.D. Cal. 2023) (involving customer support chats about sensitive health information); *Smith*, 754 F. Supp. 3d at 943, 945 (involving allegations that plaintiff shared sensitive financial information like a credit card number); *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 118 n.10 (2006) (involving telephone conversations related to sensitive financial information); *Jones v. Skullcandy, Inc.*, No. 25-CV-1759 JLS (BLM), 2026 WL 699819, at *4 (S.D. Cal. Mar. 12, 2026) (involving the collection of "personally identifiable" information including "names, email addresses, and Facebook/Google account identifiers," among other things). Tellingly, Plaintiffs failed to address Microsoft's on-point authority. *See Boulton v. Community.com, Inc.*, No. 23-3145, 2025 WL 314813, at *2 (9th Cir. Jan. 28, 2025) (affirming the dismissal of a Section 632 claim because "text messages are by nature recorded and so cannot be 'confidential communications'" under Section 632(c)).

**D. Plaintiffs Fail to Allege a Claim under the Pen Register Act.**

Since Plaintiffs filed their Opposition, the California legislature unanimously voted to amend CIPA to eliminate the private right of action for pen register claims based on "conduct occurring on an internet website, online application, or mobile application." S.B. 690, 2025–2026 Leg., Reg. Sess. (Cal. 2026). The law expressly applies retroactively to eliminate any pending claim filed after January 1, 2025,[4] which would include this case filed in California state court on September 25, 2025. *Id.* (as amended Cal. Penal Code § 637.2(d)); *see also* Dkt. 1-1.

Plaintiffs may argue that because SB 690 does not go into effect until January 1, 2027, the Court need not yet dismiss Plaintiffs' pen register claims. But SB 690 clearly applies, it will go into effect during the pendency of this case and engaging in discovery and even further

[4] The version of S.B. 690 passed by the California Legislature is distinct from the prior version of the bill this Court considered in *Fregosa v. Mashable, Inc.*, No. 25-cv-01094-CRB, 2025 WL 2886399, at *8 (N.D. Cal. Oct. 9, 2025), including in that it applies retroactively.

briefing their pen register claims would waste the time and resources of the Court and the parties. If the Court is unwilling to outright dismiss Plaintiffs' pen register claims, it should stay all argument and discovery on the claims in the meantime. *See, e.g.*, *Filtrol Corp. v. Kelleher*, 467 F.2d 242, 244 (9th Cir. 1973) (holding that a district court has the "inherent power to control the disposition of the cases on its docket in a manner which will promote economy of time and effort for itself, for counsel and for litigants"); *Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981) ("A district court may . . . stay discovery when it is convinced that the plaintiff will be unable to state a claim for relief.").[5]

**E. The Rule of Lenity Requires Interpreting ECPA and CIPA Narrowly.**

Plaintiffs do not dispute that the rule of lenity applies to ECPA and CIPA as criminal statutes. *See* Opp. at 12–13. Instead, they claim that these statutes are not ambiguous enough to trigger the rule, but their arguments are unpersuasive.

To be clear, Microsoft is not here disputing, for example, that "ECPA applies to electronic communications transmitted via the internet," *see* Opp. at 12, and this is not the issue upon which Microsoft contends the rule of lenity should apply. This issue is whether, as here, Plaintiffs have not alleged that they communicated with any person—just that they have browsed online sites and stores—they can nonetheless avail themselves of *communications* privacy statutes first targeted to technologies like the telephone. This is an issue upon which courts cannot agree. *See, e.g.*, *Eating*

[5] If the Court declines to stay the claim until the effective date of SB 690, then it should nevertheless dismiss the claim for the reasons set forth in the California Court of Appeal's recent tentative ruling in *Variety Media, LLC v. Superior Court*, No. B350578 (Cal. Ct. App. Aug. 21, 2026). There the court proposed directing the trial court to sustain the demurrer of an analogous pen-register claim based on the collection of IP addresses because such information did not concern the *destination* of the communication. *Id.* at 2. Plaintiffs here likewise base their claim on information pertaining to the *source* of the alleged communication, namely Plaintiffs' own IP addresses, device information, geolocation, and "other persistent identifiers." FAC ¶ 412. As the court's tentative explained in *Variety Media*, a user's IP address cannot support a pen register claim because it "identifies the source of the communication—not its destination." *Variety Media*, tentative ruling at 2.

*Recovery Ctr.*, 806 F. Supp. 3d at 1111 ("CIPA is a total mess," and courts have struggled to "apply CIPA's already-obtuse language to new technologies"); *see also Gutierrez v. Converse Inc.*, No. 24-4797, 2025 WL 1895315, at *3 (9th Cir. July 9, 2025) (Bybee, J., concurring) (noting CIPA's text, legislative history, and ambiguity compared to the CCPA and concluding that "[i]f the California legislature wanted to apply § 631(a) to the internet, it could do so" through amendment). The conflicting rulings on nearly every element of Plaintiffs' claims confirm that these criminal statutes are grievously ambiguous as applied to the allegations here.[6]

**F. Plaintiffs Fail to Plead Intrusion upon Seclusion.**

**1. Plaintiffs Do Not Plead a Reasonable Expectation of Privacy.**

As this Court has previously observed, there is "generally no reasonable expectation of privacy over information communicated on a website." *Rusow*, 2025 WL 4657637, at *13; *see also* Mot. at 22-23 (collecting cases). Plaintiffs cite to various cases for the proposition that "widespread tracking" and the creation of "detailed profiles" automatically establish a reasonable expectation of privacy. *See* Opp. at 14 (citations omitted). But many of Plaintiffs' authorities are wholly irrelevant, as they involved connecting browsing data to real-world identifiers—allegations that are absent here. *See, e.g.*, *Gilligan v. Experian Data Corp.*, No. 25-cv-02873-RFL, 2026 WL 32259, at *2 (N.D. Cal. Jan. 6, 2026) (involving "detailed profiles of each Plaintiff's online web browsing activity *tied to their email address and other personal identifiers*" (emphasis added)); *Krzyzek*, 817 F. Supp. 3d at 863–64 & nn.4, 6 (alleging collection of *hashed email addresses* associated with other data in profiles); *Riganian*, 791 F. Supp. 3d at 1087 (involving profiles allegedly searchable by "individual's name, physical address, or email address"); *Selby*, 2025 WL 2950164, at *3 (alleging profiles containing "highly sensitive browsing activity" tied to "email addresses and other personal identifiers"). While Plaintiffs

[6] Plaintiffs' argument that the Court previously rejected this argument is not dispositive. *See* Opp. at 12. Since that decision, the case law has become even more mixed and other courts have applied the rule of lenity in dismissing analogous claims. *See, e.g.*, *Gonzalez Merical v. The Joint Corp.*, No. 1:26-cv-00974-KES-SAB, 2026 WL 2225531, at *16 (E.D. Cal. Aug. 3, 2026).

generally claim that Microsoft "de-anonymize[s] users by synchronizing its Trackers with other identifiers and third parties," Opp. at 15, Plaintiffs' FAC does not allege that Microsoft collected *from them* the type of real-world identifiers discussed in the cases above that found a reasonable expectation of privacy.

Also absent from the FAC are allegations that Microsoft affirmatively represented it would maintain Plaintiffs' browsing data as private, distinguishing Plaintiffs' other primary authorities. *See, e.g.*, *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 602 (9th Cir. 2020) (Facebook "affirmatively stated that logged-out user data would not be collected," and then allegedly collected it anyway); *Brown v. Google, LLC*, 525 F. Supp. 3d 1049, 1077 (N.D. Cal. 2021) (representations of private browsing).

**2. Plaintiffs Do Not Allege Highly Offensive Conduct.**

Plaintiffs do not even address or dispute that Microsoft's "conduct cannot be highly offensive when it is clearly disclosed to Plaintiffs through the websites' privacy policies." Mot. at 25. They therefore concede the argument. *See, e.g.*, *Pete v. Facebook Data Breach*, No. 25-CV-09081-JST, 2026 WL 32635, at *2 (N.D. Cal. Jan. 6, 2026) (explaining that "opposition briefs" that "fail to respond to" an argument concede it).

Even if Plaintiffs had not conceded the argument, their Opposition fails to adequately contend that the FAC describes highly offensive conduct. Each of the cases they cite involved conduct different from that alleged here. For example, *Riganian* involved allegations that the defendant collected information to group plaintiffs in sensitive segments such as "union members" and "users of the LGBT dating app Grindr" and allegedly matched that information to identifiers like Social Security numbers and driver's license records. 791 F. Supp. 3d at 1087–88. Here, there are no similar allegations; Plaintiffs do not even allege what particular information Microsoft supposedly collected about them at all. *See, e.g.*, FAC ¶ 156 (providing an example of a *possible* segment of "High-End TV Buyers").

At best, the FAC describes conduct that is fully regulated by the CCPA.[7] And that the CCPA authorizes companies to engage in the collection of information to serve personalized ads does not mean that "consumers somehow have no privacy rights." Opp. at 15. It does mean, however, that there is no "per se prohibition against tracking and collection" of browsing data. *Rodriguez*, 2026 WL 2365062, at *5. As Judge Thompson recently observed, "data collection and disclosure to third parties that is routine commercial behavior is not a highly offensive intrusion of privacy." *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1046–47 (N.D. Cal. 2025) (citation omitted) (addressing disclosure of employment and bank account information). Plaintiffs' privacy claim (Count I) should be dismissed on this basis, as well.

## III. CONCLUSION

Because this is the third complaint Plaintiffs have filed pursuing their theories against Microsoft,[8] Plaintiffs should not be given a fourth, and the FAC should be dismissed with prejudice. *See Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008).

---

[7] Plaintiffs argue in a footnote that the CCPA requirement to *inform* consumers about collection somehow means that the CCPA requires *consent* before collection. Opp. at 3 n.1. To state the obvious, requiring notice is not the same as requiring consent.

[8] *See* FAC; Dkt. 1-1; *see also* Class Action Complaint, *Penning v. Microsoft Corp.*, No. 2:25-cv-00570-JLR (W.D. Wash. Apr. 1, 2025), Dkt. 1.

DATED: September 17, 2026

**ASHURST PERKINS COIE US LLP**

By: *<u>/s/ James G. Snell</u>*
James G. Snell (SBN 173070)
**ASHURST PERKINS COIE US LLP**
3150 Porter Drive
Palo Alto, California 94304-1212
Phone: (650) 838-4300
Email: jim.snell@ashurstperkins.com

Nicola Menaldo (pro hac vice)
Jordan C. Harris (pro hac vice)
**ASHURST PERKINS COIE US LLP**
1301 Second Avenue, Suite 4200
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000
Email:nicola.menaldo@ashurstperkins.com
Email: jordan.harris@ashurstperkins.com

Justin Potesta (SBN 314133)
**ASHURST PERKINS COIE US LLP**
405 Colorado Street, Suite 1700
Austin, TX 78701
Tel: (737) 256.6137
Email: justin.potesta@ashurstperkins.com

*Attorneys for Defendant*
*Microsoft Corporation*